**Case No. 23-50479**

————————————————

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

————————————————

*DDR WEINERT, LTD; DDR WILLIAMS, LTD,*
*PLAINTIFFS-APPELLANTS*

**v.**

*OVINTIV USA, INC.; ENCANA OIL & GAS (USA), INC.,*
*DEFENDANTS-APPELLEES*

————————————————

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS, SAN ANTONIO DIVISION**
Civil Action No. 22-CV-00558-XR
Honorable Xavier Rodriguez, presiding

————————————————

**PRINCIPAL BRIEF OF PLAINTIFFS-APPELLANTS,
DDR WEINERT, LTD AND DDR WILLIAMS, LTD**

————————————————

**SANTOYO WEHMEYER P.C.**
Corey F. Wehmeyer (SBN 24051903)
*cwehmeyer@swenergylaw.com*
Renée A. Yanta (SBN 00787483)
*ryanta@swenergylaw.com*
Emily A. Gearhart (SBN 24065871)
*egearhart@swenergylaw.com*
12400 San Pedro Avenue, Suite 300
San Antonio, Texas 78216
Telephone: (210) 998-4200
Facsimile: (210) 998-4201

**Attorneys for Plaintiffs-Appellants
DDR Weinert, LTD and DDR Williams, LTD**

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

*DDR WEINERT, LTD; DDR WILLIAMS, LTD,*
*PLAINTIFFS-APPELLANTS*

**v.**

*OVINTIV USA, INC.; ENCANA OIL & GAS (USA), INC.,*
*DEFENDANTS-APPELLEES*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS, SAN ANTONIO DIVISION**
Civil Action No. 22-CV-00558-XR
Honorable Xavier Rodriguez, presiding

**CERTIFICATE OF INTERESTED PERSONS**

The undersigned counsel of record certifies that the following listed persons and entities, as described in the fourth sentence of Rule 28.2.1, have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.

**Plaintiffs-Appellants:**

1.     DDR Weinert, LTD

2.     DDR Williams, LTD

**<u>Counsel for Plaintiffs-Appellants</u>:**

S<small>ANTOYO</small> W<small>EHMEYER</small> P.C.

Corey F. Wehmeyer (SBN 24051903)
cwehmeyer@swenergylaw.com

Renée A. Yanta (SBN 00787483)
ryanta@swenergylaw.com

Emily A. Gearhart (SBN 24065871)
egearhart@swenergylaw.com

12400 San Pedro Avenue, Suite 300
San Antonio, Texas 78216
Telephone: (210) 998-4200
Facsimile: (210) 998-4201

**<u>Defendants-Appellees</u>:**

1. Ovintiv USA, Inc.

2. Encana Oil & Gas (USA), Inc.

**<u>Counsel for Defendants-Appellees</u>:**

H<small>OGAN</small> T<small>HOMPSON</small> LLP

Christopher M. Hogan
chogan@hoganthopson.com

Samantha L. Thompson
sthopmson@hoganthompson.com

801 Travis Street, Suite 1330
Houston, Texas 77002
Telephone: 713-671-5632
Facsimile: 713-671-5632

SO CERTIFIED, this 31st day of October 2023.

<div style="margin-left:50%">

*/s/ Corey F. Wehmeyer*
Corey F. Wehmeyer
Attorney of Record for Plaintiffs-
Appellants DDR Weinert, LTD and
DDR Williams, LTD

</div>

## IDENTIFICATION OF PARTIES AND TERMS

Plaintiffs-Appellants DDR Weinert, LTD and DDR Williams, LTD are referred to as the "DDR Entities."

Defendants-Appellees Ovintiv USA, Inc. and Encana Oil & Gas (USA) Inc. are referred to in the singular and as "Ovintiv/Encana."

Duane Richter and Colleen Verstuyft Richter are not parties to this case but are referred to as "the Richters."

The tracts of land that are the subject of this appeal are referred to as "the Subject Lands."

The interest in the Subject Lands that is the focus of this appeal is the mineral estate, which is referred to as the "Mineral Interests."

The four oil and gas leases relating to the Subject Lands are referred to as the "Leases."

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiffs-Appellants, DDR Weinert, LTD ("DDR Weinert") and DDR Williams, LTD ("DDR Williams") respectfully request oral argument. The principal issue presented addresses Texas real estate and oil and gas jurisprudence and implicates real property rights, which are fundamental to and deeply protected under Texas law. The District Court's Final Judgment and Order profoundly change Texas real property law as applied to oil and gas leases and undermine Texas's longstanding recognition of the corporate form. In light of the foundational Texas law implicated in this appeal, Plaintiffs-Appellants, DDR Weinert and DDR Williams respectfully submit that oral argument will assist the panel of Honorable Justices that will consider this case.

TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................1

Identification of Parties and Terms...................................................................4

Statement Regarding Oral Argument ................................................................5

Table of Contents .............................................................................................6

Table of Authorities .......................................................................................10

Jurisdictional Statement .................................................................................16

Statement of Issues.........................................................................................17

Issue One ........................................................................................................18

Issue Two ........................................................................................................18

Conditionally Submitted Issue Three .............................................................18

Issue Four .......................................................................................................19

Conditionally Submitted Issue Five................................................................19

Issue Six .........................................................................................................19

Issue Seven......................................................................................................19

Statement of Facts...........................................................................................21

I.    The Story Of This Case Begins And Should Have Ended With The Richters. .......................................................................................................21

II.    Ovintiv/Encana Bungled Its Internal Accounting, Allegedly Overpaying Royalties To The Richters. ..........................................................22

III.    The Richters Conveyed The Mineral Interests In The Subject Lands To The DDR Entities. .....................................................................................22

IV.    Ovintiv/Encana Acknowledged The DDR Entities' Ownership Interest And Began Paying Them Royalties For Production Occurring After The Conveyance.................................................................24

V.      Ovintiv/Encana Failed To Pay The DDR Entities Over $608,815.63 In Royalties. ...................................................................................25

VI.     The DDR Entities Filed Suit Seeking To Recover Their Royalties. .............27

Summary of the Argument.................................................................................28

ARGUMENT .....................................................................................................29

I.      Royalties Are Personalty—Not Realty (Addressing Issues One, Two, Three (Conditionally), Four, And Seven)...........................................................29

        A.      Royalty payments are personal property; so, any overpayment to the Richters is a personal debt..........................................................29

                1.      Because royalty payments are personal property, any overpayment to the Richters is a personal debt. .......................31

                2.      The DDR Entities' royalties are their personal property..........32

II.     The Deeds Do Not Obligate The DDR Entities To Pay The Richters' Personal Debt (Addressing Issues One, Two, Three (Conditionally), Four, And Seven). ....................................................................................................33

        A.      The Deeds do not obligate the DDR Entities to pay the Richters' personal debt...................................................................................34

                1.      Ovintiv/Encana is not a party to any of the Deeds and is owed no obligation through the Deeds. ...................................34

                2.      The "subject-to" and "as-is" clauses are not promises of the DDR Entities. .........................................................................36

                        a.      "Subject-to" and "as-is" clauses are representations of a grantor, not a grantee...............................................38

                        b.      The clauses are representations, not contractual promises. .................................................................................39

                3.      The DDR Entities did not contractually assume the Richters' personal debt simply because the Deeds acknowledged a debt might exist that affects the Subject Lands. ..............................................................................41

        B.      Even if the clauses could be construed as causing a grantee to contractually assume the liability for the conditions—contrary to

7

longstanding Texas law—the Richters' personal debt is not one of the listed conditions....................................................................45

    1. The Richters' alleged personal debt did not exist when the Richters conveyed the Mineral Interests to the DDR Entities. ...................................................................45

    2. The Richters' alleged personal debt is not a covenant running with the land. ...............................................49

    3. The Richters' personal debt is not an "encumbrance."..............51

III. The Division Orders Do Not Create A Contractual Obligation For The DDR Entities To Pay The Richters' Debt (Addressing Issues One, Two, Three (Conditionally), Four, And Seven). ....................................55

IV. Assuming The District Court Ruled That The Richters' Debt Attached To The Mineral Interests, That Ruling Is Contrary To Texas Law (Addressing Issues One, Two, Three (Conditionally), Four, And Seven). ....................................59

V. Under Texas Law, Limited Partnerships—Such As The DDR Entities—Are Separate Entities From Their Members; If The District Court's Ruling Could Be Construed As Piercing The DDR Entities' Veil, That Ruling Is Contrary To Texas Law (Addressing Conditionally Submitted Issue Five). ....................................60

VI. Recoupment Is Not An Available Remedy (Responsive To Issue Six)....................................62

    A. Ovintiv/Encana failed to pursue its available claim against the Richters....................................62

    B. Ovintiv/Encana Cannot Invoke the Theories of Offset or Recoupment Against the DDR Entities....................................63

        1. The District Court erroneously permitted Ovintiv/Encana to exercise recoupment. ....................................63

        2. Ovintiv/Encana also cannot rely on offset (as the District Court correctly determined). ....................................67

VII. Ovintiv/Encana's Failure To Pay The DDR Entities Their Royalties Violates The Texas Natural Resources Code (Responsive to Issue Four)....................................67

VIII. The District Court Erred By Dismissing The DDR Entities' Conversion Claim (Responsive to Issue Seven)................................................68

Conclusion .................................................................................................72

Certificate of Service ................................................................................74

Certificate of Compliance .........................................................................75

**Page(s)**

**Cases**

*Alfrey v. Ellington*,
285 S.W.2d 383 (Tex. App.—Eastland 1955, writ ref'd n.r.e.) .........................39

*In re Allcat Claims Serv. L.P.*,
356 S.W.3d 455 (Tex. 2011) ....................................................................................61

*Am. Star Energy & Minerals Corp. v. Stowers*,
457 S.W.3d 427 (Tex. 2015) ...................................................................................61

*Anadarko E&P Co., LP v. Clear Lake Pines, Inc.*,
No. 03-04-00600-CV, 2005 WL 1583506 (Tex. App.—Austin
July 7, 2005, no pet.)....................................................................................*passim*

*Arthur W. Tifford, PA v. Tandem Energy Corp.*,
562 F.3d 699 (5th Cir. 2009) ..................................................................................71

*Averyt v. Grande, Inc.*,
686 S.W.2d 632 (Tex. App.—Texarkana 1984), *aff'd*, 717 S.W.2d
891 (Tex. 1986)........................................................................................................39

*Baywood Estates Property Owners Ass'n, Inc. v. Caolo*,
392 S.W.3d 776 (Tex. App.—Tyler, no pet.)...............................................50, 51

*Benson v. Travelers Ins. Co.*,
464 S.W.2d 709 (Tex. App.—Dallas 1972, no writ).........................................46

*Booth Fisheries Corp. v. Eardley*,
233 S.W.2d 872 (Tex. App.—El Paso 1950, writ ref'd n.r.e.)
.............................................................................................................42, 44, 45

*Brook Mays Organ Co., Inc. v Sondock*,
551 S.W.2d 160 (Tex. App.—Beaumont 1977, writ ref'd n.r.e.)......................67

*Cabot Corp. v. Brown*,
754 S.W.2d 104 (Tex. 1987) ...................................................................................58

*Campbell v. Jones,*
230 S.W. 710 (Tex. App.—Amarillo 1921, no writ)............................................42

*Canales v. Estate of Canales,*
683 S.W.2d 77 (Tex. App.—San Antonio 1984, no writ)............................30, 32

*Capital Concepts Props. 85-1 v. Mut. First,*
35 F.3d 170 (5th Cir. 1994) ....................................................................67

*City of Dayton v. Allred,*
68 S.W.2d 172 (Tex. 1934)................................................................52, 54

*CKD Homes Direct, Ltd. v. Hegar,*
No. 03-19-00776-CV, 2020 WL 3479257 (Tex. App.—Austin
June 26, 2020, no pet.) (mem. op) ........................................................59

*Cockrell v. Tex. Gulf Sulphur Co.,*
299 S.W.2d 672 (1956)................................................................39

*Cole v. Johnson,*
157 S.W.3d 856 (Tex. App.—Fort Worth 2005, no pet.)................................40

*Dallas/Fort Worth Airport Bank v. Dallas Bank & Trust Co.,*
667 S.W.2d 572 (Tex. App.—Dallas 1984, no writ)............................................67

*DEK-M Nationwide, Ltd.* v. *Eichner,*
627 S.W.3d 353 (Tex. App.—Houston [14th Dist.] 2021, no pet.) ..................59

*Erwin v. Russ,*
No. 09-CA-127, 2010 WL 11506838 (W.D. Tex. July 19, 2010),
*aff'd* 481 F. App'x 128 (5th Cir. 2012) ..............................................69

