No. 23-50479

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

**DDR WEINERT, LIMITED; DDR WILLIAMS, LIMITED**,
*Plaintiffs – Appellants*

v.

**OVINTIV USA, INCORPORATED; ENCANA OIL & GAS (USA), INCORPORATED**,
*Defendants – Appellees*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS, SAN ANTONIO DIVISION
Civil Action No. 22-CV-00558-XR
Honorable Xavier Rodriguez, District Judge, presiding

# ORIGINAL BRIEF FOR DEFENDANTS–APPELLEES
# OVINTIV (USA), INC. F/K/A ENCANA OIL & GAS (USA), INC.

**HOGAN THOMSON SCHUELKE LLP**
Christopher M. Hogan
Texas Bar No. 24065434
Samantha L. Thompson
Texas Bar No. 24102568
1001 Fannin Street, Suite 4775
Houston, Texas 77002
*chogan@hoganthompson.com*
*sthompson@hoganthompson.com*
Telephone: (713) 671–5630
Facsimile: (713) 671-5632
***Attorneys of Record for Defendants-Appellees,***
***Ovintiv (USA), Inc. f/k/a Encana Oil & Gas, Inc.***

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

**DDR WEINERT, LIMITED; DDR WILLIAMS, LIMITED**,
*Plaintiffs – Appellants*

v.

**OVINTIV USA, INCORPORATED; ENCANA OIL & GAS (USA), INCORPORATED**,
*Defendants – Appellees*.

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made so that the judges of this court may evaluate possible disqualification or recusal.

***Plaintiffs–Appellants***

DDR Weinert, Ltd.

DDR Williams, Ltd.

***Counsel for Plaintiffs–Appellants***

SANTOYO WEHMEYER P.C.

Corey F. Wehmeyer
Renée A. Yanta
Emily A. Gearhart

*Defendants–Appellees*

Ovintiv (USA), Inc. f/k/a Encana Oil & Gas (USA), Inc.

Ovintiv (USA), Inc. is a wholly owned subsidiary of Alenco Inc. (a private company), which is in turn a wholly owned subsidiary of Ovintiv Inc. (a publicly-traded Delaware corporation). At the current time, both Dodge & Cox (a private entity) and BlackRock Inc. (a public company) own more than 10% of the stock of Ovintiv Inc.

*Counsel for Defendants–Appellees[1]*

HOGAN THOMPSON SCHUELKE LLP

Christopher M. Hogan
chogan@hoganthompson.com.

Samantha L. Thompson
sthompson@hoganthompson.com

1001 Fannin St.
Suite 4775
Houston, Texas 77002
Telephone: (713) 671-5630

> /s/ Christopher M. Hogan
> Christopher M. Hogan
>
> **Attorney of Record for Defendants–Appellees,
> Ovintiv (USA), Inc. f/k/a Encana Oil & Gas, Inc.**

---

[1] The Principal Brief of Plaintiffs-Appellants includes incorrect information for Defendants-Appellees' counsels' physical mailing address, both email addresses, and phone number. This information is included above to ensure accuracy.

**STATEMENT REGARDING ORAL ARGUMENT**

Defendant-Appellee Ovintiv (USA), Inc. f/k/a Encana Oil & Gas (USA), Inc. does not believe that oral argument is necessary. The District Court decided the Cross-Motions for Summary Judgment at issue on the papers without argument. The issues properly before this Court are no more complex now than before. Further, most of the Appellants' appellate issues were not presented to the District Court and do not require oral argument because they have been forfeited. That said, if the Court wishes to hear oral argument, Ovintiv reserves the right to fully participate.

# TABLE OF CONTENTS

Certificate of Interested Persons ................................................................. ii

Statement Regarding Oral Argument ........................................................ iv

Table of Contents ....................................................................................... v

Table of Authorities ................................................................................. ix

Statement of Jurisdiction.......................................................................... 1

Statement of Issues Presented for Appeal................................................ 1

Statement of the Case............................................................................... 3

    I.      The Richters create two wholly owned and controlled entities for their estate planning............................................................ 3

    II.    The Richters conveyed their interest in the Property and Leases to DDR............................................................................ 4

        A.     The Special Warranty Deeds transferred interests to DDR that were burdened by "any existing indebtedness."................ 4

        B.     The Mineral Deeds transferred interests to DDR that were burdened by "all valid encumbrances." ..................................... 5

        C.     DDR agrees to indemnify and reimburse Ovintiv under division orders.......................................................................... 6

    III.   Ovintiv inadvertently overpays the Richters while unintentionally underpaying other mineral interest owners................ 7

    IV.   Ovintiv recoups overpaid monies from DDR to properly pay underpaid mineral interest owners. ..................................................... 8

Summary of the Argument......................................................................... 9

Argument.................................................................................................. 11

I.     The applicable standard of review for DDR's arguments depends on whether they were presented at the District Court or raised for the first time on appeal. ..........................................................11

     A.    De novo review applies to arguments presented to the District Court.......................................................................11

     B.    Because DDR forfeited most of its arguments by raising them for the first time on appeal, de novo review will not apply...................................................................................11

II.    The District Court correctly held that Ovintiv was entitled to recoup the overpayments to the Richters from DDR. .........................15

     A.    Recoupment is an important and widely used self-help remedy in the industry, and Ovintiv properly used it here. .......16

          1.    Both DDR's and Ovintiv's evidence in the District Court supported Ovintiv's recoupment of overpaid royalties....................................................................16

          2.    Commentators and Courts recognize recoupment as a valid practice in the oil and gas industry. .....................18

          3.    DDR asks this Court to create a blueprint for overpaid royalty owners to avoid returning funds that are not theirs. ........................................................20

     B.    The Deeds conveyed the Richters' overpayment liability to DDR. ...............................................................................22

          1.    DDR forfeited its brand-new arguments related to the Deeds and their transferring of the Richters' overpayment obligations to DDR.................................22

          2.    DDR's forfeited arguments fail under Texas law. .........23

            a.    The Deeds transferred all burdens—including the overpayment obligation—to DDR....................................23

            b.    The overpayment obligation is a liability tied to the Property and Leases, not a personal liability....................24

c.  The Richters expressly deeded their mineral interests to DDR subject to any indebtedness or encumbrance. .........27

d.  Ovintiv need not be a party to the Deeds to exercise its right to recoupment. .......................................................34

e.  The Richters' overpayment, and liability for its repayment, predate the Deeds. ............................................................35

f.  DDR forfeited any argument that Ovintiv had to take steps to "attach" the Richters' overpayment liability to the Leases or mineral interests. ...............................................37

g.  DDR makes a new argument about the meaning of "encumbrance," but it is also unavailing. ..........................39

C.  DDR's argument that the Richters' liability is not a covenant running with the land is a red herring. ......................41

III.  The Division Orders bolster the holding that DDR is liable for the Richters' overpayments. ................................................................42

A.  DDR's silence on *Gavenda* speaks volumes about its effort to impose an inequitable result on ..................................43

B.  The Division Orders permit Ovintiv's recoupment. .................44

C.  DDR's appellate arguments do not negate the operation of the Division Orders. ..................................................................45

IV.  DDR's arguments contravene the Leases. ..........................................47

V.  The District Court did not pierce a corporate veil between DDR and Duane Richter, who controls both DDR entities. .........................48

VI.  The Court may also affirm the Judgment on Ovintiv's alternative equitable defense. ...............................................................................48

VII.  The District Court correctly dismissed DDR's statutory claim. .........52

VIII. The District Court correctly dismissed DDR's conversion claim. 52

     A.     Dismissal of the conversion claim is proper because it is barred by the economic loss rule. .................................................53

     B.     DDR's conversion claim is also barred by limitations. ............54

IX.    DDR's Partial Motion for Summary Judgment cannot be granted because there is a fact issue on damages.............................................54

Conclusion .........................................................................................................55

Certificate of Service .........................................................................................57

Certificate of Compliance ..................................................................................58

# TABLE OF AUTHORITIES

**Cases**                                                               **Page(s)**

*Aery v. Hoskins*, Inc.,
 493 S.W.3d 684 (Tex. App.—San Antonio 2016, pet. denied) ........................... 23

*Amoco Prod. Co. v. Smith*,
 946 S.W.2d 162 (Tex. App.—El Paso 1997, no writ) .................................... 20, 36

*Anadarko E&P Co. v. Clear Lake Pines, Inc.*,
 2005 WL 1583506 (Tex. App.—Austin July 7, 2005, no pet.) ..................... 26, 39

*Arcadia Ref. Co. v. Cook*,
 146 S.W.2d 767 (Tex. App.—Texarkana 1940, writ dism'd judgm't cor.) .. 32, 33

*Benson v. Travelers Ins.*,
 464 S.W.2d 709 (Tex. Civ. App.—Dallas 1971, no writ) ................................... 36

*Booth Fisheries Corp. v. Eardley*,
 233 S.W.2d 872 (Tex. App.—El Paso 1950, writ ref'd n.r.e.) ............................ 32

*Campos v. Steves & Sons, Inc.*,
 10 F.4th 515 (5th Cir. 2021) ....................................................................... 49, 53

*Chapman Custom Homes, Inc. v. Dall. Plumbing Co.*,
 445 S.W.3d 716 (Tex. 2014).............................................................................. 53

*City of Carlsbad v. Grace*,
 966 P.2d 1178 (N.M. Ct. App. 1998)................................................................. 19

*City of Dallas v. Pfirman Corp.*,
 2000 WL 159314 (N.D. Tex. Feb. 11, 2000)................................................... 32, 41

*City of Dayton v. Allred*,
 68 S.W.2d 172 (Tex. Comm'n App. 1934)......................................................... 40

*CKD Homes Direct, Ltd. v.* Hegar,
 2020 WL 3479257 (Tex. App.—Austin June 26, 2020, no pet.) ........................ 38

*Cockrell v. Tex. Gulf Sulphur Co.*,
 299 S.W.2d 672 (Tex. 1956)...................................................................... 24, 29

*ConocoPhillips Co. v. Koopmann*,
 542 S.W.3d 643 (Tex. App.—Corpus Christi 2016) ........................................... 53

*DEK-M Nationwide, Ltd.*,
 627 S.W.3d 353 (Tex. App.—Houston [14th Dist.] 2021, no pet. ...................... 38

*Fenlon v. Harris County*,
 569 S.W.3d 783 (Tex. App.—Houston [1st Dist.] 2018, no pet.) .................. 36,37

*Flores v. FS Blinds, L.L.C.*,
 73 F.4th 356 (5th Cir. 2023) ...................................................................... 12

*Freston v. Gulf Oil Co.*,
 565 P.2d 787 (Utah 1977) .................................................................................. 19

*Garza v. Allied Fin. Co.*,
 566 S.W.2d 57 (Tex. App.—Corpus Christi 1978, no writ)........................... 49, 50

*Gavenda v. Strata Energy, Inc.*,
 705 S.W.2d 690 (Tex. 1986).......................................................... 9, 43, 44, 46

*George v. Blumberg*,
  211 S.W. 309 (Tex. App. —San Antonio 1919, no writ) ...................................... 31

*Henry v. Smith*,
  637 S.W.3d 226 (Tex. App.—Fort Worth 2021, pet. denied) ............................ 23

*Johnson v. Enerlex, Inc.*,
  1997 WL 562017 (Tex. App.—Austin Sept. 11, 1997, pet. denied) ................... 27

*Keelan v. Majesco Software, Inc.*,
  407 F.3d 332 (5th Cir. 2005) ........................................ 11, 12, 13, 23, 25, 28

*Lemon v. Hagood*,
  545 S.W.3d 105 (Tex. App.—El Paso 2017, pet. denied) .................................. 40

