# In the United States Court of Appeals for the Fifth Circuit

DDR WEINERT, LTD; DDR WILLIAMS, LTD,

Plaintiffs-Appellants

*v.*

OVINTIV USA, INC.; ENCANA OIL & GAS (USA), INC.,

Defendants-Appellees

On Appeal from the United States District Court
From the Western District of Texas, Civil Action No. 22-CV-00558-XR
Honorable Xavier Rodriguez, presiding.

## BRIEF OF AMICUS CURIAE TEXAS OIL AND GAS ASSOCIATION IN SUPPORT OF APPELLEES

**YETTER COLEMAN LLP**
Robert Durham Woods,
Andrew T. Ingram,
811 Main Street, Suite 4100
Houston, Texas 77002
713-632-8000

**Attorneys for Texas Oil and Gas Association**

# In the United States Court of Appeals for the Fifth Circuit

DDR WEINERT, LTD; DDR WILLIAMS, LTD,

Plaintiffs-Appellants

*v.*

OVINTIV USA, INC.; ENCANA OIL & GAS (USA), INC.,

Defendants-Appellees

On Appeal from the United States District Court
From the Western District of Texas, San Antonio Division
Civil Action No. 22-CV-00558-XR
Honorable Xavier Rodriguez, presiding.

### Supplemental Certificate of Interested Persons

The undersigned counsel of record certifies that, in addition to the person and entities listed in Appellants' and Appellees' Certificates of Interested Persons, the following persons have an interest in the outcome of this case:

**Amicus curiae**
Texas Oil and Gas Association

**Counsel for amicus curiae**
Robert Durham Woods,
Andrew T. Ingram
**YETTER COLEMAN, LLP**

Amicus curiae Texas Oil & Gas Association does not have any parent companies. No publicly traded company has a 10% or greater ownership interest in Texas Oil & Gas Association.

/s/ Robert Durham Woods
Robert Durham Woods
*Attorney of record for Texas Oil & Gas Association*

# Table of Contents

PAGE

Supplemental Certificate of Interested Persons ........................................................2

Table of Authorities ...............................................................................................5

Interest of Amicus Curiae ......................................................................................7

Summary of the Argument......................................................................................9

I.    This Court should not hesitate to recognize the practice and equitable defense of recoupment.................................................................................9

II.    The equities favor recoupment on these facts. .............................................15

Conclusion ...........................................................................................................19

Certificate of Service ...........................................................................................21

Certificate of Compliance .....................................................................................21

# Table of Authorities

**Cases** **Page(s)**

*All. for Hippocratic Med. v. U.S. Food & Drug Admin.*,
78 F.4th 210 (5th Cir. 2023), *cert. granted on other grounds sub
nom. Danco Labs., L.L.C. v. All. Hippocratic Med.*, No. 23-236,
2023 WL 8605744 (U.S. Dec. 13, 2023).............................................................15

*City of Carlsbad v. Grace*,
966 P.2d 1178 (N.M. Ct. App. 1998) ................................................................12

*F.D.I.C. v. Graham*,
882 S.W.2d 890 (Tex. App.—Houston [14th Dist.] 1994, no writ)...................12

*First Heights Bank, FSB v. Gutierrez*,
852 S.W.2d 596 (Tex. App.—Corpus Christi–Edinburg 1993, writ
denied)................................................................................................................15

*Frederick v. United States*,
386 F.2d 481 (5th Cir. 1967) ............................................................................10

*Freston v. Gulf Oil Co.*,
565 P.2d 787 (Utah 1977)..................................................................................11

*In re Holford*,
896 F.2d 176 (5th Cir. 1990) ............................................................................10

*Kadonsky v. United States*,
216 F.3d 499 (5th Cir. 2000) ............................................................................14

*In re Kosadnar*,
157 F.3d 1011 (5th Cir. 1998) ..........................................................................14

*Morriss-Buick Co. v. Davis*,
43, 91 S.W.2d 313 (Tex. 1936) .........................................................................12