*Farm & Ranch,*
369 S.W.3d at 683................................................................38

*Fenion v. Harris County,*
569 S.W.3d 783 (Tex. App.—Houston [1st Dist.] 2018, no pet.)......................47

*First Bank v. Brumitt,*
519 S.W.3d 95 (Tex. 2017)................................................................34

*Garza v. Allied Finance Co.,*
566 S.W.2d 57 (Tex. App.—Corpus Christi 1978, no writ) ......................19, 64

*In re Gasmark Ltd.*,
193 F.3d 371 (5th Cir. 1999) ...............................................64

*George v. Blumberg*,
211 S.W. 309 (Tex. App.—San Antonio 1919, no writ)..............................42, 45

*Harris v. Rowe*,
593 S.W.2d 303 (Tex. 1979) ...............................................34

*Headington Oil Co., L.P. v. White*,
287 S.W.3d 204 (Tex. App.—Houston [14th Dist. 2009, no pet.)....................56

*In re Hess*,
61 B.R. 977 (Bankr. N.D. Tex. 1986)...............................................18, 32

*Homeland Realty Co. v. Wheelock*,
119 S.W.2d 167 (Tex. App.—El Paso 1938, no writ)................................47, 48

*Inwood North Homeowners' Ass'n, Inc. v. Harris*,
736 S.W.2d 632 (Tex. 1987) ...............................................49

*Johnson v. Enerlex, Inc.*,
No. 03-96-00401, 1997 WL 562017 (Tex. App.—Austin
Sept. 11, 1997, pet denied) ...............................................30, 60

*Kokernot v. Caldwell*,
231 S.W.2d 528 (Tex. App.—Dallas 1950, writ ref'd)..............................38, 39

*Matter of Kosadnar*,
157 F.3d 1011 (5th Cir. 1998) ...............................................64, 65

*Lighthouse Church v. Texas Bank*,
889 S.W.2d 595,599 (Tex. App.—Houston [14th Dist.] 1994,
writ denied) ...............................................70, 71

*Luckel v. White*,
819 S.W.2d 459 (Tex. 1991) ...............................................34, 38, 60

*MCI Telecommunications Corp. v. Tex. Utils. Elec. Co.*,
995 S.W.2d 647 (Tex. 1999) ...............................................35

*MJR Oil & Gas 2001 LLC v. AriesOne, LP*,
558 S.W.3d 692 (Tex. App.—Texarkana 2018, no pet.)................................50

*Montfort v. Trek Res., Inc.*,
198 S.W.3d 344 (Tex. App.—Eastland 2006, no pet.)........................................49

*In re Mullin*,
433 B.R. 1 (Bankr. S.D. Tex. 2010) ................................................42, 43, 44, 45

*Munawar v. Cadle Co.*,
2 S.W.3d 12 (Tex. App.—Corpus Christi–Edinburg 1999,
pet. denied).........................................................................................................34

*Murray v. San Jacinto Agency, Inc.*,
800 S.W.2d 826 (Tex. 1990) ...........................................................................45, 46

*Nationwide of Bryan, Inc. v. Dyer*,
969 S.W.2d 518 (Tex. App.—Austin 1998, no pet.)..........................................52

*Neel v. Killam Oil Co., Ltd.*,
88 S.W.3d 334 (Tex. App.—San Antonio 2002, pet. denied)...........................56

*Phillips Petroleum Co. v. Adams*,
513 F.2d 355 (5th Cir. 2011) ......................................................................*passim*

*Piranha Partners v. Neuhoff*,
596 S.W.3d 740 (Tex. 2020) ............................................................................47

*Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*,
896 S.W.2d 156 (Tex. 1995) ............................................................................40

*PYR Energy Corp. v. Samson Res. Co.*,
470 F. Supp. 22 709, 717 (E.D. Tex. 2007)......................................................39

*Rente Co. v. Truckers Express*,
116 S.W.3d 326 (Tex. App.—Houston [14th Dist.] 2003, no pet.) ..................70

*Schewe v. Bentsen*,
424 F.2d 60 (5th Cir. 1970) ..............................................................................42

*Smith v. Maximum Racing, Inc.*,
136 S.W.3d 337 (Tex. App.—Austin 2004, no pet.).........................................71

*Southern Sur. Co. v. Austin*,
22 F.2d 881 (5th Cir. 1927) ..............................................................................45

*State v. Lincoln Corp.*,
   596 S.W.2d 593 (Tex. App.—Beaumont 1980, writ ref'd n.r.e.)........................48

*Tarr v. Timberwood Park Owners Ass'n, Inc.*
   556 S.W.3d 274 (Tex. 2018) ........................................................................50

*Tex. Indep. Exploration, Ltd. v. Peoples Energy Prod.-Tex., L.P.*,
   No. 04–07–00778–CV, 2009 WL 2767037 (Tex. App.—
   San Antonio Aug. 31, 2009, no pet.) (mem. op.) ................................................38

*Thomson v. Locke*,
   1 S.W. 112 (Tex. 1886)..............................................................................52

*U.S. v. Bollinger Mobile Home Sales, Inc.*,
   492 F. Supp. 496 (N.D. Tex. 1980) ...........................................................18, 60

*United States ex rel. United States Postal Serv. v. Dewey Freight Sys.,*
   *Inc.*, 31 F.3d 620 (8th Cir .1994) ...............................................................66

*W.B. Johnson Drilling Co v. Lacy*,
   336 S.W.2d 230 (Tex. App.—Eastland 1960, no writ) ......................................72

*Waechter v. Amoco Prod. Co.*,
   537 P.2d 228 (Kan. 1975) ..........................................................................66

*Wasson Ints., Ltd. v. Adams*,
   405 S.W.3d 971 (Tex. App.—Tyler 2013, no pet.)............................................51

*Wenske v. Early*,
   521 S.W.3d 791 (Tex. 2017) ....................................................................38, 40

**Statutes**

18 U.S.C. § 1332 ..........................................................................................16

28 U.S.C. § 1291 ..........................................................................................16

TEX. BUS. ORGS. CODE § 21.223 ....................................................................62

TEX. BUS. ORGS. CODE § 153.256(f).................................................................62

TEX. NAT. RES. CODE § 91.401, et seq..............................................................27

TEX. NAT. RES. CODE § 91.402(a).................................................................56, 68

TEX. NAT. RES. CODE § 91.402(b)(1)(A) ...................................................57

TEX. NAT. RES. CODE § 91.402(b)(1)...................................................56

TEX. NAT. RES. CODE § 91.402(c)(1)(D) ...............................................56

TEX. PROP. CODE § 5.024 ..................................................................52

**Other Authorities**

*DEBT*, BLACK'S LAW DICTIONARY (11th ed. 2019) .................................45

Douglas R. Hafer & Daniel B. Mathis, *Mineral Royalty Mispayments:
The Payor's Rights, Obligations, and Risks in Royalty Mispayment
Scenarios, Including the Pitfalls and Prerogative of Self-Help
Recoupment*, 18 Tex. Wesleyan L. Rev. 85, 88 (2011)................................49, 62

RESTATEMENT (SECOND) OF THE LAW OF CONTRACTS § 315 (1979).......................35

**JURISDICTIONAL STATEMENT**

The District Court had subject matter jurisdiction over this case under 18 U.S.C. § 1332 because complete diversity of citizenship exists in this matter. Defendants-Appellees Ovintiv USA, Inc. and Encana Oil & Gas (USA), Inc. are Delaware corporations with their principal place of business in Denver, Colorado. ROA.96. Plaintiffs-Appellants DDR Weinert, LTD and DDR Williams, LTD are Texas limited partnerships with their principal place of business in Texas. ROA.96. The amount in controversy exceeds $75,000.00. 18 U.S.C. § 1332.

This Court has jurisdiction over appeals from "final decisions of the district courts of the United States." 28 U.S.C. § 1291. Plaintiffs-Appellants DDR Weinert, LTD and DDR Williams, LTD appeal the District Court's June 16, 2023 Final Judgment and Order ("Judgment") granting Defendants-Appellees Ovintiv USA, Inc. and Encana Oil & Gas (USA), Inc.'s ("Ovintiv/Encana's") cross-motion for summary judgment, denying Plaintiffs-Appellants DDR Weinert and DDR Williams's motion for summary judgment, and dismissing with prejudice their claims against Ovintiv/Encana. The Judgment dismissed all parties and claims. DDR Weinert, LTD and DDR Williams, LTD filed their Notice of Appeal on June 23, 2023.

## STATEMENT OF ISSUES

It is undisputed that: While the Richters owned the Subject Lands, they leased them to Ovintiv/Encana to develop and produce oil and gas. The Leases provided Ovintiv/Encana would pay royalties to the Mineral Interests owners on all oil and gas production. When the Richters owned the Mineral Interests, Ovintiv/Encana paid them royalties. The Richters later conveyed the Mineral Interests to the DDR Entities. Subsequently, Ovintiv/Encana claimed it had mistakenly overpaid royalties to the Richters on oil and gas production that had occurred when the Richters owned the Mineral Interests. But instead of looking to the Richters to reimburse the alleged overpayment, Ovintiv/Encana unilaterally withheld royalties that Ovintiv/Encana owed the DDR Entities for new production occurring after the DDR Entities acquired the Mineral Interests.

The District Court ruled Ovintiv/Encana had a contractual right to take the DDR Entities' royalties to pay the Richters' alleged personal debt, finding the DDR Entities contractually assumed liability for that alleged debt through boilerplate "subject-to" and "as-is" clauses in the Richters' deeds transferring the Mineral Interests to the DDR Entities, and through boilerplate language in the division orders between Ovintiv/Encana and the DDR Entities.

17

Did the District Court err by ruling that boilerplate "subject-to" and "as-is" mineral deed clauses were a contractual assumption of liability for overpayments of royalties that occurred prior to the conveyance, thereby dismissing the DDR Entities' contract, statutory, and conversion claims?

**ISSUE TWO**

Did the District Court err by ruling that the DDR Entities contractually assumed the Richters' alleged personal property debt through boilerplate language in subsequently-executed division orders, thereby dismissing the DDR Entities' contract, statutory, and conversion claims?

**CONDITIONALLY SUBMITTED ISSUE THREE**

Under Texas law, a debt for overpaid royalties does not attach to production (*In re Hess*, 61 B.R. 977, 978 (Bankr. N.D. Tex. 1986)). Moreover, a personal debt only attaches to land upon perfection of a judgment lien or some other mechanism (*U.S. v. Bollinger Mobile Home Sales, Inc.*, 492 F. Supp. 496, 497 (N.D. Tex. 1980)), none of which occurred here. As such:

> Did the District Court err if it held the DDR Entities' royalties or mineral interests liable for the Richters' alleged royalty overpayment, thereby dismissing the DDR Entities' contract, statutory, and conversion claims?

<h2 style="text-align:center">ISSUE FOUR</h2>

Did the District Court err by dismissing the DDR Entities' claim asserting Ovintiv/Encana violated Chapter 91 of the Texas Natural Resources Code?

<h2 style="text-align:center">CONDITIONALLY SUBMITTED ISSUE FIVE</h2>

Ovintiv/Encana did not plead, argue, or present any proof of a claim to pierce the veil of the DDR Entities. As such:

Did the District Court err by failing to treat the DDR Entities as separate entities from the Richters?

<h2 style="text-align:center">ISSUE SIX</h2>

Under Texas law, recoupment is available only when the claim and the funds recouped arise from the same transaction. *Garza v. Allied Finance Co.*, 566 S.W.2d 57, 62-63 (Tex. App.—Corpus Christi 1978, no writ). Here, Ovintiv/Encana's alleged overpayment occurred in transactions with the Richters. The funds Ovintiv/Encana recouped were from subsequent transactions with the DDR Entities. As such:

Even if the DDR Entities were contractually bound to pay the Richters' personal debt, did the District Court err by allowing that debt to be forcibly paid through recoupment?

<h2 style="text-align:center">ISSUE SEVEN</h2>

Ovintiv/Encana wrongfully took over $600,000 in royalties on production occurring after the Richters conveyed the Mineral Interests to the DDR Entities. As such:

<p style="text-align:center">19</p>

Did the District Court err by dismissing the DDR Entities' conversion claim against Ovintiv/Encana for converting royalties on production?