*Lyle v. Jane Guinn Revocable Tr.*,
  365 S.W.3d 341 (Tex. App.—Houston [1st Dist.] 2010, pet. denied ................. 42

*Matter of Minh Van Truong*,
  789 Fed. Appx. 420 (5th Cir. 2019) .................................................................. 39

*McGlothin v. State Farm Mut. Ins.*,
  925 F.3d 741 (5th Cir. 2019) .......................................................................... 11

*Murray v. San Jacinto Agency, Inc.*,
  800 S.W.2d 826 (Tex. 1990) ........................................................................... 36

*NB Gathering IX Pref, L.L.C. v. Nelson*,
  2022 WL 347610 (N.D. Tex. Feb. 4, 2022) ..................................................... 54

*Nelson v. Linn Midcontinent Expl., L.L.C.*,
  228 P.3d 533 (Okla. Civ. App. 2009) .............................................................. 19

*Phillips Petroleum Co. v. Adams*,
  513 F.2d 355 (5th Cir. 1975) ............................................................... 24, 25

*Piney Woods Country Life Sch. v. Shell Oil Co.*,
  726 F.2d 225 (5th Cir. 1984) ................................................................ 53

*Reeves v. Towery*,
  621 S.W.2d 209 (Tex. App.—Corpus Christi 1981, writ ref'd n.r.e. .................. 24

*Rogers v. Ricane Enters., Inc.*,
  930 S.W.2d 157 (Tex. App.—Amarillo 1996, writ denied) ................................ 54

*Rollins v. Home Depot USA*,
  8 F.4th 393 (5th Cir. 2021) ........................................... 11, 12, 22, 38, 39

*SBI Invs., LLC v. Quantum Materials Corp.*,
  2018 WL 1191854 (Tex. App.—Austin Mar. 8, 2018, no pet.) ......................... 52

*Smith Int'l, Inc. v. Egle Grp., LLC*,
  490 F.3d 380 (5th Cir. 2007) ................................................................ 53

*Southern Surety Co. v. Austin*,
  22 F.2d 881 (5th Cir. 1927) .................................................................. 36

*Sw. Bell Tel. Co. v. Mktg. on Hold Inc.*,
  308 S.W.3d 909 (Tex. 2010) ................................................................. 52

*Tanglewood Terrace, Ltd. v. City of Texarkana*,
  996 S.W.2d 330 (Tex. App.—Texarkana 1999, no pet.) ................................. 36

*Tex. Lone Star Petroleum Corp. v. Chesapeake Oper. Inc.*,
  2016 WL 6677939 (S.D. Tex. Nov. 14, 2016) ........................................... 19

*Thomson v. Locke*,
   1 S.W. 112 (Tex. 1886) .......................................................................... 40

*Trien v. Fed. Home Loan Mortg. Corp.*,
   400 F. Supp. 3d 596 (W.D. Tex. 2019) .................................................. 31

*Twelve Oaks Tower I, Ltd. V. Premier Allergy, Inc.*,
   938 S.W.2d 102 (Tex. App.—Houston [14th Dist.] 1996, no writ) ................... 41

*Verde Minerals, LLC v. Burlington Res. Oil & Gas Co., LP*,
   360 F. Supp. 3d 600 (S.D. Tex. 2019) .................................................. 42

*Verde Minerals, LLC v. Koerner*,
   2017 WL 7052205 (S.D. Tex. Aug. 14, 2017) ........................................ 53

*W&T Offshore, Inc. v. Bernhardt*,
   946 F.3d 227 (5th Cir. 2019) ................................................ 20, 49, 50

*Waechter v. Amoco Prod. Co.*,
   537 P.2d 228 (Kan. 1975) .................................................................. 18

*WBCMT 2007 C33 OFFICE 9720, L.L.C. v. NNN Realty Advisors, Inc.*,
   844 F.3d 473 (5th Cir. 2016) .............................................................. 46

*Wenske v. Ealy*,
   521 S.W.3d 791 (Tex. 2017) .............................................................. 28

*Yzaguirre v. KCS Res., Inc.*,
   47 S.W.3d 532 (Tex. App.—Dallas 2000) ............................................ 53

**Statutes**

Section 91.402 of the Texas Natural Resources Code ...................................... 42, 45

Tex. Bus. Orgs. Code §§1.002(35)(A)...................................................... 4, 5, 6, 48

Tex. Nat. Res. Code §91.402(g) .......................................................... 42

Tex. Prop. Code §5.024 .................................................................... 40

Tex. Tax. Code §32.07(a) .................................................................. 37

**Rules**

Fed. R. App. P. 25(c)(2)(A) .............................................................. 57

Fed. R. App. P. 32 (a)(7)(B)(i) .......................................................... 58

Fed. R. App. P. 32(a)(5)(A) .............................................................. 58

Fed. R. App. P. 32(a)(6) .................................................................. 58

Fed. R. App. P. 32(f) ..................................................................... 58

**Other Authorities**

Douglas R. Hafer & Daniel B. Mathis, *Mineral Royalty Mispayments: The Payor's Rights, Obligations, and Risks in Royalty Mispayment Scenarios, Including the Pitfalls and Prerogative of Self-Help Recoupment*, 18 TEX. WESLEYAN L. REV. 85, 98 (2011) ………………………..17, 20-21, 27

Katy Wehmeyer & Jordan Stevens, *Withholding Royalty Payments After ConocoPhillips Co. v. Koopmann*, 52 TEX. TECH. L. REV. 439, 484 (2020) …………………………….…19, 20

3 KUNTZ, LAW OF OIL AND GAS §42.8…………………………………………18

3 WILLIAM & MEYERS, OIL AND GAS LAW §657…………………..………………..18

**STATEMENT OF JURISDICTION**

Ovintiv agrees that the Court has subject-matter jurisdiction for the reasons set forth in DDR's Brief.

**STATEMENT OF ISSUES PRESENTED FOR APPEAL**

This case presents a common issue in the oil and gas industry: whether a producer who inadvertently overpays a royalty owner may recoup the overpayment by withholding future royalty payments without seeking judicial intervention. Even DDR's[2] expert conceded this is a routine and customary practice in the industry. DDR argues the result should be different here because the overpaid royalty owners—the Richters—conveyed their mineral interests, subject to the Leases and any indebtedness or encumbrances, to DDR (the Richters' wholly-owned and controlled entities) before Ovintiv recouped the overpayments.

Ruling on Ovintiv's Motion for Summary Judgment and DDR's Cross-Motion, the District Court concluded that given the language in the Deeds, Ovintiv's recoupment from DDR did not breach the Leases, violate the Texas Natural Resources Code or constitute conversion. ROA.2245-48.

Ovintiv restates DDR's appellate issues to clarify how they relate to the record and the District Court's Order.

---

[2] For ease of reading, and because the arguments are the same as to both, this Brief refers to Appellants DDR Weinert and DDR Williams, collectively, as "DDR." The Statement of the Case clarifies which documents pertain to each entity.

**Issue 1:** After being overpaid, the Richters conveyed their mineral interests to DDR, subject to the Leases and to existing encumbrances or indebtedness. Did the District Court correctly conclude that Ovintiv did not have to expose itself to double liability and could recoup the overpayment from DDR without breaching the Leases, violating Chapter 91, or committing conversion?

**Issues 2 and 4:** Along with obtaining the right to receive royalties subject to the Richters' indebtedness or encumbrances, DDR executed division orders permitting Ovintiv to withhold payments based on adverse claims and obligating DDR to indemnify and reimburse Ovintiv for any amounts to which DDR was not entitled. Did the District Court correctly conclude that these division orders also permitted Ovintiv to recoup its overpayment?

**Issue 3:** (Conditionally submitted)[3] DDR did not argue below that liability for overpaid royalties are "personal debts" that do not attach to production, are not transferred by deeds, or must be "attached" to the land before the payor may exercise nonjudicial recoupment. Did the District Court err in failing to rule for DDR on these unraised theories?

**Issue 5:** (Conditionally submitted) Ovintiv did not ask the District Court to pierce DDR's corporate veil nor did the District Court purport to do so. Did the District Court somehow pierce the corporate veil, and if so, did it err?

**Issue 6:** Recoupment describes a self-help mechanism widely used in the industry to recover royalty overpayments and an equitable doctrine aimed at devising a just result considering all aspects of the contractual transaction. Did the District Court fairly apply these equitable principles?

**Issue 7:** Did the District Court properly dismiss DDR's conversion claim?

---

[3] DDR did not indicate under what conditions it would be appropriate for this Court to reach its third or fifth issues. Ovintiv shows below that DDR forfeited these issues by failing to present them to the District Court.

DDR's Statement of Facts is inaccurate, unsupported by the record, and misleading. DDR paints a picture of Ovintiv "siphoning money"[4] from an unsuspecting DDR and then "abscond[ing]" with that money.[5]

But in reality the <u>DDR Entities were created and are controlled by the Richters</u> as their "estate planning" entities. ROA.332. And the money that DDR claims Ovintiv has "absconded" with was instead used by Ovintiv to make whole other interest owners who had been underpaid when the Richters were mistakenly overpaid. <u>Ovintiv did not take royalties for itself</u>.

Rather than setting out the facts, DDR has attempted to obscure them to avoid what the record shows: DDR brought this case because it saw an opportunity for a more-than-$600,000 windfall.

## I.     The Richters create two wholly owned and controlled entities for their estate planning.

In 2008, Duane and Colleen Richter entered into four mineral leases (collectively, the "Leases") relating to acreage (the "Property") in Karnes County, Texas. ROA.235, 247, 259, 271. Later, the Richters established the DDR Entities, purportedly as part of their estate planning. ROA.332.

---

[4] DDR Principle Brief ("DDRPB") at 25.

[5] *Id.* at 64, 73.

Under Texas statutes, the Richters control DDR: Duane Richter is the sole member of DDRD Management LLC—the sole general partner of both DDR Entities. ROA.350-57. *See* Tex. Bus. Orgs. Code §§1.002(35)(A) (defining the governing authority of a member-managed LLC as the managers and the governing authority of a limited partnership as its general partners), 3.101 (subject to governing documents, "the governing authority of a domestic entity manages and directs the business and affairs of the domestic entity").[6]

## II. The Richters conveyed their interest in the Property and Leases to DDR.

In December 2017, the Richters executed a series of Special Warranty Deeds and Mineral Deeds (collectively, "the Deeds") conveying their mineral interests under the Leases to the DDR Entities. ROA.1190.

### A. The Special Warranty Deeds transferred interests to DDR that were burdened by "any existing indebtedness."

For the tracts conveyed by Special Warranty Deed, there is a conveyance from the Richters to DDRD Management LLC (1%) and to one of the DDR LPs (99%). On the same day, there is a separate conveyance from DDRD Management to the respective DDR LP of the 1% interest. ROA283, 312. The Richters conveyed the

---

[6] That DDR is controlled by the Richters went unrebutted in the District Court record as recognized by the District Court. ROA.2239.

Property to DDR "**AS IS, WITH ALL FAULTS**." ROA.283-95, 312-22. The Deeds

were "made and accepted **SUBJECT TO** any existing indebtedness…":

> This conveyance is made and accepted **SUBJECT TO** any existing indebtedness, all easements, restrictions, covenants, conditions and other instruments of record in the Real Property Records of Karnes County, Texas which affect the Property.