*Pa. R. Co. v. Miller*,
124 F.2d 160 (5th Cir. 1941) ............................................................................12

*S. Pac. Co. v. Porter*,
331 S.W.2d 42 (Tex. 1960).................................................................................12

*Shanbour v. Phillips 66 Natural Gas Co.*,
    864 P.2d 815 (Okla.1993)................................................................................11

*W & T Offshore, Inc. v. Bernhardt*,
    946 F.3d 227 (5th Cir. 2019) ................................................................*passim*

*Waechter v. Amoco Prod. Co.*,
    537 P.2d 228 (Kan. 1975)...........................................................................11, 12

**Statutes**

3 Williams & Meyers, Oil and Gas Law, § 657 (2023)............................................11

**Other Authorities**

3 Kuntz, *Law of Oil and Gas* § 42.8 (2023) ..........................................................15

Pomeroy, II Equity Jurisprudence § 378 (5th ed. 1941)......................................... 16

## INTEREST OF AMICUS CURIAE

The Texas Oil & Gas Association (TXOGA) is a statewide trade association representing every facet of the Texas oil and gas industry including small independents and major producers. Collectively, the membership of TXOGA produces approximately 90 percent of Texas's crude oil and natural gas, operates nearly 90 percent of the State's refining capacity, and is responsible for the vast majority of the State's pipelines. In fiscal year 2022, the Texas oil and natural gas industry supported 443,000 direct jobs and paid $24.7 billion in state and local taxes and state royalties, funding our state's schools, roads, and first responders.

TXOGA is interested in this litigation in which its members are the defendants and appellees. Recoupment of overpaid royalties from later royalty payments has been a custom in the Texas petroleum business for decades. Owing to technological limitations, marketing practices, and sheer complexity of operations, overpayments are inevitable in the vast acreage of leased lands in the State. Recoupment is the standard, efficient, and accepted way for TXOGA members to recover overpayments to holders of royalty interests without litigation. Recoupment is an accepted equitable defense to claims of underpayment of royalties, and TXOGA believes it serves the health of the industry for courts to continue recognizing the defense.

This brief was not authored by a party's counsel in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or

submitting this brief; and no person—other than the amicus curiae, its members, or its counsel—contributed money that was intended to fund preparing or submitting the brief.

<h1 style="text-align:center">SUMMARY OF THE ARGUMENT</h1>

TXOGA urges two points for the Court's attention and in support of affirming the judgment of the district court.

Following its own precedent on Texas law, this Court should continue to recognize recoupment as an equitable defense. As the brief will show, recouping past overpayments from later royalties is a useful and customary practice in the oil field when technical and accounting errors cause royalties to be paid to the wrong mineral owner. This custom is possible so long as courts recognize recoupment as an equitable defense whenever a mineral owner may sue for "unpaid royalties" after his lessee recoups overpayments to him.

Second, TXOGA urges the Court to affirm because equity favors the application of recoupment on these facts. Plaintiffs here are companies owned by the Rickert family suing to recover royalties that were erroneously paid by Defendants to the Rickerts. Allowing Plaintiffs this windfall would not only be inequitable, but it would encourage gamesmanship by minerals owners seeking to lock-in mistaken overpayments by shuffling leased minerals from entity to entity.

<h1 style="text-align:center">ARGUMENT</h1>

## I. THIS COURT SHOULD NOT HESITATE TO RECOGNIZE THE PRACTICE AND EQUITABLE DEFENSE OF RECOUPMENT.

What is "recoupment"? Recoupment is both a common practice in the Texas petroleum industry and a recognized equitable defense of a mineral lessee.

- 9 -

Typically, the owner of a mineral interest in land will sign a lease with an oil producer that entitles him to a royalty equal to a fraction of the money realized from selling the oil and gas he owns after the producer gets it out of the ground. The companies that drill and pump take their obligations to landowners seriously and devote significant resources to ensuring that every owner of a fractional interest in the minerals they produce is paid owed royalties.