## I. The Story Of This Case Begins And Should Have Ended With The Richters.

The Richters owned in fee simple the following real property located in Karnes County, Texas:

- An 11.67-acre tract;

- A 113.57-acre tract (subject to a partition);

- A 506.93-acre tract; and

- A 581.63-acre tract (comprised of a 291-acre tract and a 290.63-acre tract)

(the "Subject Lands"). ROA.235, ROA.247, ROA.259, ROA.271. The Richters four oil and gas leases (collectively, the "Leases") to Dan A. Hughes Company, L.P. ("Hughes") for the purpose of "exploring, drilling, mining and operating for, producing and owning oil, gas, sulphur and all other minerals" on the Subject Lands. ROA.235, ROA.247, ROA.259, ROA.271.

Hughes became the original lessee and operator of the Subject Lands relating to the minerals. ROA.235, ROA.247, ROA.259, ROA.271. Hughes thus had the exclusive right and duty to develop the Subject Lands and produce oil, gas, and other minerals. ROA.235, ROA.247, ROA.259, ROA.271. In return, Hughes was obligated to pay royalties on production to the owners of the mineral interests in the Subject Lands (the "Mineral Interests"). ROA.235, ROA.247, ROA.259, ROA.271. The Leases provided for a royalty rate of 20%. ROA.235, ROA.247, ROA.259, ROA.271.

21

Hughes eventually sold and transferred its rights and obligations under the Leases; Ovintiv/Encana[1] is the current lessee and operator. ROA.51.

## II. Ovintiv/Encana Bungled Its Internal Accounting, Allegedly Overpaying Royalties To The Richters.

Beginning 2016, and unbeknownst to the Richters and the DDR Entities, Ovintiv/Encana allegedly began to make a series of internal accounting mistakes, overpaying royalties to the Richters on production that occurred between September 2016 and January 2018. ROA.684. It is undisputed Ovintiv/Encana did not discover its mistake until *after* the Richters had conveyed ownership of the Mineral Interests to the DDR Entities. ROA.231-33.

## III. The Richters Conveyed The Mineral Interests In The Subject Lands To The DDR Entities.

On December 18, 2017, the Richters conveyed the Mineral Interests to the DDR Entities. ROA.601-39. They conveyed all right, title, and interest in the following tracts by special warranty deeds:

- The 11.67-acre tract and 581.63-acre tracts to DDR Weinert[2] and

---

[1] Defendant Ovintiv USA, Inc. is formerly known as Encana Oil & Gas (USA) Inc. The DDR Entities named Encana Oil & Gas as an additional defendant. ROA.23.

[2] The Richters first conveyed 1% of their interest to DDRD Management and 99% to DDR Weinert. ROA.214-20. Then, DDRD Management conveyed its 1% interest to DDR Weinert. ROA.605-10.

▪ The 506.93-acre tract to DDR Williams.[3]

(the "Special Warranty Deeds"). ROA.605-10, ROA.616-39. The Richters conveyed solely the mineral estate of the 113.78-acre tract to DDR Weinert (the "Mineral Deeds").[4] ROA.601-04, ROA.611-15. Ovintiv/Encana was not a party to any of the Special Warranty Deeds or Mineral Deeds (the "Deeds"). ROA.601-39. Only the Richters—as grantors—and the DDR Entities—as grantees—were parties to these conveyance instruments. ROA.601-39.

By the Deeds, the DDR Entities acquired the right to royalties from any production occurring *after* they became owners of the Mineral Interests. ROA.27, ROA.235, ROA.247, ROA.259. Nothing in the Deeds transferred to the DDR Entities any right to receive royalties for production prior to the conveyances—when the Richters owned the Mineral Interests. ROA.601-39.

The DDR Entities acknowledged—through the Special Warranty Deeds—that the Richters conveyed fee simple (and therefore the corresponding Mineral Interests):

▪ As is, with all faults; and

---

[3] The Richters first conveyed 1% of their interest to DDRD Management and 99% to DDR Williams. ROA.629-39. Then, DDRD Management conveyed its 1% interest to DDR Williams. ROA.624-28.

[4] The Richters first conveyed 1% of their interest to DDRD Management and 99% to DDR Weinert. ROA.611-15. Then, DDRD Management conveyed its 1% interest to DDR Weinert. ROA.601-04.

- Subject to any existing indebtedness, all easements, restrictions, covenants, conditions, and other instruments of record in the Real Property Records of Karnes County, Texas.

ROA.605-10, ROA.616-22, ROA.624-39. The Mineral Deeds state the Richters conveyed these interests subject to all:

- Interests in minerals or royalties previously severed or vested in third parties and not currently owned by the Richters;

- Valid leases for oil and gas or oil, gas and other minerals;

- Valid royalty agreements, pooling agreements and designations of pooled units;

- Valid encumbrances of every kind and character; and

- Easements, restrictions, covenants, conditions, and other instruments of record in the Real Property Records of Karnes County, Texas.

ROA.601-04, ROA.611-15. None of the Deeds contains any provision stating the DDR Entities are assuming any obligation to repay any royalty overpayments the Richters may have received. ROA.601-04, ROA.611-15.

## IV. Ovintiv/Encana Acknowledged The DDR Entities' Ownership Interest And Began Paying Them Royalties For Production Occurring After The Conveyance.

On February 5, 2018, counsel for the DDR Entities sent a letter to Ovintiv/Encana enclosing the recorded Deeds and requesting new division orders. ROA.601-04, ROA.611-15. Ovintiv/Encana acknowledged the conveyance of the Mineral Interests to the DDR Entities and issued completely new division orders

directing all royalty payments on future production to the DDR Entities (the "DDR Division Orders"). ROA.679-82.

Ovintiv/Encana included boilerplate "safe harbor" language in the DDR Division Orders, protecting itself against paying royalties if a title dispute arose regarding the DDR Entities' ownership interest or Ovintiv/Encana overpaid royalties to the DDR Entities. ROA.679-82. Ovintiv/Encana began making royalty payments under the DDR Division Orders to the DDR Entities for production *after* the DDR Entities acquired the Mineral Interests. ROA.679-82.

## V. Ovintiv/Encana Failed To Pay The DDR Entities Over $608,815.63 In Royalties.

Without warning, in June 2018, Ovintiv/Encana began siphoning money from the DDR Entities' royalty payments. ROA.689, ROA.790, ROA.861, ROA.909, ROA.954, ROA.1028, ROA.1161, ROA.1161-72. Ovintiv/Encana kept over $600,000 of the DDR Entities' royalties.[5] ROA.689, ROA.790, ROA.861, ROA.909, ROA.954, ROA.1028, ROA.1161, ROA.1161-72.

Ovintiv/Encana finally told the DDR Entities that it was taking their royalties on June 26, 2018—almost three months after issuing the DDR Division Orders. ROA.684. Ovintiv/Encana claimed it had flubbed its internal accounting and overpaid royalties to the Richters for previous production that occurred while the

---

[5] Ovintiv/Encana admits it did not pay the royalties to the DDR Entities. ROA.1134-52.

Richters owned the Mineral Interests. ROA.684. Ovintiv/Encana admitted it made the alleged overpayments *before* the Richters conveyed the Mineral Interests to the DDR Entities and *before* the DDR Division Orders became effective:

| Production Month | Alleged Royalty Overpayments to the Richters for Minerals Extracted from the 11.67, 113.57, and 581.63 Acre-Tracts | Alleged Royalty Overpayments to the Richters for Minerals Extracted from the 506.93 Acre-Tract |
| --- | --- | --- |
| September 2016 | $18,916.04 | $4,423.75 |
| October 2016 | $28,055.72 | $6,396.23 |
| November 2016 | $20,599.97 | $3,921.43 |
| December 2016 | $23,049.58 | $8,052.02 |
| January 2017 | $32,033.86 | $6,769.67 |
| February 2017 | $32,826.90 | $5,028.79 |
| March 2017 | $27,922.11 | $4,363.21 |
| April 2017 | $32,987.54 | $4,875.11 |
| May 2017 | $35,726.40 | $4,424.38 |
| June 2017 | $37,601.93 | $3,311.59 |
| July 2017 | $41,356.90 | $3,381.87 |
| August 2017 | $33,688.28 | $3,360.18 |
| September 2017 | $36,987.40 | $4,941.46 |
| October 2017 | $32,341.71 | $4,085.06 |
| November 2017 | $28,752.19 | $4,150.79 |
| December 2017 | $36,351.96 | $4,597.62 |
| January 2018 | $26,849.56 | $6,687.00 |

ROA.684, ROA.1134-52.

Ovintiv made no effort to recover the overpayment from the Richters; instead, Ovintiv/Encana underpaid the DDR Entities:

| | Royalty Amount Owed | Royalty Amount Received | Royalty Amount Ovintiv/Encana Underpaid |
|---|---|---|---|
| **DDR Weinert** | $585,263.85 | $59,218.04 | $526,045.81 |
| **DDR Williams** | $110,534.50 | $27,764.68 | $82,769.82 |
| **Total Amount Ovintiv/Encana Underpaid:** | | | **$608,815.63** |

ROA.1161-72.

## VI. The DDR Entities Filed Suit Seeking To Recover Their Royalties.

After giving Ovintiv/Encana proper, written statutory notice of its failure and refusal to pay royalties, the DDR Entities filed suit in Texas state court seeking to recover the royalties Ovintiv/Encana wrongfully took. ROA.23-30, ROA.1131-32. The DDR Entities asserted three claims: breach of contract, violation of Section 91.401, *et seq.* of the Texas Natural Resources Code, and conversion. ROA.23-30. The DDR Entities also sought to recover their attorney's fees. ROA.23-30.

Ovintiv/Encana removed the case to federal district court based on diversity jurisdiction. ROA.10-15. Ovintiv/Encana also filed an affirmative counterclaim contending the DDR Entities' damages should be offset by the amount of Ovintiv/Encana's alleged overpayment. ROA.93-100. The District Court dismissed this affirmative claim as it is not recognized in Texas. ROA.101-11,[6] ROA.369. However, the District Court stated that "[Ovintiv/Encana] may pursue offset as an

---

[6] Ovintiv/Encana has not appealed this ruling.

affirmative defense." ROA.369. Even before that ruling, Ovintiv/Encana had amended its pleading to assert offset/recoupment as an affirmative defense. ROA.93-100.

The DDR Entities and Ovintiv/Encana filed competing motions for summary judgment. ROA.203-29, ROA.361-78. The District Court entered the Judgment granting Ovintiv/Encana's motion for summary judgment and denying the DDR Entities'. ROA.2238-50.

## SUMMARY OF THE ARGUMENT

Ovintiv/Encana based its defense on a distortion of established Texas law. In stark contrast, the DDR Entities seek to apply long-settled Texas law to recover from Ovintiv/Encana the royalties it purloined. Ovintiv/Encana acknowledged the DDR Entities owned these royalties. ROA.98, ROA.208-09. But, in direct conflict with Texas law, Ovintiv/Encana argue it was entitled to "recoup" $608,815.63 in royalties from the DDR Entities to pay itself the royalties it allegedly, mistakenly overpaid to the Richters. ROA.211-16.

The District Court agreed with Ovintiv/Encana, ruling the DDR Entities assumed contractual liability for the Richters' personal debt—the alleged overpayment—by the "subject-to" or "as-is" clauses in the Deeds or the DDR Division Orders. ROA.2245-48. Based on this ruling, the District Court dismissed all of the DDR Entities' claims: contract, statutory, and conversion. ROA.2245-48. As a

matter of Texas law, neither these clauses nor the DDR Division Orders creates an assumption of contractual liability. Nor do the Leases, assuming the District Court somehow implicitly so ruled. Moreover, assuming the District Court (incorrectly) concluded the Richters' debt attached to the "land," that debt does not correspondingly attach to personal property—the DDR Entities' royalty payments. Further, Ovintiv/Encana has no right to recoupment of the DDR Entities' royalties. The District Court also erred by dismissing the DDR Entities' conversion claim. Texas law permits such a claim when a defendant takes money owned by another.

The District Court erred by dismissing each of the DDR Entities' claims. The DDR Entities, therefore, respectfully request that this Court reverse the District Court's Judgment, enter judgment for the DDR Entities in the amount of $608,815.63, and remand the DDR Entities' attorney's fees claim for trial.

## ARGUMENT

**I. Royalties Are Personalty—Not Realty (Addressing Issues One, Two, Three (Conditionally), Four, And Seven).**

**A. Royalty payments are personal property; so, any overpayment to the Richters is a personal debt.**

Texas law has held for almost fifty years that minerals are realty when in place but become personalty when severed from the land by production. *Phillips Petroleum Co. v. Adams*, 513 F.2d 355, 363 (5th Cir. 2011) (citing *Humble Oil & Refining Co. v. West,* 508 S.W.2d 812, 817 (Tex. 1974)). As this Court explained in *Phillips*,

29

"unaccrued royalty interests . . . , are deemed by Texas courts to be interests in realty, for such rights represent interests in the oil and gas still in place on the property." *Phillips*, 513 F.2d at 363. But when the minerals are no longer "in place on the property," their character changes under Texas law:

> The rule is otherwise when the minerals giving rise to the right to payment have already been taken from the ground, for the right to future payments on past production cannot be said to burden the mineral estate in the same way as an interest in future production. . . . So it is that accrued royalty interests are personal property.