*Id.* Thus, these Deeds conveyed the Richters' right to receive royalties under the

Leases to DDR and simultaneously burdened DDR with the Richters' "existing

indebtedness." *Id.*

### B. The Mineral Deeds transferred interests to DDR that were burdened by "all valid encumbrances."

The Richters also executed Mineral Deeds to convey one tract to DDRD

Management (1%) and DDR Weinert (99%). DDRD Management then executed a

Mineral Deed conveying its 1% interest to DDR Weinert. ROA.297-310.[7] The

Mineral Deeds clarified that transfer was "**SUBJECT TO**…all valid encumbrances

of every kind and character" and "all valid leases." *Id.* It also directed Ovintiv (as

lessee under the Leases) to "commence paying and delivering such rents, royalties

and other benefits to the Grantee in accordance with this deed." *Id.* Like the Special

Warranty Deeds, the Mineral Deeds simultaneously (1) convey the Richters' rights

---

[7] This includes a correction deed, on the same date, to correct the name of the Grantor on the second deed.

5

to royalties under the Leases to DDR; and (2) DDR with the Richters' encumbrances.

*Id.*

### C. DDR agrees to indemnify and reimburse Ovintiv under division orders.

Under the Mineral Deeds, the grantors also "agree[d] to execute division orders and other documents that may be necessary to effectuate the conveyance herein made." *Id.* This took place. The Richters and DDR <u>affirmative asked</u> Ovintiv's predecessor to prepare the Division Orders based on the Deeds and to pay DDR royalties "in accordance with the Deeds," which they attached to their requests. ROA.641, 652, and 666.[8] DDR then approved the division order that Ovintiv provided (the "Division Orders"). ROA.323-328. Each stated that Ovintiv[9] (as lessee under the Leases) was "authorized to withhold payment pending resolution of a[n]…adverse claim asserted regarding the interest in production claimed by" DDR. Under the division orders, DDR also agreed "to indemnify and reimburse [Ovintiv] any amount attributable to an interest to which [DDR] is not entitled." *Id.*

---

[8] The Mineral Deeds themselves direct all persons responsible for paying royalties subject to the Deeds to begin paying them to DDR. *E.g.*, ROA.297.

[9] While the division orders mention Encana, that entity later changed its name to Ovintiv. ROA.17.

**III.     Ovintiv inadvertently overpays the Richters while unintentionally underpaying other mineral interest owners.**

Under the Leases, Ovintiv needed to pay royalties in connection with the mineral interests that the Richters conveyed to DDR. ROA.234-281.[10] In September 2016, a change in gas flow was made on some wells included in the units subject to the Leases. ROA.231 ¶3. The change was not properly reflected in Ovintiv's accounting system, resulting in a misallocation of volumes among certain wells until the error was discovered and corrected in January 2018. *Id.*

As a result, from September 2016 through January 2018, certain mineral interest owners—including the Richters and DDR[11]—were incorrectly credited with higher gas volumes than produced while other mineral interest owners (not parties here) were incorrectly credited with lower gas volumes than produced. *Id.* Thus, the Richters essentially received two types of payments during this time:

- The Richters received payment for oil and gas that was actually severed and produced from the Property under the Leases. Ovintiv did not recoup these funds paid for accrued royalties and they are not at issue here.

- The Richters received payment that was <u>not</u> based on oil and gas actually severed and produced from the Property under the Leases. These inadvertent overpayments were <u>not</u> based on accrued royalties and were ultimately recouped by Ovintiv to pay underpaid interest owners.

---

[10] The royalty clause is at paragraph 3 of each Lease.

[11] Payment for January 2018 production was made to DDR, not the Richters. ROA.2058 ¶ 4. Therefore, overpayments attributable to January 2018 production were properly recouped from DDR even under DDR's arguments.

It was undisputed in the District Court that the Richters and DDR were overpaid more than $608,000 from September 2016 through January 2018. ROA.232-33 ¶7; ROA.2245 at n.9.[12]

### IV.   Ovintiv recoups overpaid monies from DDR to properly pay underpaid mineral interest owners.

In January 2018, Ovintiv discovered that it had paid the Richters and DDR royalties on gas that had not actually been produced from the Property under the Leases. ROA.231 ¶4. In June 2018, Ovintiv notified DDR that it would begin recouping these overpayments. ROA.684. Starting that same month, Ovintiv conducted several prior period adjustments ("PPAs") to correct the misallocation, deducting the overpayments amounts from DDR's royalty payments across June, September, and October 2018. ROA.232-33 ¶¶5-8.

Ovintiv used the PPAs to ensure royalty interest owners that had been underpaid were paid what they were owed. *Id.* These PPAs did not benefit Ovintiv; it simply ensured funds from overpaid owners properly went to underpaid owners. *Id.* DDR did not rebut this fact in the District Court, and there is no evidence to support DDR's rhetoric that Ovintiv "absconded" with these funds for itself.

---

[12] DDR now appears to contend that the Richters and DDR were not overpaid. *See* DDRPB at 32 n.7. But DDR cites only its own petition—not evidence—to "support" this contention. Even then, DDR's petition does not make such an allegation. An unsupported, footnote-only argument fails to adequately brief the claim.

Simply put, the Richters and DDR received overpayments of sums not due under their Leases for minerals not produced from the Property. Once discovered, Ovintiv deducted these overpaid amounts from royalties subsequently due to DDR under the same Leases when minerals from their Property were later produced.

## SUMMARY OF THE ARGUMENT

At its core, DDR's lawsuit wants an inequitable outcome that would undermine customary oil and gas practices. Ovintiv made an overpayment to the Richters of more than $600,000. By the time Ovintiv realized this overpayment, the Richters had deeded their interests to a wholly owned and controlled subsidiary: DDR. Both the conveyance documents DDR accepted and the divisions orders that it signed obligated DDR to repay these liabilities, so Ovintiv recouped these overpayments from DDR and paid these funds to those royalty owners that had been underpaid. No party got a windfall. And Ovintiv avoided "double liability" based on its overpayment—an outcome that the Texas Supreme Court recognizes would be "unfair" to operators. *Gavenda v. Strata Energy, Inc.*, 705 S.W.2d 690, 692 (Tex. 1986).

But DDR wants that unfair result. It wants Ovintiv to pay twice. And it wants to create a roadmap for unscrupulous royalty owners to avoid having to repay

overpayments in the future through slight-of-hand entity transfers. DDR filed this lawsuit against Ovintiv to force this inequitable outcome.

DDR's argument failed before the District Court, and rightly so. Rather than press these losing arguments, DDR abandoned most of the arguments it pursued in the District Court and instead throws more than a dozen <u>brand-new</u> arguments at the wall to see what sticks. But these never-before-seen arguments have been forfeited and thus fall outside of the scope of this appeal.

Even if DDR had bothered to make these arguments in the District Court, they would still fail as they are premised on the idea that Ovintiv's overpayment was for accrued royalties. But this is false; Ovintiv did not recoup any payments made for oil and gas that had already been severed from DDR's Property. The overpayment relates only to <u>unaccrued</u> royalties. Nearly all of DDR's brand-new (and forfeited) arguments collapse considering this reality.

Ovintiv should not be punished for following the long-standing and common practice of recouping overpayments and repaying underpaid royalty owners. And this Court should not accept DDR's invitation to upset this important oilfield practice.

## ARGUMENT

**I. The applicable standard of review for DDR's arguments depends on whether they were presented at the District Court or raised for the first time on appeal.**

    **A. De novo review applies to arguments presented to the District Court.**

DDR appeals from a Final Judgment entered after the District Court granted Ovintiv's motion for summary judgment and denied DDR's cross motion. For those issues and arguments raised in the District Court, the standard of review is de novo, and the court reviews each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party. *McGlothin v. State Farm Mut. Ins.*, 925 F.3d 741, 745 (5th Cir. 2019).

    **B. Because DDR forfeited most of its arguments by raising them for the first time on appeal, de novo review will not apply.**

This de novo standard, however, applies only to arguments that have not been forfeited or waived.[13] "It is well settled in [the Fifth] Circuit that the scope of appellate review on a summary judgment order is limited to matters presented to the district court." *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 339 (5th Cir. 2005). "A party forfeits an argument by failing to raise it in the first instance in the district court—thus raising it for the first time on appeal—or by failing to adequately brief the argument on appeal." *Rollins*, 8 F.4th at 397. It is not enough to merely mention

---

[13] While sometimes "waiver" is used to describe arguments raised for the first time on appeal, forfeiture is the proper term. *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021).

an argument in the district court in passing; a party must "press and not merely intimate the argument" at the district court. *Keelan*, 407 F.3d at 340.

Were the District Court to review DDR's brief to this Court, it would not recognize the case that DDR now puts forward. Entire swaths of DDR's appellate brief (including Sections I(A)(1), II(A)(1-3), II(B)(1), III(C), IV, V, and VI(B)(1)) contain arguments nowhere to be found in DDR's District Court briefing. Of the 65 cases that DDR cites in its Appellate Brief, <u>only five were even mentioned in their District Court briefing</u>. These are not merely new cases supporting legal arguments advanced below; they are new cases cited in support of never-before-seen legal arguments. DDR's attempt to get a second bite at the apple is improper; the Fifth Circuit is a "court of review, not of first view." *Flores v. FS Blinds, L.L.C.*, 73 F.4th 356, 366 (5th Cir. 2023).

The exceptions to this rule are for jurisdictional arguments or when the Court is addressing "a purely legal matter and failure to consider the issue will result in a miscarriage of justice." *Rollins*, 8 F.4th at 397 (quotation omitted). But neither of these exceptions applies and no manifest injustice results because DDR could have made its arguments in the District Court. *Id.* at 399.

DDR has thus forfeited most of its argument to this Court and they fall outside the Court's "scope of appellate review." *Keelan*, 407 F.3d at 339. For the Court's convenience, Ovintiv has included a chart of DDR's forfeited arguments:

| Argument | First Time Raised | Preservation |
|---|---|---|
| Overpayments to the Richters are a personal debt | DDRPB at 29-32 | Forfeited |
| The DDR Entities' royalties are their personal property | DDRPB at 32-33 | Forfeited[14] |
| Ovintiv must be a third party to the Deeds to recoup | DDRPB at 34-36 | Forfeited |
| The "subject-to" and "as-is" clauses are not promises of DDR | DDRPB at 36-41 | Forfeited |
| DDR did not assume the Richters' debt because the Deeds acknowledged a debt might exist | DDRPB at 41-45 | Forfeited |
| The Richters' debt did not exist when the Richters conveyed the Mineral Interests to DDR | DDRPB at 45-48 | Forfeited[15] |
| The Richters' debt is not a covenant running with the land | DDRPB at 49-51 | Forfeited[16] |
| The Richters' debt is not an "encumbrance" | DDRPB at 51-55 | Forfeited |

[14] *See infra* n.20.

[15] DDR argued in the District Court that if the debt was preexisting, Ovintiv would have to file a lis pendens to enforce it. DDR's discussion of preexisting debt was in furtherance of its lis pendens argument; it did not argue that the debt was not preexisting. ROA.1208–10.

[16] DDR labeled an argument as concerning "indebtedness or a right of recoupment or offset does not run with reality," ROA.1203, but the substance of the section contains no substance—DDR merely asserted that Ovintiv was arguing for a "novel theory of law" that was unsupported and should be rejected. This mere mention does not preserve DDR's current argument—relying on its also-forfeited personal debt argument—regarding touching and concerning the land. *See Keelan*, 407 F.3d at 340; DDRPB at 49–51.

| | | |
|---|---|---|
| The DDR Division Orders' safe-harbor language from Section 91.402 does not apply | DDRPB at 55-57 | Forfeited[17] |
| There is no dispute over title to the Mineral Interests DDR owns | Plaintiffs' Cross-Motion for Summary Judgment ("Pls. MPSJ") at 13 (ROA.373) | Preserved |
| The debt could not attach to the Mineral Interest because no attachment mechanism was used | DDRPB at 59-60 | Forfeited |
| There is no basis to pierce the corporate veil | DDRPB at 60-62 | Forfeited |
| Ovintiv failed to pursue its available claim against the Richters | Plaintiffs' Response to Ovintiv's MSJ at 17 (ROA.1210) | Preserved |
| The District Court erroneously permitted Ovintiv to exercise recoupment | DDRPB at 63-67 | Forfeited |
| Ovintiv cannot rely on offset | Pls. MPSJ at 11, 14-15 (ROA.371, 374-76) | Preserved |
| Ovintiv's recoupment violated the Texas Natural Resources Code | Pls. MPSJ at 12-13 (ROA.372-73) | Preserved |
| Ovintiv's recoupment constitutes conversion | Pls. MPSJ at 14 (ROA.374) | Preserved |

[17] *See infra* n.27.