Technology for measuring oil and gas freed from the Earth is not perfect; equipment to measure increments of oil and gas can make mistakes that accumulate over time. And as illustrated here, errant gas flows below the ground plague the best efforts at accurate accounting to neighboring mineral owners in the same field. All this can result in some royalty owners receiving less money than they should get and others getting more than they are entitled to receive.

Another example is that purchasers of oil and gas and/or the "midstream" pipeline companies that transport the products from one place to another sometimes adjust the value of oil and gas attributable to particular property months after producers' royalties are due. This can be due to the correction of measurement errors, similar to here, or a myriad of other reasons. Producers then must then make sure the respective owners in that property are neither overpaid nor underpaid, which is often achieved through recoupment.

Luckily, there is an accepted method in the industry for curing these over- and underpayments without litigation. A producer can correct past overpayments by deducting them from future payments. This process, called recoupment, is a common occurrence throughout Texas oil fields.

When a producer recoups overpaid money from future royalty payments, the landowner may nonetheless sue the producer claiming royalties have been wrongfully withheld. When that happens, recoupment is available as an equitable affirmative defense to the royalty owner's claims. As this Court has said, "The common-law doctrine of equitable recoupment . . . provides 'a defense that goes to the foundation of [a] plaintiff's claim by deducting from plaintiff's recovery all just allowances or demands accruing to the defendant with respect to the same contract or transaction.'" *W & T Offshore, Inc. v. Bernhardt*, 946 F.3d 227, 240 (5th Cir. 2019) (alteration in original) (quoting *Distrib. Servs., Ltd. v. Eddie Parker Interests, Inc.*, 897 F.2d 811, 812 (5th Cir. 1990)).

The doctrine "allows a defendant to reduce the amount of a plaintiff's claim by asserting a claim against the plaintiff which arose out of the same transaction to arrive at a just and proper liability on the plaintiff's claim." *In re Holford*, 896 F.2d 176, 178 (5th Cir. 1990); *see also Frederick v. United States*, 386 F.2d 481, 487 (5th Cir. 1967) ("Common law recoupment was equitable in nature, resting on the principle that it was equitable to settle in one action all claims growing out of the

same contract or transaction; it was for defensive use only, and a defendant could not use it as the basis for an affirmative judgment in his favor.").

The district court, with the agreement of the parties, rightly recognized the existence of recoupment as a standard practice and equitable defense. The scholars and courts it references and quotes correctly describe the practice and its ubiquity.

"Where as a result of good-faith mistake royalty has been paid to a person not entitled to receive same or where excessive payments have been made in good faith, it is generally held that the lessee (or purchaser) who has made such payments may recover from the payee the payments to which he was not entitled." 3 Williams & Meyers, Oil and Gas Law, § 657 (2023).

Equitable recoupment is allowed as a defense in oil and gas cases. *E.g., Bernhardt*, 946 F.3d at 241 (applying doctrine in oil and gas dispute between lessor and federal government); *Shanbour v. Phillips 66 Natural Gas Co.*, 864 P.2d 815, 817 (Okla.1993) (allowing recoupment by oil producer who overpaid royalty payments); *Freston v. Gulf Oil Co.*, 565 P.2d 787, 788 (Utah 1977) (holding oil company's choice to recoup "dictated by equity" and explaining that it "would be highly inequitable to allow plaintiffs to retain something that was not theirs"); *Waechter v. Amoco Prod. Co.*, 537 P.2d 228, 255 (Kan. 1975) (applying equitable recoupment to a royalty dispute in the oil patch). "Thus, it appears to be universally

recognized that equitable recoupment is allowed as a defense in oil and gas cases . . . ." *City of Carlsbad v. Grace*, 966 P.2d 1178, 1185 (N.M. Ct. App. 1998).