*Id.* (internal citation omitted); *see Canales v. Estate of Canales,* 683 S.W.2d 77, 80 (Tex. App.—San Antonio 1984, no writ) ("The law is equally well settled that oil and gas, when produced and severed, becomes personal property")*; Johnson v. Enerlex, Inc.*, No. 03-96-00401, 1997 WL 562017, at *2 (Tex. App.—Austin Sept. 11, 1997, pet denied) ("it did not lie within the sheriff's power to convey the $26,000.00 to Johnson because the accumulated royalties were personal property and the judgment that ordered the sheriff to levy upon and sell Berger's property limited the sheriff's execution to real property"). Once the production has occurred, the right to royalties on that production becomes personal property. *Id.*

*Phillips* illustrates the consequences of this settled law: In that case*,* the Adamses purchased an oil and gas leasehold interest. *Phillips.*, 513 F.2d at 358. Several years later, they sold their interest to an individual (the "Grantee"). *Id.* Before the Adamses conveyed their interest to the Grantee, Phillips began to suspend the

portion of sales proceeds from gas sold at a higher—not yet government-approved—rate. *Id.* Once the government approved the higher rate, Phillips needed to pay the suspended funds to the leasehold owner. *Id.* at 357. The question was, which owner?: The Adamses—who owned the leasehold when the gas was produced and sold—or the Grantee—who owned the leasehold once the obligation to pay the funds triggered? *Id.* at 363.

This Court's resolution of that question rested on the character of the funds owed: If Phillips's debt represented personal property, it did not transfer to the Grantee when the Adamses conveyed their real property interest. *Id.* at 363-64. If the debt represented real property, the funds owed did transfer with the real property conveyance. *Id.*

This Court held the debt Phillips owed represented personal property because the funds were generated from the sale of production. *Id.* Texas law unequivocally states that once produced, oil and gas is no longer real property but rather personal property. *Id.* Consequently, Phillips's debt was for personal property titled in the Adamses because they owned the mineral interest when the gas was produced. *Id.*

**1.      Because royalty payments are personal property, any overpayment to the Richters is a personal debt.**

Following Texas law, Ovintiv/Encana's alleged overpayments were transfers of personal property to the Richters. *See Anadarko E&P Co., LP v. Clear Lake Pines, Inc.*, No. 03-04-00600-CV, 2005 WL 1583506, at *3 (Tex. App.—Austin July 7,

2005, no pet.) ("royalties become interests in personalty at the time the minerals for which they are owed become personalty."). The Richters possessed these accumulated royalties as their personal property, subject to all applicable laws regarding personal property. *See In re Hess*, 61 B.R. 977, 978 (Bankr. N.D. Tex. 1986) ("It is settled under Texas law that the holder of a lien on the real estate (including the Minerals) does not have a lien on the Production because it is personal property.").

If Ovintiv/Encana paid the Richters too much, the alleged royalty overpayment is personal property.[7] If the Richters had any obligation to reimburse Ovintiv/Encana, that obligation was correspondingly a personal property debt. *See id.* ("In Texas, Minerals are considered real estate and governed by real estate law while production is considered personalty and is governed by the law of personal property.").

### 2. The DDR Entities' royalties are their personal property.

The royalties on production that occurred after the Richters' conveyances to the DDR Entities belong to the DDR Entities. ROA.679-82. These royalties are the DDR Entities' personal property. *Phillips*, 513 F.2d at 363; *Canales,* 683 S.W.2d at 80.

---

[7] The DDR Entities continue to dispute that Ovintiv/Encana overpaid the Richters. This issue was pleaded, but not litigated below. ROA.26. As such, even if this Court were to affirm the District Court's ruling, the District Court erred by entering a final judgment, foreclosing the DDR Entities' right to litigate whether Ovintiv/Encana overpaid the Richters.

The District Court held that the DDR Entities contractually assumed the obligation to pay the Richters' alleged personal debt—royalty overpayments on production occurring when the Richters owned the Mineral Interests. ROA.2246-48. The District Court then allowed Ovintiv/Encana to use a recoupment process to take the DDR Entities' personal property to pay the Richters' alleged personal debt. All these rulings contradict established Texas law. The District Court's Judgment is legally incorrect and requires reversal.

## II. The Deeds Do Not Obligate The DDR Entities To Pay The Richters' Personal Debt (Addressing Issues One, Two, Three (Conditionally), Four, And Seven).

The District Court dismissed the DDR Entities' contract, statutory, and conversion claims and ruled that the DDR Entities contractually assumed responsibility for the Richters' personal debt—alleged overpayments Ovintiv/Encana made to the Richters for royalties on production of oil and gas occurring while they owned the Mineral Interests. ROA.2245-48. The District Court ruled the DDR Entities contractually assumed the Richters' personal debt through two boiler-plate provisions—"subject-to" and "as-is" clauses—in the Deeds from the Richters conveying the Mineral Interests to the DDR Entities. ROA.2245-48. The District Court then incorrectly held that Ovintiv/Encana had the right to take the DDR Entities' personal property—accrued royalties on production that occurred after the DDR Entities acquired the Mineral Interests—to pay the Richters' debt. ROA.2245-

48. The District Court's ruling allowed Ovintiv/Encana to take over $600,000 of the DDR Entities' personal property. The District Court's rulings contradict longstanding Texas law.

### A. The Deeds do not obligate the DDR Entities to pay the Richters' personal debt.

After delivery and acceptance, deeds are the final expression of the parties' agreement and the sole repository of the agreed terms. *Harris v. Rowe,* 593 S.W.2d 303, 206 (Tex. 1979); *Munawar v. Cadle Co.,* 2 S.W.3d 12, 16–17 (Tex. App.—Corpus Christi–Edinburg 1999, pet. denied). "[T]he construction of an unambiguous deed is a question of law for the court." *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991). When construing an unambiguous deed, the Court's primary duty is to ascertain the parties' intent from language within the four corners of the deed. *Id.* The parties' intent, "when ascertained, prevails over arbitrary rules." *Id.* at 462.

### 1. Ovintiv/Encana is not a party to any of the Deeds and is owed no obligation through the Deeds.

The Deeds unambiguously memorialize only two sets of parties to the conveyance: The Richters as grantors, and the DDR Entities as grantees. ROA.601-39.

Texas law is crystal clear: the benefits and burdens contained in the Deeds "belong solely to the contracting parties." *First Bank v. Brumitt*, 519 S.W.3d 95, 102 (Tex. 2017). Even assuming *arguendo,* the DDR Entities assumed the Richters' debt

by the Deeds' terms—contrary to longstanding Texas Law (*see supra* I., II., III.)—the only parties who could force the DDR Entities' payment of that debt would be the Richters. Ovintiv/Encana is not a party to the Deeds or even mentioned in the Deeds.

Ovintiv/Encana certainly cannot enforce the Deeds—much less some nonexistent contractual assumption of the Richters' debt—as a third-party beneficiary. First, Ovintiv/Encana never even pleaded it was a third-party beneficiary of the Deeds. ROA.93-100. And there is no evidence Ovintiv/Encana was a party or third-party beneficiary. ROA.93-100, ROA.203-60.

Ovintiv/Encana may argue that it receives an incidental benefit from the Deeds and, therefore, can enforce the (non-existent) contractual assumption of the Richters' debt. But Texas law holds otherwise: Simply receiving an incidental benefit does not confer third-party beneficiary status. *MCI Telecommunications Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999); RESTATEMENT (SECOND) OF THE LAW OF CONTRACTS § 315 (1979). A third party may recover only if the contracting parties intended to secure some benefit for that third party and contracted directly for the third party's benefit. *MCI*, 995 S.W.2d at 651.

Here, no contractual language anywhere indicates that the Richters and the DDR Entities entered into the Deeds directly for Ovintiv/Encana's benefit. In fact, the undisputed evidence proves the opposite. Ovintiv/Encana was the lessee—

operating and producing minerals from the Subject Lands. ROA.234-81. Ovintiv/Encana's role was to pay royalties to—not receive royalties from—the Mineral Interests owners. It would be incongruous and legally wrong to make Ovintiv/Encana a beneficiary of the Mineral Interests conveyances.

Moreover, when the Richters executed and delivered the Deeds, nobody—not Ovintiv/Encana, the Richters, or the DDR Entities—even knew that Ovintiv/Encana had (allegedly) mistakenly overpaid the Richters. ROA.684, ROA.231-33. Ovintiv/Encana did not "repay itself" until months after the conveyances. The Richters and the DDR Entities could not have crafted the Deeds with the purpose of benefiting Ovintiv/Encana.

Ovintiv/Encana lacks standing to enforce the Deeds against the DDR Entities even if Texas law could be ignored and the Deeds could be construed as causing the DDR Entities to contractually assume the Richters' personal debt.

### 2. The "subject-to" and "as-is" clauses are not promises of the DDR Entities.

The District Court ruled that the "subject-to" and "as-is" clauses in the Deeds somehow created a contractual obligation for the DDR Entities to pay the Richters' personal debt. ROA.2245-48. This ruling is wrong as a matter of law.

The Richters' Mineral Deeds to DDR Weinert expressly made the Richters' conveyances subject to:

- Interests in minerals or royalties previously severed or vested in third parties and not currently owned by Grantor,

- Valid leases for oil and gas or oil, gas and other minerals,

- Valid royalty agreements, pooling agreements and designations of pooled units, and

- Valid encumbrances of every kind and character.

ROA.601-04, ROA.611-15. The Richters also made their Mineral Deeds and Special Warranty Deeds to the DDR Entities subject to all easements, restrictions, covenants, conditions, and other instruments of record and affecting the Subject Lands or the minerals. ROA.601-39.

The Richters made the Special Warranty Deeds subject to existing indebtedness. ROA.605-10, ROA.616-22-39. The Special Warranty Deeds contained an "as-is" clause:

> The Property is conveyed **AS IS, WITH ALL FAULTS** and without warranty, except the limited warranty of title contained herein.

ROA.605-10, ROA.616-39.

As a matter of law, these boilerplate "subject-to" and "as-is" clauses do not make the DDR Entities contractually liable to Ovintiv/Encana for the Richters' personal debt.

### a. "Subject-to" and "as-is" clauses are representations of a grantor, not a grantee.

First, under Texas Law, these clauses are not attributable to the grantee. Rather, they are representations by the grantors who signed the Deeds. ROA.601-39. The "subject-to" clause simply informs the grantee that limitations may exist as to the scope of title to the real property being conveyed. *Wenske v. Early*, 521 S.W.3d 791, 796 (Tex. 2017); *Kokernot v. Caldwell*, 231 S.W.2d 528, 532 (Tex. App.—Dallas 1950, writ ref'd); *Tex. Indep. Exploration, Ltd. v. Peoples Energy Prod.-Tex., L.P.,* No. 04–07–00778–CV, 2009 WL 2767037, at *5 (Tex. App.—San Antonio Aug. 31, 2009, no pet.) (mem. op.) ("the 'subject to' clause is the means by which the grantor provides "notice of outstanding interests that may affect a grantee's title."). For example, the Mineral Deeds state that they are "subject to" "all interests in minerals or royalties previously severed or vested, in third parties and not currently owned by Grantor." ROA.601-04, 611-15. Through this language, the Richters protected themselves against potential breach of warranty claims by subsequent owners. *Farm & Ranch,* 369 S.W.3d at 683.

A plain reading of the "as-is" clause—especially when considered with the rest of the language of the Special Warranty Deeds—confirms the "as-is" clause is the Richters' representation, not the DDR Entities'. *Luckel,* 819 S.W.2d at 461 (construe a deed in harmony with all provisions). The Special Warranty Deeds convey "all of the real property," including "all improvements located thereon," and then identify

the grantees. ROA.624-39. The "as-is" clause follows. ROA.624-39.  Reading this clause in the context of the entire Deed, the clause is a representation by the Richters informing the grantees that all the real property, including all improvements, is being conveyed without any warranty, except a limited warranty of title.

Both the "subject-to" and "as-is" clauses are representations by the Richters, not the DDR Entities. They cannot be construed as a promise binding the DDR Entities.