**II.    The District Court correctly held that Ovintiv was entitled to recoup the overpayments to the Richters from DDR.**

The District Court employed two steps to reach its conclusion. First, it determined that it is common in the oil and gas industry for a producer to exercise the self-help remedy of recouping overpaid royalties from future royalty payments—as DDR's expert conceded—and that Ovintiv had the right to exercise self-help to recover its overpayments without judicial intervention. *See* ROA.2245.

Second, the District Court held that Ovintiv could recoup from DDR because DDR had assumed the overpayment obligations under the Deeds. ROA.2246. The Court also found that this conclusion was bolstered by DDR's Division Orders, which required DDR to indemnify and reimburse Ovintiv. ROA.2247.

Because Ovintiv's recoupment was permissible, the District Court held that Ovintiv did not breach the Leases. It concluded Ovintiv did not violate the Texas Natural Resources Code because under the Leases and Division Orders, DDR was not entitled to the contested royalties. And it held that DDR's conversion claim failed because it was not entitled to the withheld funds. *Id.*

This Court should affirm these holdings. The District Court's ruling is grounded in Texas law and supports important oil and gas industry customs and practices. DDR invites this Court to overturn the District Court and instead create a judicially sanctioned roadmap for unscrupulous royalty owners to avoid having to

repay monies to which they are not entitled. This Court should decline that invitation.

**A.** **Recoupment is an important and widely used self-help remedy in the industry, and Ovintiv properly used it here.**

Self-help recoupment of overpaid royalties is a common and important practice in the Texas oil patch, and both courts and commentators agree that operators may recoup overpaid royalties. The District Court correctly recognized that "recoupment" is a term used in the oil and gas industry for "various non-judicial mechanisms by which…operators (also referred to as "payors") recover overpaid monies." ROA.2243 (citing authorities).

**1.** **Both DDR's and Ovintiv's evidence in the District Court supported Ovintiv's recoupment of overpaid royalties.**

The District Court correctly recognized that both DDR and Ovintiv "agree that recoupment is a common and established practice" in the oil and gas industry. ROA.2243. DDR's own expert declared in his report that nonjudicial recoupment— which he called a "self-help method"—is a common, customary, and routine practice in the oil and gas industry:

> Based upon my experience in the oil and gas industry and in litigating royalty overpayment cases, Operators/Payors routinely use self-help to recover overpayments. The Operator/Payors do so by recoupment against the overpaid party where the well or wells in question have production sufficient to recover the overpayment. Where the well or wells are further down on their decline curve, the Operators/Payors will set-off revenue from properties, if any, operated by the Operator/Payor and in which the overpaid party has a revenue interest. With horizontal wells and split sections, this set of circumstances is not as rare as one might suspect. So, both of these self-help methods are customarily and routinely used in the oil and gas industry by Operators/Payors to recover overpayments of royalty.

ROA.1189.

Often, this recoupment takes place through Prior Period Adjustments ("PPAs"), as happened here. ROA.231-33. PPAs "are revenue booking revisions for production months that have already been distributed that may affect payments to royalty owners." ROA.2057. Recoupment through these mechanisms is routine. *See* Douglas R. Hafer & Daniel B. Mathis, *Mineral Royalty Mispayments: The Payor's Rights, Obligations, and Risks in Royalty Mispayment Scenarios, Including the Pitfalls and Prerogative of Self-Help Recoupment*, 18 TEX. WESLEYAN L. REV. 85, 98 (2011) (hereafter *Hafer/Mathis*) ("[P]ayors routinely recoup royalty overpayments through unilateral 'adjustments,' 'off-sets,' 'revenue rebooking,' or otherwise withholding or debiting a payee's future royalties until the overpaid amounts are collected.").

Ovintiv's expert opined that PPAs can take place because of "new or revised information provided for pricing, volumes, and invoices and payments from third parties." ROA.2057. These PPAs "occur frequently in the oil and gas industry and

allow operators to pay out royalties in a timely manner with the flexibility to adjust for revised or updated information received at a later date." *Id.* These expert opinions unrebutted by DDR.

### 2. Commentators and Courts recognize recoupment as a valid practice in the oil and gas industry.

The District Court's conclusion was well supported by authorities recognizing a payor's right to use self-help measures to recoup inadvertently overpaid royalties. Prominent oil and gas treatises recognize the practice. *See* 3 KUNTZ, LAW OF OIL AND GAS §42.8 ("A lessee may recover from the lessor any overpayment of royalty that was made because of mistake of law or fact."); 3 WILLIAM & MEYERS, OIL AND GAS LAW §657 ("Where as a result of good-faith mistake royalty has been paid to a person not entitled to receive same or where excessive payments have been made in good faith, it is generally held that the lessee (or purchaser) who has made such payments may recover from the payee the payments to which he was not entitled.");[18] *Hafner/Mathis* at 98 ("Commentators generally agree that a payor who mistakenly overpays mineral royalties is entitled to recover the overpaid amounts.").

Courts outside of Texas have widely permitted recoupment when it comes to overpayments related to oil and gas leases:

- *Waechter v. Amoco Prod. Co.*, 537 P.2d 228, 255 (Kan. 1975) (holding that lessors' claims for amounts withheld from later royalty payments, "are based

---

[18] This treatise now cites the District Court's decision in its section of "Lessee's Remedy in Event of Overpayment of Royalty." *Id.*

on the lease contracts," and the producer's claims for the overpayments "grow out of the selfsame leases," so the producers were entitled to offset the lessors' claims, and the producer "has not retained any money to which it was not morally entitled under all the circumstances");

- *Freston v. Gulf Oil Co.*, 565 P.2d 787, 788-89 (Utah 1977) (holding that "[i]n the absence of a showing of prejudice, equity requires a right of recoupment" and that "the right of recoupment is inherent in all contractual matters and is not dependent upon express provisions," and concluding that the plaintiffs had not been prejudiced by the defendant's recoupment after a mistaken overpayment, because "they needed only to wait until the advancements were earned at which time appropriate payments were resumed");

- *City of Carlsbad v. Grace*, 966 P.2d 1178, 1184-86 (N.M. Ct. App. 1998) (recognizing operators right to recoupment and noting "it appears to be universally recognized that equitable recoupment is allowed as a defense in oil and gas cases although the statute of limitation has expired"); and

- *Nelson v. Linn Midcontinent Expl., L.L.C.,* 228 P.3d 533, 535 (Okla. Civ. App. 2009) (stating that "it goes without saying that, in an appropriate circumstance, overpayments of royalty made by mistake may be recovered from the payee" and Oklahoma clearly follows this rule).

Despite Texas's prominent place in the oil and gas industry, there is a relative "dearth of Texas case law addressing a payor's remedies against an overpaid party," *see* Katy Wehmeyer & Jordan Stevens, *Withholding Royalty Payments After ConocoPhillips Co. v. Koopmann*, 52 TEX. TECH. L. REV. 439, 484 (2020) (hereafter *Wehmeyer/Stevens*). But those limited cases recognize an operator's right to recoup overpayments made under a lease through contract or equity:

- *Tex. Lone Star Petroleum Corp. v. Chesapeake Oper. Inc.*, No. 2:14-CV-331, 2016 WL 6677939, at *8 (S.D. Tex. Nov. 14, 2016) (permitting operator to recover overpayments including those based on the operator's own clerical errors).

- *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 163-64 (Tex. App.—El Paso 1997, no writ) (affirming verdict for operator on money had and received claim brought against party incorrectly paid based on operator's "unilateral act of negligence," and recognizing claim as one "in equity").

This Court too has considered recoupment and found at its core it is an equitable doctrine that requires a court to examine a transaction "in all its aspects, and judgment to be rendered that does justice in view of the one transaction as a whole." *W&T Offshore, Inc. v. Bernhardt*, 946 F.3d 227, 241 (5th Cir. 2019).

Thus, the District Court's authorization of Ovintiv's recoupment merely recognizes a practice that courts, commentators, and both parties' experts recognize is customary and routine in the oil and gas industry.

### 3. DDR asks this Court to create a blueprint for overpaid royalty owners to avoid returning funds that are not theirs.

DDR asks this Court to carve out an exception to recoupment that would provide a roadmap for unscrupulous royalty owners to prevent operators from recouping overpayments.

Commentators already recognize that when an operator makes an overpayment, "there is no guarantee the payor will actually be able to recover these overpaid amounts." *Wehmeyer/Stevens* at 467. "[A]n overpayment may go undetected for much longer than an underpayment." *Hafer/Mathis* at 86. Before an operator uncovers this issue, unprincipled royalty owners may create shell entities to prevent recoupment of the monies to which they were not entitled.

Having to sue a predecessor-in-interest like the Richters may fail "for both practical and legal reasons." *Hafer/Mathis* at 86. Practically, the Richters "may have spent or otherwise disposed of the money, and may have no means of repayment." *Id.* Legally, limitations may bar lawsuits. *Id.* DDR's proposed rule would also foster needless litigation and cost both parties time and money. These same policy considerations underly recoupment, and this Court should not upset the careful balance Texas law has developed to achieve fairness and support an essential industry.

Adopting DDR's arguments would likely foster gamesmanship through which a lessor, on learning it was overpaid, quickly transfers the mineral interests and leases to eliminate efficient, self-help recoupment methods. Thus, the loophole DDR asks this Court to create would likely increase operating costs and chill oil and gas exploration and development.

The Richters could have ended this lawsuit immediately by paying their wholly controlled entity (DDR) the monies that they were overpaid. They have not done so, but instead have fought tooth-and-nail for their owned-and-controlled entity to hold onto the overpayments. This alone shows the negative results that can come from adopting DDR's position.

The District Court's Order established equity and fairness by permitting Ovintiv's self-help recoupment to stand.

**B. The Deeds conveyed the Richters' overpayment liability to DDR.**

The District Court also correctly determined that the Deeds permitted Ovintiv to recoup from DDR because DDR "assumed the entirety of the Richters' prior interests." ROA.2239. This conclusion is ironclad under Texas law.

DDR seeks to undermine this basic Texas law and tries to accomplish this goal in an impermissible way: through arguments never before seen by the District Court. But DDR forfeited these arguments by not raising them below. *See Rollins*, 8 F.4th at 397; Argument I.B. And even these new arguments fail under inspection.

**1. DDR forfeited its brand-new arguments related to the Deeds and their transferring of the Richters' overpayment obligations to DDR.**

DDR's appellate argument is wildly different from the argument it put forth before the District Court. Ovintiv moved for summary judgment based on, among other things, the fact that DDR had stepped into the Richters' shoes and was liable for overpayments based on the Deeds. ROA.210-11. This obligation was due in part to the Deeds' language making DDR's interest "subject to all debts and encumbrances attributable to the property." *Id.* In response, DDR's argument was that Ovintiv needed to file a lis pendens or provide some other notice to DDR before the Deeds' transfer of the Richters's interests. ROA.1208-10.

DDR's appellate brief fails to raise or "adequately brief" those prior arguments, so they are forfeited. *Rollins*, 8 F.4th at 397.