Recoupment is a general legal principle not confined to mineral royalties. It is recognized in Texas for a variety of contractual circumstances. *F.D.I.C. v. Graham*, 882 S.W.2d 890, 899 (Tex. App.—Houston [14th Dist.] 1994, no writ) (promissory note and guarantee agreement); *Morriss-Buick Co. v. Davis*, 43, 91 S.W.2d 313, 314 (Tex. 1936) (surface lease); *see also S. Pac. Co. v. Porter*, 331 S.W.2d 42, 45 (Tex. 1960) (holding recoupment applies to any factor "which would vitiate a contract either in whole or in part as of the time the contract was made").

Controlling precedent under the rule of orderliness recognizes recoupment as Texas law. As early as 1941, this Court wrote, "The doctrine of recoupment was derived from the civil law, and was adopted as a part of the common law." *Pa. R. Co. v. Miller*, 124 F.2d 160, 162 (5th Cir. 1941). "Being a part of the common law of England in 1840, it was expressly adopted by the State of Texas where this contract was made, and has existed since in unimpaired form in that state." *Id.*

Outside Texas, recoupment is a well-established equitable defense in American common law. Cited by the district court, the Kansas Supreme Court explained its foundations at length in the *Waechter* oilfield case.

The *Waechter* court wrote, "Recoupment is sometimes spoken of as a rule of strict justice." 537 P.2d at 255 (quotation omitted). Like other equitable defenses, it

takes a broader view of the plaintiff and defendant's relationship with one another and lets one debt offset another: "The doctrine of recoupment does not allow one transaction to be offset against another, but only permits a transaction which is made the subject of suit by the plaintiff to be examined in all its aspects and a judgment to be rendered that does justice in view of the transaction as a whole." *Id.*

Recoupment is a defense, not a cause of action: "In the absence of a statute to the contrary, recoupment is purely defensive, or in the nature of a common-law defense, and not a separate cause of action or a weapon of offense. It applies only by way of reduction, mitigation, or abatement of damages claimed by the plaintiff." *Id.* "It is not an independent cross claim, like a separate and distinct debt or item of account due from the plaintiff, but is confined to matters arising out of or connected with the contract or transaction which forms the basis of the plaintiff's action." *Id.* (quoting Ruby v. Baker, 190 P. 6, 7 (Kan. 1920)). Because it is a defense, no "judgment can be obtained by the defendant for any balance in his favor." *Id.*

This Court should not hesitate to confirm the validity of the equitable doctrine of recoupment in Texas and its application to overpayments under mineral leases. This case has been litigated under the premise that recoupment, as a practice and a defense, is accepted in Texas. *See* App. Br. at 64 (accepting recoupment as general matter). While the parties disagree about whether recoupment can apply on these facts (to a successor mineral owner), there is no dispute that recoupment is a defense

available to a lessee who overpays a lessor royalties and then deducts from later payments to the same lessee. *See* App. Br. 65–66 (acknowledging and attempting to distinguish precedents accepting recoupment); ROA.1189 (testimony of Plaintiffs' expert that operators "routinely use" recoupment). TXOGA urges this Court not to disturb this principle of law—accepted and useful as it is to the Texas petroleum economy—whether in dicta or otherwise.

## II. THE EQUITIES FAVOR RECOUPMENT ON THESE FACTS.

As an equitable doctrine, recoupment should apply here to prevent an unfair windfall for the plaintiffs—these plaintiffs have the same interests as their predecessors in title who received the mistaken overpayments.

In order to affirm, the Court need not delineate the total scope of the recoupment defense, but only find that the equities favor application of recoupment here.