### b. The clauses are representations, not contractual promises.

Second, the "subject-to" and "as-is" clauses are not contractual promises— even by the grantors: A "'[s]ubject to' as used in conveyances, is a term of qualification and not of contract." *Kokernot*, 231 S.W.2d at 532; *see also  Averyt v. Grande, Inc.*, 686 S.W.2d 632, 634 (Tex. App.—Texarkana 1984) ("subject to" is a term of qualification, not of contract), *aff'd*, 717 S.W.2d 891 (Tex. 1986). "There is nothing in the use of the words 'subject to,' in their ordinary use, which would even hint at the creation of affirmative rights." *Kokernot*, 231 S.W.2d at 532; *Alfrey v. Ellington*, 285 S.W.2d 383, 387 (Tex. App.—Eastland 1955, writ ref'd n.r.e.) ("The paragraph providing that the conveyance is 'subject-to' the terms of the lease did not create rights."). In short, "a 'subject-to' clause is a limiting clause, and a qualifying term." *Cockrell v. Tex. Gulf Sulphur Co.*, 299 S.W.2d 672, 676 (1956). Conveying land "subject to" listed interests is merely a recognition that some outstanding

39

interests might affect the title being conveyed. *PYR Energy Corp. v. Samson Res. Co.*, 470 F. Supp. 22 709, 717 (E.D. Tex. 2007) ("Even if all of these assumptions are correct, the Letter Agreement is not expressly incorporated into the deed. Indeed, the conveyance is also made 'subject to' a long boiler-plate list of 'easements, exceptions, covenants, conditions, etc.'"). "In general, the principal function of a subject-to clause in a deed *is to protect a grantor against a claim for breach of warranty when some mineral interest is already outstanding*." *Wenske*, 521 S.W.3d at 796 (emphasis added).

In this case, the "subject-to" clauses in the Deeds simply list various categories of outstanding interests that may exist and limit the real property interest the Richters conveyed. ROA.601-39. The Richters made that representation, not the DDR Entities. Moreover, the "subject-to" clauses are not a promise. Their effect protects the Richters against any claim by the DDR Entities for breach of warranty. *Wenske*, 521 S.W.3d at 796.

Similarly, the "as-is" clause is not a promise. The purpose of an "as-is" clause in a real estate transaction is simply to affirm the seller "gives no express or implied guarantees regarding the value or the condition of the property." *Cole v. Johnson*, 157 S.W.3d 856, 862 (Tex. App.—Fort Worth 2005, no pet.). The clause precludes a buyer from relying on any warranty by the seller other than the seller's warranty of title in the deed. *Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d

156, 161 (Tex. 1995). So, the practical effect of the clause is to conclusively negate any reliance of the buyers regarding any representations by the sellers regarding the condition of the property. *Id.* Like a "subject-to" clause, the "as-is" clause protects a grantor. *See id.* ("as-is" clause "removes the possibility that the seller's conduct will cause [the buyer] damage.").

The District Court improperly treated the "subject-to" and "as-is" clauses as promises rather than representations. ROA.2245-48. The District Court also improperly attributed them to the DDR Entities, rather than the Richters. ROA.2245-48. Because of these two mistakes—which Texas law unequivocally precludes—the District Court misinterpreted the "subject-to" clauses and "as-is" clauses in the Deeds as a contractual assumption of the Richters' personal debt by the DDR Entities. ROA.2245-48.

The District Court, therefore, incorrectly dismissed the DDR Entities' contract, statutory, and conversion claims. The DDR Entities respectfully request that this Court reverse the District Court's Judgment, render judgment for the DDR Entities, and remand the attorney's fees claim for trial.

### 3. The DDR Entities did not contractually assume the Richters' personal debt simply because the Deeds acknowledged a debt might exist that affects the Subject Lands.

The Special Warranty Deeds state that "indebtedness" may exist. ROA.605-10, ROA.616-22, ROA.624-39. This acknowledgement is not a contractual

assumption of the Richters' personal debt. Even disregarding that the Richters' alleged debt never attached to the land, Texas law is well-established that a purchaser taking property "subject to" any existing debts attached to the land does not become personally liable therefor. *See Campbell v. Jones*, 230 S.W. 710, 718 (Tex. App.— Amarillo 1921, no writ) ("Taking a deed subject to a mortgage does not import a promise on the part of the purchaser to pay the mortgage."); *see also In re Mullin,* 433 B.R. 1, 17 (Bankr. S.D. Tex. 2010) (citing and quoting *City of Dallas v. Pfirman Corp.,* No. Civ.A. 399CV0312G, 2000 WL 159314, *2 (N.D. Tex. 2000) ("assuming the debt against the property takes title 'subject to' such matters . . . the purchaser is not personally liable for the payment of the lien unless he expressly assumes the same")).

For example, Texas law provides that a purchaser does not become liable for paying an existing mortgage—which, unlike a personal debt, attaches to real property—simply by acquiring that real property. *Id.*; *see* 424 F.2d 60, 62 (5th Cir. 1970) (stating that, in Texas, a conveyance "subject to" a mortgage does not impose personal liability on the purchaser). The purchaser must expressly assume the obligation to become personally liable for payment. *See Mullin,* 433 B.R. at 17; *Booth Fisheries Corp. v. Eardley*, 233 S.W.2d 872, 877 (Tex. App.—El Paso 1950, writ ref'd n.r.e.); *see George v. Blumberg*, 211 S.W. 309, 309 (Tex. App.—San Antonio 1919, no writ) ("The difference between the purchaser's assuming the payment of the

mortgage and simply buying subject to the mortgage is simply that in the one case he makes himself personally liable for the payment of the debt, and in the other case he does not assume such liability.") (internal citation and quotations omitted).

In this case, the Deeds merely caused the DDR Entities to recognize that if any existing "indebtedness" was attached to the real property interest, the real property would remain subject to that debt. ROA.605-10, ROA.616-22, ROA.624-39. Texas law does not construe the "subject-to" language as a contractual promise by the DDR Entities to pay existing indebtedness, much less the Richters' personal debt that was not even attached to the real property. *Mullin,* 433 B.R. at 17.

The Texarkana Court of Appeals' reasoning in *Arcadia Refining Co. v. Cook* is also instructive. 146 S.W.2d 767 (Tex. App.—Texarkana 1940, writ dism'd judgm't cor.). In *Arcadia*, the plaintiffs sued various defendants seeking to be paid the purchase price for the assignment of an oil and gas lease covering two ten-acre tracts. *Id.* at 768. The trial court found that $6,603.04 remained due and owing. *Id.* The principal controversy on appeal was who bore the obligation to pay this balance. *Id.*

Through various assignments, the defendants/appellees owned a 7/8 oil and gas leasehold covering a two-acre tract out of the twenty acres. *Id.* at 769. The plaintiffs/appellants argued that language in the assignment stating that the defendants/appellees took their interest "subject to" terms and conditions contained

in prior assignments encumbered the oil and gas lease with a proportion of the original purchase price. *Id.*

The Texarkana Court of Appeals disagreed. The court of appeals reasoned that, despite the "subject-to" clause,"[t]here is no proof in this record indicating that appellees have received any sum of money from the 2-acre lease belonging to [the appellants], or that they assumed payment of any claim of [the appellants] against the 2-acre lease." *Id.* at 771-72. The court explained, "[t]he most that can be said is that [defendants/]appellees bought the 2-acre lease subject to an outstanding oil payment" and "[i]n this situation appellees are not personally liable for any amount owing." *Id.* at 772.

As in *Arcadia*, Ovintiv/Encana cannot point to any evidence that the DDR Entities received any overpayment; in fact, it is undisputed that any overpayment arises from production occurring prior to the Deeds. ROA.203, ROA.361, ROA.2031-149, ROA.2182. *Arcadia* confirms that the "subject-to" clause is not, under Texas law, a contractual assumption of liability of an existing debt. *Id.; Schewe*, 424 F.2d at 62; *Mullin,* 433 B.R. at 17; *see Eardley*, 233 S.W.2d at 877 ("A recitation in a deed the conveyance is made subject to a debt or debts ordinarily means the grantee does not become personally liable for the debts."). As a matter of law, the Deeds are not a contractual promise by the DDR Entities to assume the Richters' personal debt. *Id.* Ovintiv/Encana had no contractual or other right to siphon and take

for itself over $600,000 in royalties belonging to the DDR Entities as the owners of the Mineral Interests. *See Mullin,* 433 B.R. at 17; *Eardley*, 233 S.W.2d at 877; *Blumberg*, 211 S.W. at 309. The District Court therefore erred by dismissing the DDR Entities' contract, statutory, and conversion claims.

> **B.  Even if the clauses could be construed as causing a grantee to contractually assume the liability for the conditions—contrary to longstanding Texas law—the Richters' personal debt is not one of the listed conditions.**

Even assuming (contrary to Texas law) that listing in a deed conditions or limitations to title somehow causes the grantee to become personally liable for these conditions or limitations, the Richters' personal debt does not qualify as any of the listed conditions in either the "subject-to" or the "as-is" clauses.

> **1.  The Richters' alleged personal debt did not exist when the Richters conveyed the Mineral Interests to the DDR Entities.**

Neither the "subject-to" nor the "as-is" clause could apply to the Richters' personal debt because it did not exist when they conveyed the property to the DDR Entities. At its most basic form, a "debt" is defined as "[l]iability on a claim; a specific sum of money due by agreement or otherwise." *DEBT*, BLACK'S LAW DICTIONARY (11th ed. 2019). A creditor may take legal action to recover a debt at the time when facts come into existence that authorize a claimant to seek a judicial remedy. *Murray v. San Jacinto Agency, Inc.,* 800 S.W.2d 826, 828 (Tex. 1990); *see Southern Sur. Co. v. Austin*, 22 F.2d 881, 882 (5th Cir. 1927) ("Defendant was under no obligation to

pay anything before plaintiff gave notice and made proof of loss."). In the context of a personal debt owed for alleged overpayments—as in this case—a cause of action accrues once the creditor discovers its error and, after a demand, the overpaid customer refuses to pay the money back. *Benson v. Travelers Ins. Co.*, 464 S.W.2d 709, 711 (Tex. App.—Dallas 1972, no writ) (noting that Travelers Insurance Company had a viable cause of action for money had and received once it discovered its error in overpaying a customer, demanded the money back, and the customer refused to return the money).

By its own admission, Ovintiv/Encana did not even discover its accounting error and alleged overpayments until after the Richters conveyed the Mineral Interests to the DDR Entities. ROA.231-33. As a matter of Texas law, the alleged debt did not exist when the Richters executed the Deeds. *Murray,* 800 S.W.2d at 828. Indeed, Ovintiv/Encana took no action to establish the existence of any debt until months after the Richters conveyed the Mineral Interests, and Ovintiv/Encana issued new division orders acknowledging and accepting the DDR Entities as the new mineral owners. ROA.231-33, ROA.684. Under settled Texas law, the Richters' alleged personal debt did not even exist when the Richters deeded the Mineral Interests to the DDR Entities. *Murray,* 800 S.W.2d at 828. Therefore, the clauses could not and did not address that alleged personal debt. *See Booth Fisheries*, 233

S.W.2d at 877 ("[A] conveyance passes the title free of unsecured debts, otherwise there could be no safe dealings in property.").

The Special Warranty Deeds state that the conveyance to the DDR Entities was "subject to" any "*existing indebtedness*." ROA.605-10, ROA.616-39 (emphasis added). Because the Richters' alleged personal debt did not exist at the time, under its own terms, the express language of the Special Warranty Deeds bars any finding that the Richters' alleged personal debt was contemplated by the Deeds. The District Court's ruling ignores the parties' intent, as evidenced by the express language in the conveyance instruments. *See Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 753 (Tex. 2020) (the Texas Supreme Court's "holistic and harmonizing approach" to construing deeds requires courts to consider all provisions and prohibits a court from giving greater weight to any particular clause over another).

Texas law holds that a party cannot assume a liability without expressly accepting it. *See Homeland Realty Co. v. Wheelock*, 119 S.W.2d 167, 168 (Tex. App.—El Paso 1938, no writ) ("Wheelock, in purchasing the land, did not assume the payment of the whole or any part of the debt now owned by appellant. He bought 'subject to all and any indebtedness now due and owing on said property.' He is, therefore, not personally liable for any part of said debt."). Texas courts routinely apply this principle to cases involving outstanding property tax payments, holding a purchaser of real property cannot be held personally liable for payment of delinquent

47

taxes without an express assumption. *See generally Fenion v. Harris County*, 569 S.W.3d 783, 796 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (explaining that while one who purchases property does not become personally liable for delinquent taxes). The property may be subject to a lien to secure payment of the delinquent taxes. *Id.* But while the property may become responsible for the outstanding debt, the purchaser of the real property does not become liable unless it is expressly assumed. *See State v. Lincoln Corp.*, 596 S.W.2d 593, 595-96 (Tex. App.—Beaumont 1980, writ ref'd n.r.e.) ("It is well settled that one who purchases property against which taxes are delinquent does not become personally liable therefor in the absence of an express assumption of the tax indebtedness.").