22

In place of its old, failed arguments, DDR advances a host of new, scattershot arguments. This Court, however, need not pull each piece of new legal spaghetti off the wall because <u>not one of these arguments appears anywhere in DDR's Response to Ovintiv's summary judgment</u>.[19] ROA.1194-1214. "If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered raised on appeal." *Keelan*, 407 F.3d at 339 (quotation omitted). If DDR wanted to make these arguments, it needed to bring them to the District Court, and DDR's failure to do so forfeits these arguments.

### 2.    DDR's forfeited arguments fail under Texas law.

Even if DDR had not forfeited these brand-new arguments, a review of Texas caselaw—including even the cases cited by DDR—show that DDR is wrong.

#### a.    The Deeds transferred all burdens—including the overpayment obligation—to DDR.

Under Texas law, "[a] deed generally passes to the grantee all of the estate owned by the grantor at the time of the conveyance—including "any appurtenance (benefit <u>or burden</u>) to the conveyed land even if not specified." *Henry v. Smith*, 637 S.W.3d 226, 233 (Tex. App.—Fort Worth 2021, pet. denied) (emphasis added) (cleaned up). This includes burdens not even specified in a deed. *Aery v. Hoskins, Inc.*, 493 S.W.3d 684, 700 (Tex. App.—San Antonio 2016, pet. denied) ("[A]ny

---

[19] Nor did DDR raise these issues in its own summary judgment motion. ROA.361–77.

appurtenance (benefit or burden) to the conveyed land passes to the grantee even if not specified."). If a grantor wants to retain a benefit or burden, he "must specifically reserve it for himself." *Id.; see Cockrell v. Tex. Gulf Sulphur Co.,* 299 S.W.2d 672, 675 (Tex. 1956); *Reeves v. Towery,* 621 S.W.2d 209, 212 (Tex. App.—Corpus Christi 1981, writ ref'd n.r.e.). This Court has also recognized this principle. *See Phillips Petroleum Co. v. Adams,* 513 F.2d 355, 362 (5th Cir. 1975) ("In a conveyance of real property, all of the interests in land ordinarily pass to the grantee unless specifically exempted…").

The Deeds do not reserve any burdens to the Richters, including the overpayment obligation. ROA.282-322. DDR does not mention this caselaw but focuses on its (never-before-seen) argument about what "subject to" and "as is" means. But without any reservation of burdens in the Deed, the question of what "subject to" and "as is" mean is irrelevant; all of the burdens (like the overpayment obligation) transferred to DDR.

> **b.      The overpayment obligation is a liability tied to the Property and Leases, not a personal liability.**

Another brand-new argument from DDR is that the Richters' liability for the overpayments was not transferred to DDR because overpaid royalties are a "personal" debt.[20] DDR's new argument presumes that Ovintiv's inadvertent

---

[20] There is one mention in DDR's MSJ Response of royalty payments being "personal property," but this is only in the context of conversion and discussing payments purportedly owed to DDR

overpayments became the Richters' personal property because royalties earned under the Leases from past production are personalty.

But DDR's argument is unsound because the Richters did not earn the overpayments from the production of their minerals or under their Leases— recoupment is at issue because the Richters were paid *more* royalties than what accrued under the Leases based on production from their land. Ovintiv paid the Richters funds on two bases, one for accrued royalties and one for unaccrued royalties:

1. Ovintiv correctly paid the Richters what they were owed for oil and gas severed from the Property through oil and gas production. These payments were for accrued royalties and were **not** recouped.

2. Ovintiv overpaid the Richters, and these payments were not tied to oil and gas actually severed from the Property. They were overpayments for unaccrued royalties as they are for production that had not been yet severed from the Property. These are the monies Ovintiv recouped.

When correctly viewed through this framework, it becomes obvious that Ovintiv could recoup these overpayments from DDR following its acceptance of the Deeds.

Indeed, the key case that DDR cites— *Phillips Petroleum Co. v. Adams*, 513 F.2d 355 (5th Cir. 1975)—shows that DDR's argument fails. In *Adams*, this Court

---

when Ovintiv was recouping, not overpayments made to the Richters that transferred to DDR through the Deeds. ROA.1213. That is a different issue. And one mention of "personal property" in an unrelated context cannot save a party from forfeiture, as "a party must press and not merely intimate the argument during the proceedings before the district court." *Keelan*, 407 F.3d at 340 (quotation omitted).

noted that royalties are "personalty when severed from the land by production." *Id.* at 363. But it recognized that Texas law differed for "unaccrued royalty interests," meaning for a lessor's oil and gas that was not yet severed from the land. *Id.* Those "unaccrued royalty interests...are deemed by Texas courts to be interests in realty, for such rights represent interests in the oil and gas still in place on the property." *Id.* Rights to money based on those unaccrued royalty interests <u>would pass through a conveyance</u>. *Id.* (noting "if the right to the money is a realty interest, the assignment passed that right to [the purchaser]").

Thus, *Adams* supports Ovintiv. Under *Adams*, the unaccrued royalty burdens for the overpayments transferred through the Deeds. DDR admits that in such a scenario it loses this case:

> [T]he Deeds merely caused the DDR Entities to recognize that if any existing "indebtedness" was attached to the real property interest, the real property interest would remain subject to that debt.

DDRPB at 43. Based on DDR's admission, it cannot prevail on this (forfeited) argument.

DDR's other cases are of no help, as they each deal with accrued royalties earned on oil and gas that had been severed, rather than unaccrued royalties for oil and gas that had not been severed. *See Anadarko E&P Co. v. Clear Lake Pines, Inc.*, No. 03-04-00600-CV, 2005 WL 1583506 (Tex. App.—Austin July 7, 2005, no pet.) (claim for accrued royalties earned on production that had taken place); *Johnson v.*

26

*Enerlex, Inc.*, No. 03-96-00401-CV, 1997 WL 562017 (Tex. App.—Austin Sept. 11, 1997, pet. denied) (claim for royalties held in suspense based on production that had taken place).

DDR half-heartedly argues that overpayments are personal property debts, but its only purported authority is *Hafer/Mathis*. That article says nothing of the sort. Rather, it merely says that the payor's fundamental cause of action to recover an overpayment is one for money had and received, *Hafer/Mathis* at 88, and never refers to an overpayment of royalties as the recipient's "personal property." And DDR's argument—that payments to a lessor which were *not* based on the lessor's severed oil and gas are personal property—violates the longstanding rule that oil and gas are only personality "when severed from the land by production." *Adams*, 513 F.2d at 363.

The Richters were mistakenly paid royalties Ovintiv owed to third parties—they were <u>not</u> overpaid on oil and gas severed from their Property, so royalties had not accrued under their Leases. The overpayments are a real-property liability based on <u>unaccrued</u> royalties and transferred through the Deeds. *See Adams*, 513 F.2d at 363.

> **c.      The Richters expressly deeded their mineral interests to DDR subject to any indebtedness or encumbrance.**

Even if the overpayments were not unaccrued royalties, the obligations related to them still transferred to DDR through the Deeds. In *Adams*, the conveyance did

not mention the right to suspense funds and the Court held that the Adams Family did not relinquish its right to those funds. By contrast, the Deeds specifically conveyed the Richters' "indebtedness" and "encumbrances" to DDR. Under the Deeds, what Ovintiv could have recouped from the Richters could also be recouped from DDR.

The District Court agreed, finding that the Deeds' language making the conveyances "subject to" any "encumbrances" or "indebtedness" transferred the overpayment obligation. In the District Court, DDR's only arguments contrary to this point were based on lis pendens and notice, and neither of those arguments appears before the Court in DDR's brief. ROA.1208-10. Instead, DDR brings in a new argument: that the Deeds' subject-to language does not actually transfer the overpayment obligations. But because it failed to assert this in the District Court as "a legal reason why summary judgment should not be granted, [this] ground is waived and cannot be considered raised on appeal." *Keelan*, 407 F.3d at 339.

This forfeited argument also misses the mark. DDR highlights the Texas Supreme Court's decision in *Wenske v. Ealy*, 521 S.W.3d 791 (Tex. 2017) but it does not support DDR. The whole focus of *Wenske* is that deeds—particularly their subject-to clauses—must be construed according to their own plain language and **not** by the application of arbitrary, default, or ancient rules. *See id.* at 792, 794-96, 797-98. The Deeds here are not like the deeds in *Wenske* or the other cases DDR

cites, so their narrow holdings about those particular subject-to clauses are inapt. DDR is doing exactly what *Wenske* cautions against: grabbing snippets of these often-ancient cases as if they created default rules that control the meaning of these Deeds.

DDR also incorrectly interprets *Cockrell v. Texas Gulf Sulphur Co.*, 299 S.W.2d 672 (Tex. 1956). In *Cockrell*, the Texas Supreme Court held that a subject-to clause "incorporated in the deed the leases on the 729.7 acres and defined the estate conveyed, and the nature, extent and character of such estate." *Id.* at 676. Further, *Cockrell* <u>rejected</u> the argument that DDR puts forward: that "the only purpose of the subject to clause in [a] deed was to protect [a grantor] on her warranty." *Id.*

Reading the subject-to clauses in their entirety and harmonizing the Deed provisions as required by *Wenske*, the parties intended the language conveying the Property "subject to…other instruments of record" or "subject to…valid leases [and] royalty agreements" to incorporate the Leases into the Deeds. But the Deeds were also subject to "all valid encumbrances" or any "existing indebtedness." No reasonable interpretation of that same language would *incorporate* the Leases while *excepting* the indebtedness for overpaid royalties under those very same Leases.

DDR argues the District Court erred by treating the subject-to and as-is clauses as "promises" by DDR to pay the Richters' personal debt. But the District

29

Court merely interpreted the subject-to language to conclude that when DDR took ownership of the Property it also assumed any existing indebtedness or encumbrance related to the mineral interests and lease rights. ROA.2247-48 (applying a similar analysis to DDR's statutory and conversion claims). The District Court did not hold that DDR promised to pay the Richters' debts, merely that if such outstanding liability existed, the conveyances were subject to that liability just as they were subject to the Leases—both were conveyed to DDR.

This conclusion is also supported by the division orders, as the District Court found. ROA.1197. Those division orders (explored further below) obligated DDR to indemnify and reimburse Ovintiv for "any amount attributable to an interest to which the undersigned is not entitled." ROA.679, 681. The Richters signed the division orders on behalf of DDR. *Id.* The Deeds are therefore in harmony with the Division Orders and the Lease, *see* Argument IV, in that the Deeds would obligate DDR to indemnify and reimburse Ovintiv for monies like those overpaid under the Lease.

Across several pages, DDR cites snippets of language from cases in various unrelated contexts (sometimes decided more than 100 years ago) for default rules without explaining how any of them inform the meaning of the subject-to language in the Deeds at issue. DDRPB at 41-45. These arguments are forfeited as not raised

at the District Court. But they also fall prey to the same flaws as DDR's other "subject to" arguments.

First, DDR's analysis relies on its new and faulty "personal debt" theory. In fact, DDR concedes that any indebtedness "attached to the real property interest" would remain subject to the debt under their Deeds. DDRPB at 43. Here, the overpayment attached to the property because the payment was not for accrued royalties on past production. *See* Argument IV.B.1 (discussing *Phillips*), and therefore burdens DDR's property interest.