The equitable character of recoupment shines when courts must decide whether recoupment asserted by a defendant forms part of the "same contract" or "same transaction" as the plaintiff's claim. This Court has said, "Given the equitable nature of the recoupment doctrine, courts have refrained from precisely defining the same-transaction standard, focusing instead on the facts and the equities of each case." *In re Kosadnar*, 157 F.3d 1011, 1013–14 (5th Cir. 1998); *accord Kadonsky v. United States*, 216 F.3d 499, 507 (5th Cir. 2000). As befits an equitable defense,

there "is no general standard governing whether events are part of the same or different transactions." *Id.*

Leading treatises also recognize that the availability of recoupment turns on the equities of the case: "If the lessee or the purchaser of royalty oil or royalty gas should overpay a lessor or should make payment to a person not entitled to receive such payment, such lessee or purchaser *may or may not be entitled to a refund of the amount erroneously paid, depending upon the circumstances of the payment.*" 3 Kuntz, *Law of Oil and Gas* § 42.8 (2023) (emphasis supplied).

The Court recently reaffirmed a well-worn maxim of equity: "It is a well-established maxim that 'equity regards substance rather than form.'"[1] *All. for Hippocratic Med. v. U.S. Food & Drug Admin.*, 78 F.4th 210, 252 (5th Cir. 2023), *cert. granted on other grounds sub nom. Danco Labs., L.L.C. v. All. Hippocratic Med.*, No. 23-236, 2023 WL 8605744 (U.S. Dec. 13, 2023) (quoting Dobbs, 1 Law of Remedies 83 (2d ed. 1993)). "This means, among other things, that courts exercising equitable power should account for the real, boots-on-the-ground circumstances . . . ." *Id.*

---

[1] Of course, these basic equitable maxims are just as much accepted in Texas caselaw as they are in this Court's jurisprudence. *E.g.*, *First Heights Bank, FSB v. Gutierrez*, 852 S.W.2d 596, 605 (Tex. App.—Corpus Christi–Edinburg 1993, writ denied) (collecting Texas cases for the proposition that equity "emphasizes substance over form.").

In *Hippocratic*, the Court also quoted an elegant passage from Pomeroy to the same effect:

> Equity always attempts to get at the substance of things, and to ascertain, uphold, and enforce rights and duties which spring from the real relations of parties. It will never suffer the mere appearance and external form to conceal the true purposes, objects, and consequences of a transaction.

*Id.* (quoting Pomeroy, II Equity Jurisprudence § 378 (5th ed. 1941)).

The plaintiffs did not acquire their minerals in an arms-length transaction or a good faith purchase for value. *See* ROA.283–312 (deeds); ROA.351–366 (LLC documents showing ownership and control). The plaintiffs acquired their interest because the Rickert family shifted their assets to Plaintiffs, companies they own and control. *Id.* The Rickert family received the overpayments; they will reap the benefits if Plaintiffs' suit is successful, effectively receiving a royalty windfall.

This is the same contract and the same transaction. Regarding substance rather than form means understanding the "transaction" here to be the mineral lease; the lease is the single contract under which the Rickerts were once overpaid, the plaintiffs were paid with fair deductions, and the plaintiffs now sue to get those overpayments back. This Court so held when the lessee pled recoupment in *Bernhardt*: "the . . . requirement that payments be made on a monthly basis does not trump the reality that each monthly obligation *arises from a single contract: the lease*." 946 F.3d at 241 (emphasis supplied).

In *Bernhardt*, an operator leased minerals from the Department of the Interior. *Id.* at 231. Under the lease, the operator paid the Department in-kind for many years. *Id.* Later, the Department switched and began to ask for payment in cash. *Id.* After the switch, the Department came to believe that it had received less gas in-kind than it had been entitled to receive. *Id.* at 231–32. It claimed a lump sum cash payment from the operator for this loss. *Id.* at 232. In response, the operator argued equitable recoupment as a defense based on certain overpayments it had made in the past to the Department. *Id.* at 232–33.