As such, when a grantee takes real property "subject to" debts, the only debts it can possibly be taking "subject to" are debts already attached to the property. If no existing debts are attached to the property, then the grantee is taking subject to nothing. Simply taking property "subject to" any debts does not operate to attach debts to the property. *Id.* No evidence indicates that the DDR Entities ever expressly assumed any of the Richters' outstanding personal debts, much less a then-nonexistent alleged overpayment debt. ROA.203-360, ROA.2031-193. Without such evidence, the DDR Entities cannot be held personally liable for the Richters' alleged personal debt. *Id.*, *see Wheelock*, 119 S.W.2d at 168 (obtaining real property to which a debt is attached does not confer personal liability upon the grantor to pay the debt).

### 2. The Richters' alleged personal debt is not a covenant running with the land.

Texas law provides that a subsequent purchaser is bound to perform a covenant that runs with the land. *Inwood North Homeowners' Ass'n, Inc. v. Harris*, 736 S.W.2d 632, 635 (Tex. 1987). The Richters' personal debt does not qualify as a covenant running with the land.

First and foremost, royalty payments transfer personal property. *Phillips.*, 513 F.2d at 363. Any overpayment reflects overpayment of personal property, creating—at most—a potential personal property debt for reimbursement of the overage. Douglas R. Hafer & Daniel B. Mathis, *Mineral Royalty Mispayments: The Payor's Rights, Obligations, and Risks in Royalty Mispayment Scenarios, Including the Pitfalls and Prerogative of Self-Help Recoupment*, 18 Tex. Wesleyan L. Rev. 85, 88 (2011) (citing *Edwards v. Mid-Continent Office Distributors*, L.P., 252 S.W.3d 833, 837 (Tex. App.—Dallas 2008, pet. Denied)). Personal debts do not run with the land. *Montfort v. Trek Res., Inc.*, 198 S.W.3d 344, 355 (Tex. App.—Eastland 2006, no pet.) ("Covenants that run with the land bind the heirs and assigns of the covenanting parties, while personal covenants do not.").

A covenant runs with the land only if:

- It touches and concerns the land;

- Relates to a thing in existence or specifically binds the parties and their assigns;

- Is intended by the original parties to run with the land; and

- The successor to the burden has notice.

*Baywood Estates Property Owners Ass'n, Inc. v. Caolo*, 392 S.W.3d 776, 784 (Tex. App.—Tyler, no pet.). Subdivision restrictions are typical covenants running with the land. *See id.* ("Where an owner of a tract subdivides and sells the subdivided parcels to separate grantees, imposing restrictions on the use of each parcel pursuant to a general plan or scheme of development, each grantee may enforce the restrictions against each other grantee."). "A restrictive covenant is a negative covenant that limits permissible uses of land." *Tarr v. Timberwood Park Owners Ass'n, Inc.* 556 S.W.3d 274, 279 (Tex. 2018).

The Richters' alleged personal debt to Ovintiv/Encana does not meet the characteristics of a covenant running with the land. The alleged royalty overpayments do not touch and concern the land. "A covenant touches and concerns the land when it affects the nature, quality, or value of what is conveyed, or if it either renders the grantor's interest in the land less valuable or renders the grantee's interest more valuable." *MJR Oil & Gas 2001 LLC v. AriesOne, LP*, 558 S.W.3d 692, 703 (Tex. App.—Texarkana 2018, no pet.). Once Ovintiv/Encana produced the minerals from the ground, the resulting royalties were personalty. *Phillips*, 513 F.2d at 363. Because

the royalties are no longer part of the real property, they cannot touch or concern the land. *Baywood Estates Property Owners Ass'n, Inc.*, 392 S.W.3d at 784.

Even if the Richters' alleged personal property debt touched and concerned the land—which it does not—the undisputed evidence shows that the alleged debt did not exist when the Richters conveyed the Mineral Interests to the DDR Entities. ROA.231-33. As such, the Richters and the DDR Entities could not have had the requisite intent or requisite notice for the nonexistent debt to qualify as a covenant running with the Mineral Interests. *Caolo*, 392 S.W.3d at 784.

Finally, Ovintiv/Encana lacks standing to enforce any covenant the Richters and the DDR Entities agreed to. "A restrictive covenant is ordinarily enforceable only by the contracting parties and those in direct privity of estate with the contracting parties." *Wasson Ints., Ltd. v. Adams*, 405 S.W.3d 971, 973 (Tex. App.—Tyler 2013, no pet.). "Privity of estate between covenanting parties means a mutual or successive relationship exists ***to the same rights in property***." *Id.* (emphasis added). The DDR Entities were in privity of estate with the Richters—not Ovintiv/Encana. ROA.601-39. The Richters' personal debt is not a covenant—much less a covenant between Ovintiv/Encana and the DDR Entities.

### 3. The Richters' personal debt is not an "encumbrance."

The Mineral Deeds state that the conveyances are subject to "all valid encumbrances of every kind and character." ROA.297, ROA.302. But this language

also does not create a contractual obligation for the DDR Entities to pay the Richters' alleged debt.

"Encumbrances" are statutorily defined in the Texas Property Code to include "a tax, an assessment, and a lien ***on real property***." TEX. PROP. CODE § 5.024. "'[E]ncumbrance means an estate, interest, or right in lands, diminishing their value to the general owner; a paramount right in, or weight upon, land which may lessen its value." *Thomson v. Locke*, 1 S.W. 112, 114 (Tex. 1886); *City of Dayton v. Allred,* 68 S.W.2d 172, 178 (Tex. 1934); *see Nationwide of Bryan, Inc. v. Dyer,* 969 S.W.2d 518, 521 (Tex. App.—Austin 1998, no pet.) ("An encumbrance is a right to, or interest in, property; it diminishes the value of the homestead and constitutes a burden on its transfer."). Liens, claims, easements, and servitudes are encumbrances. *Allred,* 68 S.W.2d at 178.

The Richters' personal debt is not an encumbrance. As discussed above, Ovintiv/Encana was not a party to the Deeds and received no benefit from any of the Deeds' provisions. Moreover, the Richters' debt—which is personalty—is separate from the Mineral Interests—which are realty—and did not even exist when the Richters conveyed the Mineral Interests. As such, the debt does not diminish the value of the realty.

Further, Texas courts hold that personal property interests are not encumbrances. *E.g., Anadarko E&P Co., LP v. Clear Lake Pines, Inc.*, No. 03-04-

00600-CV, 2005 WL 1583506, at *4 (Tex. App.—Austin July 7, 2005, no pet.) (mem. op.). For example, the Third Court of Appeals held—in a factually similar case—that royalties accruing prior to the leasehold transfer were not encumbrances on the leasehold. *Id*.

In *Anadarko*, Clear Lake, the lessor and owner of various wells, sued Anadarko, the current leaseholder, to recover statutory interest for late royalty payments on production before Anadarko became the leaseholder. *Id.* at *1. Clear Lake argued that because the conveyance to Anadarko listed Clear Lake's royalties as encumbrances, Anadarko assumed the obligation to pay royalties and, therefore, the statutory interest for late payments on past royalties. *Id.* Clear Lake and Anadarko filed competing summary judgment motions; the trial court granted Clear Lake's and denied Anadarko's. *Id.*

The Third Court of Appeals reversed and rendered a take-nothing judgment against Clear Lake. *Id.* at *5. The court of appeals explained, "encumbrances" are interests in real property—not personal property. *Id.* Moreover, Clear Lake had sued for interest on late royalty payments for minerals produced before Anadarko became the leaseholder. *Id.* at *1. Clear Lake owned the right to these late royalty payments (and the associated statutory interest) as personal—not real—property. *Id.* at *3. The court concluded Anadarko—as the successor in interest—did not assume any obligation to pay interest on the late-paid royalties. *Id.* at *4 ("Because the late-paid

royalties were interests in personalty prior to the leasehold transfer-since the minerals for which they were owed were severed prior to the leasehold transfer of March 10, 1995-they are not an "encumbrance" in Texas, and thus Anadarko did not assume the obligation to pay them."). The court of appeals further held: "Anadarko only assumed the obligations as to unaccrued royalties, that is, royalties that accrued after the closing date of the agreement." *Id.*

The court of appeals' holdings in *Anadarko* apply here. As in *Anadarko*, the royalty payments at issue were for production that occurred before the DDR Entities acquired the Mineral Interests. Like *Anadarko*, the DDR Entities acquired the interests subject to "encumbrances." *Compare id.* at \*4 *with* ROA.601-39. But as the Third Court of Appeals ruled in *Anadarko,* as a matter of law, "encumbrances" in Texas apply to real property—not personal property. *Anadarko,* No. 03-04-00600-CV, 2005 WL 1583506, at \*4; *see City of Dayton v. Alred*, 68 S.W.2d 172, 178 (Tex. 1934) ("As applied to an **estate in land**, [an encumbrance] may fairly include whatever charges, burdens, obstructs, or impairs its use, or prevents or impedes its transfer.") (emphasis added). Texas law is that royalties accrue and become personal property upon production of the minerals. *Phillips*, 513 F.2d at 363. Therefore, Ovintiv/Encana's alleged royalty overpayments to the Richters were transfers of personal property, just as the late royalty payments in *Anadarko* were Clear Lake's personal property. As in *Anadarko*, the Richters' personal property is not—as a

matter of law—an "encumbrance." *Anadarko,* No. 03-04-00600-CV, 2005 WL 1583506, at *4.

The Richters' personal debt—the alleged overpayment of royalties on production occurring prior to the conveyance—is not any of the conditions listed in the "subject-to" clauses. So, even if the clauses somehow could be construed as contractual assumptions of liability, the Richters' alleged debt is not within the scope of the "subject-to" clauses. For this additional reason, the District Court incorrectly dismissed the DDR Entities' contract, statutory, and conversion claims. The DDR Entities therefore request that this Court reverse the Judgment, render judgment for the DDR Entities on their contract, statutory, and conversion claims, and remand their attorney's fees claim for trial.

## III. The Division Orders Do Not Create A Contractual Obligation For The DDR Entities To Pay The Richters' Debt (Addressing Issues One, Two, Three (Conditionally), Four, And Seven).

The District Court also relied on certain language in the DDR Division Orders to rule that the DDR Entities are contractually obligated to pay the Richters' personal debt. ROA.679-82. But the District Court incorrectly interpreted, and misapplied, that language.

### A. The DDR Division Orders' safe-harbor language from Section 91.402 applies to payors'—not payees'—obligations.

The Texas Natural Resources Code requires a "payor" (such as Ovintiv/Encana) to distribute production proceeds to each "payee" (such as the DDR

Entities) within certain deadlines. TEX. NAT. RES. CODE § 91.402(a). "The purpose of section 91.402 is to protect royalty owners from intentional payment delays, but to permit delays that result from legitimate title disputes." *Headington Oil Co., L.P. v. White*, 287 S.W.3d 204, 210 (Tex. App.—Houston [14th Dist. 2009, no pet.) (finding that dispute over percentage of royalty interest constituted title dispute invoking Section 91.042's safe-harbor provisions). Section 91.402's safe-harbor provisions allow a payor to withhold payments in two circumstances: when a title dispute exists regarding the scope of a payee's interest and when the payor has overpaid royalties to the payee. TEX. NAT. RES. CODE §§ 91.402(b)(1), (c)(1)(D).

Ovintiv/Encana included in the DDR Division Orders boilerplate language tracking the safe-harbor provisions:

- [Ovintiv] is authorized to withhold payment pending resolution of a title dispute or adverse claim asserted *regarding the interest in production claimed herein by the undersigned [the DDR Entities]*.

- The undersigned [the DDR Entities] agree to indemnify and reimburse [Ovintiv] *any amount attributable to an interest to which the undersigned [the DDR Entities] is not entitled*.

ROA.679-82. The DDR Division Orders memorialize a procedure for distributing the oil and gas sales proceeds by authorizing and directing to whom and in what proportion to distribute the proceeds. *Neel v. Killam Oil Co., Ltd.*, 88 S.W.3d 334, 341 (Tex. App.—San Antonio 2002, pet. denied). Ovintiv/Encana must pay the DDR Entities their proportionate share of the proceeds from the sale of oil and gas unless

there is a title dispute, or the DDR Entities have received more royalties than they are owed. ROA.679-82.