Second, DDR continues to ignore the Texas Supreme Court's directive in *Wenske* that subject-to clauses must be construed in the context of the whole deed and should not be interpreted with general rules. For example, DDR cites a handful of more-than-a-century-old cases discussing mortgages for the proposition that a deed conveying property "subject to" a liability never transfers that liability. DDRPB at 42 (citing *Campbell v. Jones*, 230 S.W.710 (Tex. App. —Amarillo 1921, no writ), *George v. Blumberg*, 211 S.W. 309 (Tex. App. —San Antonio 1919, no writ)). But DDR provides no reason why the language in those deeds would be analogous here—it does not cite their deed language at all. Nor does DDR even attempt to explain how general holdings regarding mortgages—complex loan contracts secured by liens for which the land is collateral and governed by Deeds of Trust which may prevent transfer or require lender approval, *e.g.*, *Trien v. Fed. Home Loan Mortg.*

*Corp.*, 400 F. Supp. 3d 596, 606 (W.D. Tex. 2019)—should dictate whether liability for unaccrued royalties transferred through the Deeds.[21]

Further, at least one of DDR's citations is simply wrong. DDR cites *City of Dallas v. Pfirman Corp.*, No. CIV. A. 399CV0312G, 2000 WL 159314 (N.D. Tex. Feb. 11, 2000), for the proposition that a purchaser is not personally liable for paying a lien unless he expressly assumes the lien. DDRPB at 42. But DDR's quotation is from the court's recitation of the Pfirman's arguments, <u>*which the court rejected*</u>. *Id.* at \*4 ("Pfirman is the assignee liable for the performance of the covenants that run with the land, and not a purchaser of the property "subject to" a lien indebtedness, its arguments that it is not liable for the rent fail in this case."). *Pfirman* is irrelevant to DDR's "subject to" argument.

Finally, DDR spends considerable time discussing *Arcadia Ref. Co. v. Cook*, 146 S.W.2d 767, 772 (Tex. App.—Texarkana 1940, writ dism'd judgm't cor.), DDRPB at 43-44, but DDR misunderstands the facts and holdings of *Arcadia.* There, a receiver assigned a lease to Carter, and as consideration Carter agreed to pay funds from oil production (the "oil payment"). *Id.* at 769. Carter assigned a 2-acre parcel of the lease to Liner through an assignment under which Liner assumed responsibility for a portion of the owed to the receiver. *Id.* Liner paid the receiver

---

[21] DDR similarly fails to explain the applicability of *Booth Fisheries Corp. v. Eardley*, 233 S.W.2d 872, 877 (Tex. App.—El Paso 1950, writ ref'd n.r.e.), a concerning a fraudulent scheme involving (1) unsecured debt, *see id.* at 876, and (2) mortgages on personal property, *see id.* at 874.

$7,500 under the assignment. *Id.* Later, a separate suit brought by those owed the rest of the oil payment, determined that approximately some of that payment remained outstanding. *Id.* at 768. *Arcadia* concerned who was responsible for the remaining payment.

The holding cited by DDR concerns whether the <u>successors of Liner</u>, owed any of the debt. The court held that they did not take on the debt, noting that "[t]he most that can be said is that appellees bought the 2-acre lease subject to an outstanding oil payment." *Id.* at 772. But the opinion contains no explanation for how Liner's successors acquired the property—it is unclear whether "subject to" was language from their deed or not. Moreover, the 2-acre lease's share of the oil payment <u>had already been paid off by Liner</u>. The unique fact pattern combined with a lack of information on how Liner's successors acquired their interest and limited reasoning from the court on this holding, this 84-year-old case fails to support overturning the District Court's holding.

### d. Ovintiv need not be a party to the Deeds to exercise its right to recoupment.

In an effort to sidestep the Deeds, DDR argues that Ovintiv did not have the right to consider the Deeds' "subject-to" language to recoup the overpayments from DDR because it is not a third-party beneficiary.[22] This is illogical.

DDR has admitted that following execution of the Deeds it "became a successor lessor under the Leases." ROA.1197. And it admitted that was because "[t]he deeds are made expressly subject to the existing Leases…" *Id.* (emphasis added). Under the Deeds' subject-to clauses, DDR stepped into the Richters' shoes to collect royalties under the Leases. Such a transfer is needed for DDR to even have standing to sue for breach of the Leases.

Thus, DDR wants this Court to find that Ovintiv is bound by the Deeds' conveyances of the Richters' right to receive royalties from the tracts and under the Leases, but Ovintiv must be blind to the Deeds' simultaneous conveyance of the Richters' liability relating to the tracts and under the Leases. That is absurd. The only way to harmonize and give meaning to all parts of the Deeds is to interpret the Deeds as conveying both the Richters' rights and their obligations that relate to the Leases and the mineral interests.

---

[22] In the District Court, Ovintiv did not plead or argue that it was a third-party beneficiary of the Deeds and DDR did not argue that it was not. The District Court did not base its ruling on a third-party beneficiary theory. DDR's argument is a (forfeited) red herring.

DDR's division orders support this conclusion. The Richters and DDR *asked* Ovintiv's predecessor to prepare the Division Orders based on the Deeds and to pay DDR royalties "in accordance with the Deeds," which they attached to their requests. ROA.641, 652, and 666.[23] DDR then approved the Division Orders, which were signed by Duane and Colleen Richter as "Owner." ROA.679, 681.

Third-party beneficiary law is not needed to conclude that DDR is subject to the recoupment of overpayments made with respect to those tracts and under those Leases. Ovintiv did not need to "enforce" the Deeds as a third-party beneficiary in order to exercise the right to recoupment under the Leases.

### e. The Richters' overpayment, and liability for its repayment, predate the Deeds.

In another new (and therefore forfeited) argument, DDR contends that Ovintiv cannot recoup the overpayments from DDR because the Richters' overpayment liability did not exist when they signed the Deeds. DDR asks the court to hold that a liability does not exist when it arises, but pops into existence when the creditor learns of it.

This is not Texas law.[24] If Ovintiv had brought an affirmative claim (rather than recouping), its claim for money had and received related to any overpayment

---

[23] The Mineral Deeds themselves direct all persons responsible for paying royalties subject to the Deeds to begin paying them to DDR. *E.g.*, ROA.297.

[24] Factually, DDR also does not acknowledge certain overpayments were made to DDR after the conveyances. ROA.2044, 2058 (¶¶4, 5).

would have accrued as soon as it made the overpayment. *Tanglewood Terrace, Ltd. v. City of Texarkana*, 996 S.W.2d 330, 337 (Tex. App.—Texarkana 1999, no pet.) ("A cause of action for money had and received accrues when money is paid."); *Amoco Prod.,* 946 S.W.2d at 163-64 (affirming judgment for money had and received for operator that inadvertently paid royalties to defendant and finding this action "arises when the defendant obtains money"). Ovintiv was "authorize[d]…to seek a judicial remedy" at that time and therefore any liability would have existed. *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex. 1990).

DDR's antiqued cases do not alter this caselaw. In *Southern Surety Co. v. Austin*, 22 F.2d 881 (5th Cir. 1927), a clause required notice before suit; no such clause exists related to recouping an overpayment here. DDR cites *Benson v. Travelers Ins.,* 464 S.W.2d 709, 711 (Tex. Civ. App.—Dallas 1971, no writ), for the proposition that a cause of action does not accrue until a customer refuses to repay a creditor. But the *Benson* court merely recites pre-suit events—nothing in *Benson* says that the debt did not exist until those steps occurred. *Id.*

DDR suggests that its property (rather than DDR) is liable for the liability, citing cases about delinquent property taxes, like *Fenlon v. Harris County*, 569 S.W.3d 783 (Tex. App.—Houston [1st Dist.] 2018, no pet.). But the tax code specifically provides that "property taxes are the personal obligation of the person who owns or acquires the property on January 1 of the year for which the tax is

36

imposed…" *Id.* at 795 (citing Tex. Tax. Code §32.07(a)). The Court recognized that Fenlon did not own the property on January 1 of the relevant years, so Fenlon was not personally liable for the delinquent taxes. *Id.* at 796. The Tax Code doesn't apply here. Again, this Court can safely disregard DDR's forfeited arguments.

> **f.** **DDR forfeited any argument that Ovintiv had to take steps to "attach" the Richters' overpayment liability to the Leases or mineral interests.**

Buried deep in DDR's brief, another brand-new argument is that Ovintiv had to take some kind of affirmative step to "attach" the Richters' overpayment liability to the mineral interests conveyed by the Deeds. DDR never raised this at the District Court and thus forfeited this argument.

This argument is also unsupported by DDR's authorities. DDR does not cite a single case for the proposition that an overpayment (or anything analogous to it) requires or even permits a party to file a lien. A lien can, of course, attach to a mineral interest, but no authority suggests an obligation related to an overpayment can be the basis of such a lien. DDR also cites no opinion holding that an obligation like this overpayment requires a lien to transfer through a conveyance like the Deeds. The Richters conveyed the entirety of their interests to DDR, which included obligations related to the overpayment. *See* Argument II.B.2.a-c.

DDR's cases merely say that a party must seek execution, such as a garnishment order, to enforce a judgment lien on personal property because an

abstract of judgment is insufficient. But there was no judgment for Ovintiv to execute on; Ovintiv did not sue.

DDR's cites to *Enerlex*, 1997 WL 562017, at *2, *DEK-M Nationwide, Ltd.*, 627 S.W.3d 353, 365 (Tex. App.—Houston [14th Dist.] 2021, no pet.), and *CKD Homes Direct, Ltd. v.* Hegar, No. 03-19-00776-CV, 2020 WL 3479257 (Tex. App.—Austin June 26, 2020, no pet.) are also unhelpful. *Enerlex* merely holds that a sheriff can only levy on the property identified in the judgment —real property and the previously-accrued proceeds from it. And *DEK-M* and *CKD Homes* hold that a taxing authority's lien attaches to real property and therefore does not attach to previously-accrued royalties. But again, the overpayments were not for previously accrued royalties.

DDR resorts to throwing out other legal mechanisms it claims Ovintiv could have pursued—a writ of attachment, a lien against the mineral interests, an abstract of a non-existent judgment—without citation or even an explanation about how they might work in this situation. These arguments do not demonstrate that the District Court erred and are so inadequately briefed that they are forfeited. *Rollins*, 8 F.4th at 397.

**g. DDR makes a new argument about the meaning of "encumbrance," but it is also unavailing.[25]**

For the first time on appeal, DDR argues that an encumbrance can only be a real property interest. This argument differs from DDR's position in the District Court, in which DDR argued that it didn't matter whether the Richters' overpayments created an encumbrance because Ovintiv did not file a lis pendens and DDR had no notice. ROA.1209-10. Again, this new argument is forfeited. *Rollins*, 8 F.4th at 397.

DDR's new argument is also inconsequential considering that the Richters' overpayment obligation was an interest in reality, rather than in personalty, and unequivocally transferred through the Deeds. *See* Argument II.B.2.b. The case that DDR focuses much of its briefing on—*Anadarko*, 2005 WL 1583506—is irrelevant as it dealt with accrued royalties, which are not at issue here. If anything, the court's conclusion that Anadarko had only "assumed the obligations as to unaccrued royalties" supports Ovintiv's claim here. *Id.* at *4.

Even if the overpayments were interests in personalty, DDR's forfeited argument would hold no water. DDR suggests encumbrances are only liabilities attached to property, but the Fifth Circuit (and other courts in Texas) have recognized that "encumbrance" includes other rights. *See, e.g., Matter of Minh Van*

---

[25] This argument applies only to the Mineral Deeds.

*Truong*, 789 Fed. Appx. 420, 423 (5th Cir. 2019) (citing Black's Law Dictionary and noting encumbrance can mean a "liability that is attached to property <u>or some other right</u> and that may lessen its value"); *Lemon v. Hagood*, 545 S.W.3d 105, 125 (Tex. App.—El Paso 2017, pet. denied) (same). The overpayment is a liability attached to a right transferred to DDR—the right to royalties under the Leases—and is therefore an encumbrance that transferred to DDR under the Mineral Deeds.