The Department urged this Court to adopt a narrow understanding of "same contract or transaction" by arguing that "each monthly obligation under the lease was a separate transaction." *Id.* at 241. But for the Court, "the objection [was] easily dispatched," because of "the reality that each monthly obligation arises from a single contract: the lease." *Id.* The Court stressed that "same contract" should not be given a cramped meaning but that a broad view of what constitutes the same transaction should prevail so that equity may be accomplished. *Id.* It wrote, "The Department of the Interior's cramped view of the meaning of 'the same contract or transaction' in this context is at odds with the aim of equitable recoupment doctrine, which is to allow the contract or transaction at issue to be 'examined in all its aspects, and judgment to be rendered that does justice in view of the one transaction as a whole.'"

*Id.* As was the case in *Bernhardt*, this dispute involves only one contract, the mineral lease under which all parties get their rights and obligations concerning royalties.

Furthermore, the real relations of the parties are such that the plaintiffs will receive a windfall if their suit is successful. The plaintiffs are wholly controlled by the Rickerts and that they are the sole beneficial owners of the plaintiff companies. *See* ROA.351–366 (LLC documents showing ownership and control). Regarding substance rather than form means understanding the "transaction" here to be the mineral lease; the lease is the single contract under which the Rickerts were once overpaid, the plaintiffs were paid after fair deductions for those overpayments, and the plaintiffs now sue to get those overpayments back.

It bears emphasis that it is the plaintiffs who have sought recovery under the lease and that the defendants have set up recoupment as an equitable defense. *Compare* ROA.23 (Plaintiffs' petition), *with* ROA.96 (Defendants' answer). As such, the defendants are not seeking to disregard the corporate form and hold the plaintiffs liable at law pursuant to the lease, but only interposing an equitable barrier to recovery of a debt that is not fairly owed under the same instrument that the plaintiffs sue upon.

### CONCLUSION

TXOGA urges this Court to affirm the judgment of the district court.

Dated:  January 9, 2024

Respectfully submitted,

/s/ Robert Durham Woods

Robert Durham Woods,
Andrew T. Ingram,
**YETTER COLEMAN LLP**
811 Main Street, Suite 4100
Houston, Texas  77002
(713) 632-8000

Attorneys for Amicus Curiae Texas Oil and
Gas Association

## CERTIFICATE OF SERVICE

I certify that this document was filed with the Court via the Court's electronic filing system, on the 9th day of January 2024, and an electronic copy of the response was served on all counsel of record, as listed below, via the Court's electronic filing system on the same date:

Corey F. Wehmeyer
cwehmeyer@swenergylaw.com
Renée A. Yanta
ryanta@swenergylaw.com
Emily A. Gearhart
egearhart@swenergylaw.com
SANTOYO WEHMEYER, P.C.
12400 San Pedro Avenue, Suite 300
San Antonio, Texas 78216
Telephone: (210) 998-4200
Facsimile: (210) 998-4201

***Attorneys for Plaintiffs-Appellants DDR Weinert, Ltd. And DDR Willias, Ltd.***

Christopher M. Hogan
chogan@hoganthompson.com
Samantha L. Thompson
sthompson@hoganthompson.com
HOGAN THOMPSON SCHUELKE LLP
1001 Fannin Street, Suite 4775
Houston, Texas 77002
Telephone: (713) 671-5630
Facsimile: (713) 671-5632

***Attorneys of Record for Defendants-Appellees, Ovintiv(USA), Inc. f/k/a Encana Oil & Gas, Inc.***

/s/ Robert Woods
Robert D. Woods

**CERTIFICATE OF COMPLIANCE**

1.     This document complies with the type-volume limitations of <u>Federal Rule of Appellate Procedure 32(a)(7)(B)</u> because this document contains 2,883 words, excluding the parts of the document exempted by <u>Federal Rule of Appellate Procedure 32</u>.

2.     This document complies with the typeface and typestyle requirements of <u>Federal Rule of Appellate Procedure 32(a)</u> and Fifth Circuit Rule 32.1 because it has been prepared in a proportionally spaced typeface using Microsoft® Office Word 2016 in 14-Point Times New Roman font.

Date:    <u>January 9, 2024</u>           <u>/s/Robert Durham Woods</u>
                                          Robert Durham Woods