**B.    There is no dispute over title to the Mineral Interests the DDR Entities own.**

The DDR Entities' title is not in dispute in this case. Ovintiv/Encana acknowledged this fact by issuing Division Orders to the DDR Entities, recognizing them as the new owners of the Mineral Interests formerly owned by the Richters, and putting them in pay status. ROA.679-82.As such, Ovintiv/Encana is not entitled to any relief under the safe-harbor provisions in Chapter 91 based on a title dispute.

Ovintiv/Encana argued below it is authorized to withhold royalties under the DDR Division Order because it has asserted an "adverse claim…regarding the interest in production." ROA.679-82. But this allegation does not trigger Section 91.402. The safe-harbor applies to *title* disputes, not merely disputes regarding an "interest in production." TEX. NAT. RES. CODE § 91.402(b)(1)(A).

Ovintiv/Encana is not claiming *title* to the DDR Entities' Mineral Interests. Rather, Ovintiv/Encana claims an interest in the DDR Entities' accrued royalties, which—as money—are personal property. ROA.679-82. Claiming a right to money is not claiming title to an interest in production (real property title). As such, Ovintiv/Encana's claim does not implicate the "title dispute" safe-harbor provision —it is simply claiming an interest in money.

**C. Ovintiv/Encana's affirmative defense relates to the Richters' interest, not the DDR Entities.**

The second category of safe-harbor language regarding indemnity and reimbursement also is not a contractual assumption of liability for Ovintiv/Encana's overpayment to the Richters. Division Orders are "binding between the parties '***for the time*** and to the extent that they have been or are being acted on and made the basis of settlements and payments." *Cabot Corp. v. Brown*, 754 S.W.2d 104, 107-08 (Tex. 1987) (quoting *Exxon Corp. v. Middleton*, 613 S.W.2d 240, 250-51 (Tex. 1981)) (emphasis added). The DDR Division Orders address production ***while the DDR Entities own the Mineral Interests***. ROA.679-82. The term of the agreement is for the period when the DDR Entities own the Mineral Interests. The provision simply allows Ovintiv/Encana to require the DDR Entities to reimburse Ovintiv/Encana if ***the DDR Entities*** receive royalties to which they are not entitled. ROA.679-82. It is undisputed the DDR Entities did not own the Mineral Interests during the period of the alleged overpayment and never received any overpayment. ROA.208-09. The DDR Entities received nothing to which they are not entitled and have no obligation to indemnify or reimburse Ovintiv/Encana for anything. The second safe-harbor provision is therefore inapplicable.

The DDR Division Orders are not a contract wherein the DDR Entities assumed a contractual obligation to reimburse Ovintiv/Encana for royalties they never even received. The District Court's Judgment is legally incorrect. The DDR

Entities, therefore, respectfully request that this Court reverse the District Court's Judgment, render judgment for the DDR Entities, and remand the DDR Entities' attorney's fees claim for trial.

## IV. Assuming The District Court Ruled That The Richters' Debt Attached To The Mineral Interests, That Ruling Is Contrary To Texas Law (Addressing Issues One, Two, Three (Conditionally), Four, And Seven).

The District Court's ruling focuses and appears to be based on a mistaken conclusion that the DDR Entities contractually assumed the Richters' alleged personal debt by the "subject-to" or "as-is" clauses in the Richters' Deeds or by the safe-harbor language in the DDR Division Orders. ROA.2245-48. But the District Court's Judgment contains one sentence stating, "Phrased differently, the Richters' royalty and ownership interests were encumbered or indebted by this overpayment." ROA.2246. To the extent this sentence is a ruling that the Richters' debt somehow attached to the DDR Entities' Mineral Interests and forms the basis for the remainder of the District Court's Judgment, that ruling contradicts Texas law.

Certainly, a mineral interest is an interest to which a lien can attach because a mineral interest is real property. *Luckel*, 819 S.W.2d at 461; *DEK-M Nationwide, Ltd. v. Eichner*, 627 S.W.3d 353, 365 (Tex. App.—Houston [14th Dist.] 2021, no pet.); *CKD Homes Direct, Ltd. v. Hegar*, No. 03-19-00776-CV, 2020 WL 3479257, at *5 (Tex. App.—Austin June 26, 2020, no pet.) (mem. op). But the Richters' personal debt did not attach to the Mineral Interests because no mechanism was ever used to

59

attach it. *See U.S. v. Bollinger Mobile Home Sales, Inc.*, 492 F. Supp. 496, 497 (N.D. Tex. 1980) ("In order to perfect a judgment lien on personal property, a form of execution such as garnishment is required."); *see also Enerlex, Inc.*, 1997 WL 562017, at *2 (excluding accumulated royalties from the sheriff's conveyance because the judgment that ordered the sheriff to levy upon and sell the debtor's property did not specifically include personal property).

The real property was not used as collateral for the Richters' debt (like in a mortgage). ROA.601-69. Ovintiv/Encana sought no writ of attachment to attach the debt to Mineral Interests. ROA.203-29. Ovintiv/Encana filed no lien against the Mineral Interests for the amount of the debt. ROA.203-29. Ovintiv/Encana abstracted no judgment against the Richters' in the county clerk's office. ROA.203-29. As such, the District Court's Judgment is legally incorrect and must be reversed and judgment must be entered for the DDR Entities on their claim for $608,815.63.

**V.  Under Texas Law, Limited Partnerships—Such As The DDR Entities— Are Separate Entities From Their Members; If The District Court's Ruling Could Be Construed As Piercing The DDR Entities' Veil, That Ruling Is Contrary To Texas Law (Addressing Conditionally Submitted Issue Five).**

The District Court did not directly rule that the DDR Entities are liable for the Richters' personal debt based on a finding the DDR Entities and the Richters are one and the same. ROA.204, ROA.2238-49. However, Ovintiv/Encana argued below that the Richters "control" the DDR Entities. ROA.204, ROA.2239. Assuming this

argument serves as any basis of the District Court's ruling, the District Court would have incorrectly pierced the DDR Entities' veil.

Ovintiv/Encana did not plead or offer any proof that the Richters personally and the DDR Entities are one and the same. Ovintiv/Encana's only support for such an argument is that "Duane Richter is the sole member of DDRD Management LLC, the sole general partner of both DDR limited partnerships." ROA.204. Ovintiv/Encana did not cite to any authority that by simply serving as the sole member of the DDR Entities' general partner, Mr. Richter and his wife "control" the DDR Entities. Moreover, even assuming the Richters did "control" the DDR Entities, there is no basis for holding the DDR Entities accountable for the Richters' alleged personal debt.

Well-established Texas law recognizes and protects the separate nature of business entities. Regarding partnerships, Texas has adopted the "entity theory," under which "the partnership is an entity separate and distinct from its partners." *In re Allcat Claims Serv. L.P.*, 356 S.W.3d 455, 463 (Tex. 2011); *see Am. Star Energy & Minerals Corp. v. Stowers*, 457 S.W.3d 427, 432 (Tex. 2015) ("As a right of the partner's statutorily confirmed status as a separate entity, a partnership's acts are only its own, not a partner's.").

Applying this longstanding Texas law, the District Court could not have properly held the DDR Entities responsible for the alleged liabilities of its partners

(much less the shareholder of an LLC partner). Indeed, the Texas Business Organizations Code expressly prohibits exactly that: "A creditor of a partner or of any other owner of a partnership interest does not have the right to obtain possession of, or otherwise exercise legal or equitable remedies with respect to, the property of the limited partnership." TEX. BUS. ORGS. CODE § 153.256(f); *see also* TEX. BUS. ORGS. CODE § 21.223 (generally, a holder of shares or an owner of any beneficial interest in shares may not be held liable to the corporation or its obligees respecting the shares or any contractual obligation of the corporation).

Texas law does not support holding the DDR Entities liable for the Richters' personal debt simply because Mr. Richter is a shareholder of the managing partner of DDR Entities. To the extent the District Court did so (which the Judgment does not appear to do), that ruling is legally incorrect and would further establish that the Judgment requires reversal.

## VI. Recoupment Is Not An Available Remedy (Responsive To Issue Six).

### A. Ovintiv/Encana failed to pursue its available claim against the Richters.

Once Ovintiv/Encana finally discovered its alleged overpayments to the Richters, it could have sought to recover from the Richters. For example, Ovintiv/Encana could have pursued a claim for money had and received against the Richters. Douglas R. Hafer & Daniel B. Mathis, *Mineral Royalty Mispayments: The Payor's Rights, Obligations, and Risks in Royalty Mispayment Scenarios, Including*

*the Pitfalls and Prerogative of Self-Help Recoupment*, 18 Tex. Wesleyan L. Rev. 85, 88 (2011).

Ovintiv/Encana could have attempted to recover alleged overpayments from the Richters. Ovintiv/Encana chose not to. ROA.684. Ovintiv/Encana never even told the Richters anything about its error, much less demanded reimbursement. ROA.684.And the Richters did not know—nor could they have learned without Ovintiv/Encana telling them—about the alleged overpayments. ROA.232.

Ovintiv/Encana failed to seek reimbursement from the persons it allegedly overpaid: the Richters. Instead, it sat on its rights. No equitable or legal reason now exists to permit Ovintiv/Encana to hold responsible entities that never received any overpaid royalties at all.

### B. Ovintiv/Encana Cannot Invoke the Theories of Offset or Recoupment Against the DDR Entities.

Even assuming *arguendo* that Ovintiv/Encana could look to the DDR Entities to pay the Richters' debt, the District Court allowed Ovintiv/Encana to forcibly deprive the DDR Entities of their royalties using recoupment. ROA.204, ROA.2238-47. This was also error.

#### 1. The District Court erroneously permitted Ovintiv/Encana to exercise recoupment.

Even if Texas law could be overlooked and the DDR Entities somehow contractually assumed the Richters' debt, Ovintiv/Encana had no right to use the self-

help remedy of recoupment to abscond with the DDR Entities' royalties. Recoupment only applies when equity demands and the claims of both debtor and creditor arise out of the same transaction. *In re Gasmark Ltd.*, 193 F.3d 371, 375 (5th Cir. 1999); *Matter of Kosadnar*, 157 F.3d 1011, 1013 (5th Cir. 1998); *Garza v. Allied Finance Co.*, 566 S.W.2d 57, 62-63 (Tex. App.—Corpus Christi 1978, no writ). Neither of these elements exists here.

The equities do not support recoupment. Ovintiv/Encana claims it overpaid royalties to the Richters. But that allegation—even if true—was caused by Ovintiv/Encana's own internal accounting—a process totally under Ovintiv/Encana's responsibility and control. ROA.231-33, ROA.684. As such, the alleged debt Ovintiv/Encana attempts to foist upon the DDR Entities resulted from Ovintiv/Encana's own conduct, not conduct by the Richters or the DDR Entities. Ovintiv/Encana made no effort whatsoever to compel—or even ask—the Richters to return the alleged overpayment. And the Richters had no due process opportunity to litigate the validity of any alleged overpayment.

Moreover, the DDR Entities have received no benefit from Ovintiv/Encana's mistake. It is undisputed that if an overpayment did occur, Ovintiv/Encana conferred those funds solely to the Richters—the DDR Entities have not received a dime of the overpayment. ROA.231-33, ROA.684. It is further undisputed that neither the Richters nor the DDR Entities knew of the alleged overpayment when the Richters

conveyed the Mineral Interests. ROA.231-33, ROA.684. The balance of equities falls on the side of the DDR Entities; it would be severely *inequitable* to force the DDR Entities to bear the burden of Ovintiv/Encana's own mistake and pay back a "debt" they do not even owe.

The record also confirms that Ovintiv/Encana's defense arises under a different set of transactions from its royalty transactions with the DDR Entities. Ovintiv/Encana's claim arose from payments to the Richters occurring when the Richters owned the Mineral Interests from September 2016 to January 2018. ROA.231-33, ROA.684. Ovintiv/Encana engaged in a series of transactions paying royalties on that production pursuant to the Division Orders between Ovintiv/Encana and the Richters. ROA.679-82.

In contrast, the DDR Entities' claim arises from a separate set of transactions: production and non-payments occurring after December 2017, during a time the DDR Entities owned the Mineral Interests. ROA.1161-72. This recent production triggered Ovintiv/Encana's duty to pay royalties to the DDR Entities under the DDR Division Orders. ROA.679-82, ROA.1161-72.