DDR's key cases on "encumbrance" come from 137 years ago (*Thomson v. Locke*, 1 S.W. 112 (Tex. 1886)) and 89 years ago (*City of Dayton v. Allred*, 68 S.W.2d 172 (Tex. Comm'n App. 1934)). The reason for such selective citation of ancient authorities is obvious; the modern definition of "encumbrance" does not fit DDR's argument.

Also, DDR's statutory authority does not support its brand-new argument. DDR argues that an encumbrance is a tax, assessment, or lien on real property. But the provision DDR cites for this argument—Tex. Prop. Code §5.024—is applicable only to general warranty deeds, which as a matter of law, include the implied covenant that the estate is free of encumbrances. *Id.* §§5.021-.023. The Mineral Deeds expressly negate any such implied covenant by conveying all encumbrances to DDR. Section 5.024 does not apply to the Deeds here. Again, DDR's forfeited argument fails on the merits.

## C. DDR's argument that the Richters' liability is not a covenant running with the land is a red herring.

Leaning heavily into its position that the Richters' overpayments are a personal debt for accrued royalties on past production, DDR asserts yet another new (and therefore forfeited) argument: the overpayment liability is not a covenant running with the land because accrued royalties are personal property that do not "touch and concern" the land. DDRPB at 49-51.

But as established above, the overpayment did not create a personal liability. *See* Argument II.B.2.b.

And under Texas law when a grantor transfers all its interest in property, encumbrances on that property transfer with the land as covenants that run with the land. *See Twelve Oaks Tower I, Ltd. V. Premier Allergy, Inc.*, 938 S.W.2d 102, 114 (Tex. App.—Houston [14th Dist.] 1996, no writ); *City of Dallas v. Pfirman Corp.*, No. CIV. A. 399CV0312G, 2000 WL 159314, at *4 (N.D. Tex. Feb. 11, 2000). Those encumbrances include the benefits and liabilities under a lease covering the property conveyed.[26] *Twelve Oaks*, 938 S.W.2d at 114 (assignee steps into the shoes of the assignor and liable for rent under leases); *Pfirman*, 2000 WL 159314, at *4 ("The assignee becomes the tenant in place of the original lessee and is in privity of

---

[26] If Ovintiv had sued to enforce a covenant by the Richters, it would arise out of the Leases, not the Deeds. Under the Leases, Ovintiv had to pay royalties to the Richters only on minerals produced from the Richters' land, as defined by the Leases. Ovintiv's PPAs merely recouped sums that were overpaid under the Leases.

estate with the lessor. Accordingly, an assignee is liable for the rent and for the performance of the covenants that run with the land."). And Texas courts have further held that royalty obligations are covenants running with the land. *See, e.g.*, *Lyle v. Jane Guinn Revocable Tr.*, 365 S.W.3d 341, 353 (Tex. App.—Houston [1st Dist.] 2010, pet. denied); *Verde Minerals, LLC v. Burlington Res. Oil & Gas Co., LP*, 360 F. Supp. 3d 600, 617 (S.D. Tex. 2019). Thus, even if DDR had not forfeited its argument here, it is simply wrong.

### III. The Division Orders bolster the holding that DDR is liable for the Richters' overpayments.

DDR argues that the Division Orders do not relate to their statutory underpayment claim, DDRPB at 55-60, and later they make a brief argument in support of their claim, *id.* at 68. Ovintiv addresses these points together.

Division orders are agreements expressly authorized under Section 91.402 of the Texas Natural Resources Code entitles a payor (Ovintiv) to division orders signed by a payee (DDR) authorizing the payor to suspend payment until the resolution of any adverse claim about the payee's claimed interest in production. In line with this statute, DDR requested the Division Orders from Ovintiv and voluntarily executed the versions that Ovintiv provided. *See* Statement of Case II.C. These Division Orders are binding until revoked, and DDR has not purported to revoke them. Tex. Nat. Res. Code §91.402(g).

Texas caselaw and the language of the Division Orders both support that Ovintiv had the right to recoup overpayments from DDR.

## A. DDR's silence on *Gavenda* speaks volumes about its effort to impose an inequitable result on

DDR omits any discussion of the seminal case on division orders under Texas law: *Gavenda v. Strata Energy, Inc.*, 705 S.W.2d 690 (Tex. 1986). Once the case is reviewed, the reason for this omission is obvious. In *Gavenda*, the Texas Supreme Court explained that division orders support ensuring that operators (such as Ovintiv) are not exposed to "double liability" when they "have not personally benefited from [payment] errors":

> Detrimental reliance explains why purchasers and operators are usually protected by the rule that division orders are binding until revoked. In the typical case, purchasers and operators following division orders pay out the correct total of proceeds owed, but err in the distribution, overpaying some royalty owners and underpaying others. If underpaid royalty owners' suits against purchasers and operators were not estopped, purchasers and operators would pay the amount of the overpayment twice—once to the overpaid royalty owner under the division order and again to the underpaid royalty owner through his suit. They would have double liability for the amount of the overpayment. **Exposing purchasers and operators to double liability is unfair, because they have relied upon the division order's representations and have not personally benefited from the errors**.

*Gavenda,* 705 S.W.2d at 691-92 (emphasis added; citation omitted).

*Gavenda*'s analysis applies here. DDR's lawsuit is an unabashed attempt to impose "double liability" on Ovintiv based on overpayments to the Richters and DDR. *Id.* Ovintiv has "not personally benefited from the [overpayment] errors," *id.,*

43

as it used the overpayment to pay underpaid royalty owners. ROA.232-33 ¶¶5-8. Thus, the Texas Supreme Court under *Gavenda* would consider it "unfair" to saddle Ovintiv with liability related to these overpayments. This unfair result is exactly what DDR wants in this case.

## B.    The Division Orders permit Ovintiv's recoupment.

The plain language of the Division Orders (as authorized by Texas statute) support Ovintiv's recoupment from DDR. These Orders permitted Ovintiv "to withhold payment pending resolution of a[n] adverse claim asserted regarding the interest in production claimed herein by [DDR]. ROA.679, 681. The "interest in production" subject to the Division Orders is established by the Leases and did not change when the Richters conveyed their interests to DDR. Only the <u>owner</u> of the interest in production changed—from the Richters to their wholly owned and controlled entities. There was also an "adverse claim" related to these interests: that of the royalty owners who were underpaid as part of the same error that resulted in the overpayment to the Richters. Ovintiv "asserted" that claim by notifying DDR of the error and offsetting the overpayments from DDR's royalty payments. Thus, the Division Orders permit exactly what Ovintiv did: withholding payment allocated to the interest in production under the Leases until the adverse claim of the underpaid parties was resolved.

Under the Division Orders DDR also agreed to "indemnify and reimburse [Ovintiv] any amount attributable to an interest to which the [DDR] is not entitled." ROA.679, 681. This indemnity obligation also came into effect here. DDR succeeded to the Richters' royalty interest on production from the Leases at a time when the Richters had been paid more than they were entitled to. Ovintiv has merely recouped the excess payment from the same interest in production to which the overpayments were made.

## C. DDR's appellate arguments do not negate the operation of the Division Orders.

DDR attempts to improperly conflate the Division Orders with the "safe-harbor provisions" in Section 91.402 of the Texas Natural Resources Code in yet another new (and forfeited) argument.[27]

But the Division Orders and the safe-harbor provisions <u>are entirely distinct things</u>: one is a statutory safe-harbor and the other is a binding document—which can be as similar or distinct from the statutory language as the parties wish—on how oil and gas proceeds between the specific payee and payor will be paid. What binds the parties here is the <u>Division Orders</u>, and, as discussed above, under the plain language of the Division Orders, Ovintiv was entitled to recoup the overpayments.

---

[27] DDR argued that none of the safe-harbor exceptions applied in its MPSJ, ROA.373–74. But this argument was limited to (1) no title dispute existing and (2) included no mention of DDR's new theory that the safe-harbor provisions limit the interpretation of the Division Orders. *Id.*

That the Division Orders have some language that tracks the statutory division order language does not change DDR's obligations under these agreements.

DDR argues that the Division Orders permitted Ovintiv to suspend payments only if there was a title dispute. But under the Division Orders, Ovintiv had the right to suspend payments "until the resolution of any title dispute **or** adverse claim asserted regarding the <u>interest in production</u>" that DDR claimed. DDR's interpretation impermissibly renders the words "or adverse claim" meaningless. *See WBCMT 2007 C33 OFFICE 9720, L.L.C. v. NNN Realty Advisors, Inc.*, 844 F.3d 473, 478 (5th Cir. 2016) ("Texas courts thus examine the entire contract in an effort to harmonize and give effect to all provisions so that none is rendered meaningless." (quotation omitted)). The words "or adverse claim" must mean something other than a title dispute—including overpayments which, under *Gavenda*, create an appropriate situation for recoupment.

DDR also argues that the Division Orders cannot involve production from before DDR owned the interest. DDR makes this logical leap based on a line of cases reinforcing the well-settled principle that division orders are binding until revoked. But these cases do not address any supposed blanket limitation on division orders that restricts them to only concern production sold after the payee acquired its interest. Rather, they support Ovintiv's argument that DDR is bound under the Division Orders as they remain unrevoked.

## IV. DDR's arguments contravene the Leases.

At their core, DDR's claims stem from the Leases: DDR claims that Ovintiv's recoupment breached the Leases, and its claim under the Texas Natural Resources Code relies on Ovintiv owing DDR additional royalties <u>under the Leases</u>. Yet DDR ignores that its position would violate the Leases. The Leases very specifically preclude lessors (the Richters) from increasing Ovintiv's obligation to make royalty payments by engaging in property transactions:

> The rights and estate of any party hereto may be assigned from time to time in whole or in part and as to any minerals or horizon. **All of the covenants, obligations, and considerations of this lease shall extend to and be binding upon the parties hereto, their heirs, successors or assigns. <u>No change or division in the ownership of said land, or other moneys, or any part thereof however effected, shall increase the obligations or diminish the rights of lessee,</u>** including, but not limited to, the location and drilling of wells and the measurement of production.

ROA.236-37, 248-49, 260-61, 272-73 ¶8 (emphasis added).

DDR's theory is that because the Richters transferred their interest to DDR, recoupment from the interest is no longer permitted. That theory violates the Leases—a change in ownership will have precluded Ovintiv's right to recoup the overpayments and doubled Ovintiv's obligation to pay the contested royalties.

Because the Leases preclude the argument that Ovintiv cannot recoup overpayments from the interest after the Leases were transferred to DDR, DDR's argument fails.

**V.**      **The District Court did not pierce a corporate veil between DDR and Duane Richter, who controls both DDR entities.**

DDR presents a conditional issue if this Court were to conclude that the District Court pierced a veil between the DDR limited partnerships and the Richters to conclude that Ovintiv properly recouped the Richters' overpayments from DDR. DDRPB at 60-62.

Ovintiv proved that Duane Richter is the managing member or general partner for all three of the DDR entities involved in the conveyances. ROA.350-56. Ovintiv further provided authority establishing the designated manager's authority over a member-managed LLC (DDRD Management), the general partner of both DDR Weinert and DDR Williams. ROA.204-05 (citing Tex. Bus. Orgs. Code §§1.002(35)(A), 3.101. DDR did not controvert this evidence or authority and the District Court noted this fact in a footnote. ROA.2239 at n.4.

DDR concedes that the District Court did not actually pierce the corporate veil. DDRPB at 60-61. Further, Ovintiv did not move for summary judgment on a veil-piercing theory. Accordingly, the Court need not reach this issue.

**VI.**      **The Court may also affirm the Judgment on Ovintiv's alternative equitable defense.**

The Court may also affirm the Final Judgment based on Ovintiv's affirmative defenses. Ovintiv moved for summary judgment on its setoff defense. ROA.218-22. The District Court did not decide Ovintiv's Motion on this ground, but this Court

"may affirm a summary judgment on any ground supported by the record, even if it is different from that relied on by the district court." *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 520 (5th Cir. 2021).