Ovintiv/Encana's overpayment allegation and the DDR Entities' claims arise from different sets of transactions: different production, different time periods, different Mineral Interests owners, different division orders, and different events triggering a contractual obligation to pay. *See Kosadnar,* 157 F.3d at 1015 (holding

no general standard exists governing whether events are part of same or different transactions); *United States ex rel. United States Postal Serv. v. Dewey Freight Sys., Inc.,* 31 F.3d 620, 623 (8th Cir .1994) ("[G]iven the equitable nature of the [recoupment] doctrine, courts have refrained from precisely defining the same-transaction standard, focusing instead on the facts and the equities of each case."). The opposing claims—Ovintiv/Encana's for overpayment of royalties from September 2016 to January 2018 and the DDR Entities' for payment of royalties after January 2018—do not arise from the same transaction.

The District Court cited a Kansas Supreme Court opinion, *Waechter v. Amoco Production Co.*, to support its application of recoupment. ROA.2243. But that court explained that the purpose of recoupment is to ***allow the parties to be left as they were***. *Waechter v. Amoco Prod. Co.*, 537 P.2d 228, 255 (Kan. 1975). Applying recoupment here defies that purpose. The DDR Entities never received any alleged overpayments. Nor did the DDR Entities have any right to the royalties Ovintiv/Encana paid to the Richters. The parties will not be left as they were if recoupment is applied. The DDR Entities will be left underpaid by over $600,000.

Even if the DDR Entities somehow contractually assumed the Richters' personal debt for an alleged overpayment—contrary to longstanding Texas law—it was error for the District Court to allow Ovintiv/Encana to recoup the alleged overpayment from the DDR Entities. The District Court erred by granting

Ovintiv/Encana's motion for summary judgment and denying the DDR Entities'. The DDR Entities respectfully request that this Court reverse the District Court's Judgment, render judgment for the DDR Entities for $608,815.63, and remand the DDR Entities' attorney's fees claim for trial.

### 2. Ovintiv/Encana also cannot rely on offset (as the District Court correctly determined).

The District Court did not treat Ovintiv/Encana's recoupment as an offset. ROA.204, ROA.2243-45. And rightly so: Ovintiv/Encana cannot invoke any right to offset. Offset involves the universe of transactions between the same parties. Indeed, the affirmative defense of offset "is proper only where demands are mutual, ***between the same parties***, and in the same capacity or right." *Brook Mays Organ Co., Inc. v Sondock,* 551 S.W.2d 160, 166 (Tex. App.—Beaumont 1977, writ ref'd n.r.e.) (emphasis added); *Capital Concepts Props. 85-1 v. Mut. First,* 35 F.3d 170, 175 (5th Cir. 1994). Both demands must mutually exist between the same parties for one demand to offset another. *Dallas/Fort Worth Airport Bank v. Dallas Bank & Trust Co.,* 667 S.W.2d 572, 575 (Tex. App.—Dallas 1984, no writ). As a matter of law, Ovintiv/Encana is not entitled to use offset to evade responsibility for converting the DDR Entities' royalties. As such, the District Court's Judgment requires reversal.

## VII. Ovintiv/Encana's Failure To Pay The DDR Entities Their Royalties Violates The Texas Natural Resources Code (Responsive to Issue Four).

Like its dismissal of the contract and conversion claims, the District Court dismissed the DDR Entities' claim under the Texas Natural Resources Code based on its finding that the DDR Entities were contractually obligated to pay the Richters' alleged debt. ROA.2248. The Texas Natural Resources Code creates specific deadlines for payment of proceeds derived from the sale of oil or gas. TEX. NAT. RES. CODE § 91.402(a). It is undisputed that the statutory deadlines for payment of the unpaid royalties owed to the DDR Entities have passed, and the DDR Entities sent proper written notice of their claim to Ovintiv/Encana. ROA.1131-32. As discussed above, Ovintiv/Encana has no basis under Section 91.402 to withhold royalty payments owed to the DDR Entities (*see supra* at I., II., III., IV.). Ovintiv/Encana has refused to pay the DDR Entities these royalties. ROA.1134-52. As such, the evidence conclusively proves that Ovintiv/Encana violated Section 91.402. The DDR Entities therefore respectfully ask that this Court reverse the District Court's Judgment, render judgment for the DDR Entities in the amount of $608,815.63, and remand the attorney's fees claim for trial.

## VIII. The District Court Erred By Dismissing The DDR Entities' Conversion Claim (Responsive to Issue Seven).

The District Court dismissed the DDR Entities' conversion claim on two grounds: its ruling the DDR Entities were contractually obligated to pay the Richters'

alleged personal debt and its separate ruling that conversion does not apply to royalty payments. ROA.2248. As discussed above, the District Court erred by ruling that the DDR Entities contracted to pay the Richters' alleged personal debt (*see supra* at I., II., III.). The District Court also erred by ruling that a conversion claim does not apply to Ovintiv/Encana's wrongful taking of the DDR Entities' personal property.

The District Court quoted the Western District of Texas as stating in *Erwin v. Russ,* No. 09-CA-127, 2010 WL 11506838, at *3 (W.D. Tex. July 19, 2010), *aff'd* 481 F. App'x 128 (5th Cir. 2012), that "mineral interests and debts for owed royalties are not proper subjects of Texas conversion claims." ROA.2248. However, the District Court's reliance on *Erwin* is misplaced.

In *Erwin,* two of the defendants—Encana Oil and Gas, Inc. ("Encana") and Leor Energy, L.P. ("Leor")—filed motions to dismiss arguing the plaintiffs' allegations did not state a claim for which they could obtain relief. *Erwin*, No. 09-CA-127, 2010 WL 11506838 at *1. Those allegations related to the payment of royalties from a mineral interest and arose from alleged misdeeds of Palmos, Russ, McCullough & Russ, L.L.P. ("the Firm"). *Id.* at *2. According to the plaintiffs, several heirs to a one-half mineral interest in approximately 157 acres consulted with the Firm, which advised them it was not worthwhile to determine their individual interests. W:09-CA-127, 2010 WL 11506838, at *2. Later, the Firm formed shell

corporations and otherwise assisted in performing sham transactions designed to wrongfully acquire the same mineral interest. *Id.*

The only factual allegations the plaintiffs alleged against Encana and Leor were that Leor executed a confirmation of royalties with the parties claiming to own a mineral interest, Encana paid royalties according to the confirmation, and Encana and Leor knew of the falsity of the parties' royalty ownership. *Id.* The trial court granted Encana and Leor's motion to dismiss. *Id.*

On appeal, the *Erwin* court barely mentioned the plaintiffs' conversion claims against Encana and Leor. *Id.* at 3. The language the District Court quoted below constitutes the entirety of the *Erwin* court's discussion on conversion. ROA.2248. Notably, the *Erwin* court relied solely on two cases to address conversion: *Lighthouse Church v. Texas Bank,* 889 S.W.2d 595, 599 n.4 (Tex. App.—Houston [14th Dist.] 1994, writ denied) and *Rente Co. v. Truckers Express,* 116 S.W.3d 326, 332 (Tex. App.—Houston [14th Dist.] 2003, no pet.). *Erwin,* W:09-CA-127, 2010 WL 11506838 at *3.

In *Lighthouse Church*, the court rejected a conversion claim asserted by a church against a bank that allegedly entered the church's real property and repossessed it. 889 S.W.2d at 599 n.4. In *Truckers Express,* Truckers Express sued Rente for terminating a lease. 116 S.W.3d at 239. Rente counterclaimed for breach of contract, fraud, and conversion. *Id.* The Fourteenth Court of Appeals found that

Rente could assert its conversion claim for the equipment, but not for profits or other payments Truckers Express allegedly owed to Rente. *Id.* at 332.

Neither of these cases applies here. The DDR Entities sued Ovintiv/Encana for converting their personal—not real—property. As such, *Lighthouse* Church—which holds only that real property cannot be converted—is inapposite. And this suit does not simply seek payment of profits or disputed amounts allegedly owed under a contract as in *Truckers Express*. Ovintiv/Encana admits the DDR Entities owned the royalties. ROA.208-09. But Ovintiv/Encana still took them anyway. ROA.208-09. This is exactly the factual scenario addressed by a conversion claim. *Arthur W. Tifford, PA v. Tandem Energy Corp.*, 562 F.3d 699, 705 (5th Cir. 2009) (quoting *Waisath v. Lack's Stores, Inc.,* 474 S.W.2d 444, 447 (Tex.1971)) ("The unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights, is in law a conversion.").

To establish conversion of personal property, a plaintiff must prove that (1) the plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) the defendant unlawfully and without authorization assumed and exercised dominion and control over the property, excluding or inconsistent with, the plaintiff's ownership rights; (3) the plaintiff demanded return of the property; and (4) the defendant refused. *Smith v. Maximum Racing, Inc.*, 136 S.W.3d 337, 341 (Tex.

71

App.—Austin 2004, no pet.). The DDR Entities conclusively establish each of the requisite elements.

Ovintiv/Encana sold minerals it produced from the Subject Lands. ROA.208-09. A portion of those proceeds are the DDR Entities' personal property, which can be converted. *E.g.*, *W.B. Johnson Drilling Co v. Lacy*, 336 S.W.2d 230, 233 (Tex. App.—Eastland 1960, no writ) ("***A conversion of the proceeds of the sale of oil, or a conversion of the oil itself after it was produced and severed from the land would be a conversion of personal property.***") (emphasis added). Ovintiv/Encana took the royalties it knew the DDR Entities owned: It exercised illegal dominion and control over the royalties. ROA.208-09. The DDR Entities demanded payment (ROA.23-50479.1131-32), and Ovintiv/Encana refused (ROA.23-30). As a result, the DDR Entities have suffered damages—their $608,815.63 was stolen.

The record contains conclusive evidence supporting each element of the DDR Entities' conversion claim. As such, the District Court erred by dismissing that claim. The DDR Entities therefore respectfully request that this Court reverse the District Court's Judgment and render judgment for the DDR Entities.

## CONCLUSION

The District Court did not follow Texas law. The DDR Entities did not contractually assume the Richters' debt by accepting the Deeds with "subject-to" and "as-is" clauses. The DDR Division Orders do not contain any provision by which the

72

DDR Entities assumed liability for the Richters' personal debt. Yet, Ovintiv/Encana absconded with over $600,000 of the DDR Entities' personal property, violating the parties' contract and the Texas Natural Resources Code, and committing conversion.

The DDR Entities respectfully request that this Court reverse the District Court's Judgment, render judgment in favor of the DDR Entities for $608,815.63, and remand the DDR Entities' attorney's fees claim for trial. In the alternative, the DDR Entities request that the Court reverse and remand for a new trial. The DDR Entities request such other relief to which they may be entitled, at law or in equity.

Respectfully submitted,

**SANTOYO WEHMEYER P.C.**

*/s/ Corey F. Wehmeyer*
Corey F. Wehmeyer (SBN 24051903)
*cwehmeyer@swenergylaw.com*
Renée A. Yanta (SBN 00787483)
*ryanta@swenergylaw.com*
Emily A. Gearhart (SBN 24065871)
*egearhart@swenergylaw.com*
12400 San Pedro Avenue, Suite 300

San Antonio, Texas 78216
Telephone: (210) 998-4200
Facsimile: (210) 998-4201

**CERTIFICATE OF SERVICE**

I, Renée A. Yanta, hereby certify that on October 31, 2023, I electronically

filed the foregoing brief with the Clerk of Court using the CM/ECF filing system,

which will automatically send notification of the filing to all counsel of record in this

appeal.

Christopher M. Hogan
Texas Bar No. 24065434
chogan@hoganthompson@com
Samantha L. Thompson
Texas Bar No. 24102568
sthompson@hoganthompson.com
Hogan Thompson LLP
1001 Fannin Street, Suite 4775
Houston, Texas 77002

Attorneys for Appellees
OVINTIV USA, INC. AND
ENCANA OIL & GAS (USA), INC.

_/s/ Corey F. Wehmeyer_
Corey F. Wehmeyer

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(a), counsel for Plaintiffs-Appellants, DDR Weinert, LTD and DDR Williams, LTD hereby certifies as follows:

1.      This brief complies with the word limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12,715 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.2.

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally-spaced typeface, including serifs, using Microsoft Word, in Times New Roman 14-point font, except for the footnotes, which are in proportionally-spaced typeface, including serifs, using Microsoft Word in Times New Roman 12-point font.

SO CERTIFIED, this 31st day of October 2023.

*/s/ Corey F. Wehmeyer*
Corey F. Wehmeyer
Attorney of Record for Plaintiffs-
Appellants DDR Weinert, LTD and
DDR Williams, LTD