"The common-law doctrine of equitable recoupment…provides 'a defense that deduct[s] from plaintiff's recovery all just allowances or demands accruing to the defendant with respect to the same contract or transaction.'" *W&T Offshore, Inc. v. Bernhardt*, 946 F.3d 227, 240 (5th Cir. 2019).[28] DDR actually admits that Ovintiv is entitled to recoupment if setoff arises out of the same contract or transaction and is supported by equity. DDRPB at 64. Both conditions are fulfilled here and thus Ovintiv should prevail.

DDR argues that Ovintiv does not meet the same-transaction standard, but this Court "easily dispatched" a similar argument in *W&T Offshore. Id.* at 241. There, the Department of the Interior demanded payment from W&T for under-deliveries of gas it was required to make to Interior as in-kind royalties. One of the issues was whether, as part of its calculation of cumulative under-deliveries, Interior was required to offset W&T's prior over-deliveries. *Id.* at 239-40. This Court held that it had to do so pursuant to W&T's defense of equitable recoupment. *Id.*

---

[28] The principles of recoupment may apply even if the counterclaim or defense is called setoff or offset. *Garza v. Allied Fin. Co.*, 566 S.W.2d 57, 63 (Tex. App.—Corpus Christi 1978, no writ).

> The common-law doctrine of equitable recoupment, meanwhile, provides a defense that goes to the foundation of a plaintiff's claim by deducting from plaintiff's recovery all just allowances or demands accruing to the defendant with respect to the same contract or transaction. As a purely defensive procedure, it is available to defendant so long as plaintiff's claim survives—even though an affirmative action by defendant is barred by limitations.

*Id.* at 240 (cleaned up).

Like Interior, DDR argues that each payment under the lease was a separate "transaction" precluding recoupment. *Id.* at 241. This Court said, "This objection is easily dispatched, as the Department of the Interior's requirement that payments be made on a monthly basis does not trump the reality that each monthly obligation arises from a single contract: the lease." *Id.* (emphasis added). This Court went on to say that Interior's argument—like the one DDR is making—is "at odds with the aim of the equitable recoupment doctrine":

> The Department of the Interior's cramped view of the meaning of "the same contract or transaction" in this context is at odds with the aim of equitable recoupment doctrine, which is to allow the contract or transaction at issue to be examined in all its aspects, and judgment to be rendered that does justice in view of the one transaction as a whole.

*Id.* (emphasis in original) (quotation omitted). As in *W&T*, the overpayment obligations arise here from the same set of contracts: the Leases. DDR's expert agreed, explaining that "[r]ecoupment is the active retention or diversion, by an obligor, of sums due to the obligee on a continuing basis from, in the case of oil and

50

gas proceeds, <u>the lease or tract in question</u>, i.e. <u>the same transaction</u>." ROA.1189

(emphasis added). [29]

Further, despite DDR's attempt to claim that Ovintiv is attempting to "abscond" with DDR's royalties, the equities firmly support recoupment. It is undisputed that:

- The Richters were mistakenly over-allocated volumes, resulting in an overpayment of royalties, ROA.231-33.

- DDR was created and is controlled by the Richters for estate planning purposes, ROA.204-05, 351, 354, 356, 2239 n.4.

- Recoupment is a valid and common practice in the oil and gas industry to correct royalty mispayments, ROA.2243-44, 334, 2057.

- Ovintiv's recoupment did not exceed the overpayments, ROA.233, 2247.

- Ovintiv did not benefit from the correction of the misallocation, ROA.232.

Recoupment allows for each royalty interest to be paid what it is owed under common industry practice to promote fairness, efficiency, and avoid double payment. DDR seeks to exploit a loophole to gain a $600,000 windfall. And, as discussed above, Argument II.A.3., a ruling for DDR would pave the way for gamesmanship, increasing litigation and costs for all involved.[30] This Court should avoid such an inequitable result.

---

[29] Ovintiv does not adopt Mr. Jones's report; any cite to his report is simply to illustrate DDR's position.

[30] DDR also argues that Ovintiv cannot assert the affirmative defenses of offset because DDR and the Richters are not the "same" party. DDRPB at 67. But because DDR now owns the "same"

**VII.     The District Court correctly dismissed DDR's statutory claim.**

The District Court properly held that DDR's claim under the Texas Natural Resources Code failed because DDR was not owed the recouped funds. Ovintiv was entitled to recoup the overpayments, and therefore it has not underpaid DDR. *See* Argument II. Further, DDR's statutory claim relies on Ovintiv owing DDR additional royalties under the Leases. Because the Leases preclude the argument that Ovintiv cannot recoup from the interest after the Leases were transferred to DDR, the claim cannot stand. *See* Argument IV.

**VIII.     The District Court correctly dismissed DDR's conversion claim.**

The District Court correctly concluded that because DDR received its right to royalties under the Leases subject to the Richters' overpayment liability, a necessary element of DDR's conversion claim was negated: that Ovintiv "unlawfully and without authorization assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with the plaintiff's rights as an owner." ROA.2248; *see SBI Invs., LLC v. Quantum Materials Corp.*, No. 03-17-00863-CV, 2018 WL 1191854, at *5 (Tex. App.—Austin Mar. 8, 2018, no pet.). Thus, dismissal of the conversion claim was proper.

---

mineral "subject to" the Richters' indebtedness for overpayments as a matter of contract law, DDR stands in the Richters' shoes. *Cf. Sw. Bell Tel. Co. v. Mktg. on Hold Inc.*, 308 S.W.3d 909, 920 (Tex. 2010) (assignee steps into shoes of assignor).

But, as Ovintiv argued to the District Court, DDR's conversion claim also fails for two other independent reasons: the economic loss rule and limitations. This Court may affirm the judgment on the basis of arguments Ovintiv raised below that DDR does not address. *See Campos*, 10 F.4th at 520.

**A. Dismissal of the conversion claim is proper because it is barred by the economic loss rule.**

DDR's only right to be paid royalties—including those they allege Ovintiv failed to pay—arises from the Leases. The economic loss rule generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy." *Chapman Custom Homes, Inc. v. Dall. Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014) (per curiam). Several Texas courts have found that these principles bar tort claims against an oil and gas operator who allegedly failed to pay royalties under a lease. *See Verde Minerals, LLC v. Koerner*, No. 2:16-CV-199, 2017 WL 7052205, at *4 (S.D. Tex. Aug. 14, 2017); *see also ConocoPhillips Co. v. Koopmann*, 542 S.W.3d 643, 666 (Tex. App.—Corpus Christi 2016), *aff'd on other grounds*, 547 S.W.3d 858 (Tex. 2018); *Yzaguirre v. KCS Res., Inc.*, 47 S.W.3d 532, 543 (Tex. App.—Dallas 2000), *aff'd*, 53 S.W.3d 368 (Tex. 2001); *cf. Piney Woods Country Life Sch. v. Shell Oil Co.*, 726 F.2d 225, 242 (5th Cir. 1984) ("[F]ail[ing] to pay royalties according to the proper measure" is "breach of contract but it is not conversion").

**B.    DDR's conversion claim is also barred by limitations.**

If DDR had a basis for its conversion claim that was independent of its contract claims, limitations would bar it. The statute of limitations for conversion is two years. *Rogers v. Ricane Enters., Inc.*, 930 S.W.2d 157, 165 (Tex. App.—Amarillo 1996, writ denied). A conversion claim accrues at the time of the taking. *Id.*

DDR's conversion claim is based on Ovintiv's recoupment of royalties in June, September, and October 2018. DDR's Original Petition was not filed until April 27, 2022, about three and a half years after the latest royalty payment at issue. Thus, limitations bars DDR's conversion claim.

**IX.    DDR's Partial Motion for Summary Judgment cannot be granted because there is a fact issue on damages.**

DDR asks the Court to issue it a judgment for $608,815.63, DDRPB at 73, but its damages calculation is wrong. To recover for breach of contract, DDR must prove that Ovintiv committed a material breach and caused damages to DDR as a result. *See Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (citing Texas law). Accordingly, a fact issue on damages precludes summary judgment for DDR. *See NB Gathering IX Pref, L.L.C. v. Nelson*, No. 3:20-CV-3491-K, 2022 WL 347610, at *3 (N.D. Tex. Feb. 4, 2022) (plaintiff "must establish beyond peradventure" that it is entitled to summary judgment on the damages issue where the "peradventure" standard is "a heavy one").

DDR relies on the affidavit of Idalia Romanos as evidence of DDR's alleged underpayment. Romanos calculates overpayments of $608,815.63.36. ROA.1155.[31] But Romanos's calculations erroneously include Ovintiv's recoupment based on January 2018 overpayments to DDR—not the Richters. ROA.1156, ROA.2058 ¶4. DDR does not argue that Ovintiv cannot recover overpayments to DDR from DDR. Similarly, Ovintiv's PPA included credits to DDR, which Romanos fails to consider. ROA.2058 ¶5.

Ovintiv also submitted evidence showing that had no PPA been performed, DDR would have received $547,323.86—$61,491.77 less than DDR's claimed damages. ROA.2058 ¶6. Thus, even if DDR were to prevail on one of its liability theories, this fact issue precludes summary judgment for DDR.

## CONCLUSION

For the reasons set forth above, this Court should affirm the take-nothing judgment of the District Court dismissing the Plaintiffs-Appellants' claims.

---

[31] Ovintiv does not adopt Ms. Romanos's report.

Respectfully submitted,

**HOGAN THOMSON SCHUELKE LLP**

**BY**:  */s/ Christopher M. Hogan*
Christopher M. Hogan
Texas Bar No. 24065434
Samantha L. Thompson 24102568
1001 Fannin Street, Suite 4775
Houston, Texas 77002
*chogan@hoganthompson.com*
*sthompson@hoganthompson.com*
Telephone: (713) 671–5630
Facsimile:   (713) 671-5632

***Counsel for Defendants – Appellees,***
***Ovintiv (USA), Inc. f/k/a Encana Oil & Gas, Inc.***

## CERTIFICATE OF SERVICE

This is to certify that the foregoing Original Brief of Defendants–Appellees

Ovintiv (USA), Inc. f/k/a Encana Oil & Gas (USA), Inc. was served on January 2,

2024, in compliance with FED. R. APP. P. 25(c)(2)(A) by filing with the Clerk of the

Court using the CM/ECF filing system, on:

Corey F. Wehmeyer
*cwehmeyer@swenergylaw.com*
Renée A. Yanta
*ryanta@swenergylaw.com*
Emily A. Gearhart
*egearhart@swenergylaw.com*
SANTOYO WEHMEYER, P.C.
12400 San Pedro Avenue, Suite 300
San Antonio, Texas 78216
Telephone:  (210) 998-4200
Facsimile:   (210) 998-4201

*Counsel for Plaintiffs – Appellants* DDR Weinert, Ltd. And DDR Williams, Ltd.


                              */s/ Christopher M. Hogan*
                              Christopher M. Hogan

# CERTIFICATE OF COMPLIANCE

1.    This document complies with the word limit of FED. R. APP. P. 32 (a)(7)(B)(i) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f):

this document contains 12, 978 words.

2.    This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5)(A) and 5th Cir. Rule 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because:

this document has been prepared in a proportionally spaced typeface with serifs using Microsoft Word 365 in a 14-point Times New Roman font, except for the footnotes, which are in a 12-point Times New Roman font.

*/s/ Christopher M. Hogan*
Christopher M. Hogan.

***Counsel for Defendants – Appellees***
***Ovintiv (USA), Inc. f/k/a Encana Oil & Gas (USA), Inc.***

Dated: January 2, 2024