**Case No. 23-50479**

_____

## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

*DDR WEINERT, LTD; DDR WILLIAMS, LTD,*
*PLAINTIFFS-APPELLANTS*
v.
*OVINTIV USA, INC.; ENCANA OIL & GAS (USA), INC.,*
*DEFENDANTS-APPELLEES*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF TEXAS, SAN ANTONIO DIVISION
Civil Action No. 22-CV-00558-XR
The Honorable Xavier Rodriguez, presiding

_____

**REPLY BRIEF OF PLAINTIFFS-APPELLANTS,**
**DDR WEINERT, LTD AND DDR WILLIAMS, LTD**

_____

**SANTOYO WEHMEYER P.C.**
Corey F. Wehmeyer (SBN 24051903)
*cwehmeyer@swenergylaw.com*
Renée A. Yanta (SBN 00787483)
*ryanta@swenergylaw.com*
Emily A. Gearhart (SBN 24065871)
*egearhart@swenergylaw.com*
12400 San Pedro Avenue, Suite 300
San Antonio, Texas 78216
Telephone: (210) 998-4200
Facsimile: (210) 998-4201

**ATTORNEYS FOR PLAINTIFFS-APPELLANTS**
**DDR WEINERT, LTD AND DDR WILLIAMS, LTD**

1

# TABLE OF CONTENTS

Table of Contents ................................................................................................2

Table of Authorities ...........................................................................................4

Summary of the Argument...................................................................................7

Argument..............................................................................................................8

I.     DDR's Brief Addresses Exactly The Legal Principles The District Court Considered And That Serve As The Basis Of The District Court's Ruling. ..............................................................................................8

II.    The District Court Erred By Applying Recoupment Here—Against A Successor-In-Interest Who Never Received An Overpayment. ................13

      A.     None of Ovintiv's authorities support recouping royalty payments from anyone other than the overpaid party.........................14

      B.     None of Ovintiv's veil-piercing arguments—disguised as pleas for "fairness" —have merit. ......................................................18

III.   Ovintiv Has Always Maintained And In Fact Bases Its Arguments On The Alleged Overpayments As Accrued—Not Unaccrued Royalties. .............................................................................................................22

IV.   Applying Settled Texas Law, The Deeds Do Not Convey The Richters' Alleged Accrued Royalty Overpayment Debt To DDR. ...............23

      A.     Ovintiv misstates Texas law: The Richters' alleged "burden" is not an appurtenance. .............................................................23

      B.     Ovintiv misconstrues the Deeds: The Deeds do not transfer the overpayment obligation. ...............................................................25

            1.     Ovintiv and the District Court misunderstood the proper legal construction of a "subject to" clause. ...................25

            2.     Ovintiv failed to distinguish DDR's cited cases.......................28

C.     The Richters' alleged liability for royalty overpayments is also not a covenant running with the land...........................31

V.     The Division Orders Confirm DDR Is Not Liable For The Richters' Alleged Debt. ...........................................................33

     A.     *Gavenda* is inapplicable. ....................................................33

     B.     The Division Orders do not permit Ovintiv to use recoupment against DDR for accrued royalties it never owned or received. ...................................................34

VI.     Applying The Deeds And Division Orders As Written And In Conformity With Settled Texas Law Does Not Contravene The Leases...........................................................................34

VII.     The District Court Erred In Dismissing DDR's Statutory and Conversion Claims...........................................................35

VIII.   DDR's Motion For Partial Summary Judgment Can Be Granted. ................36

Conclusion .................................................................................36

Certificate of Compliance .............................................................38

Certificate of Service ...................................................................39

TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aery v. Hoskins, Inc.*, 493 S.W.3d 684
(Tex. App.—San Antonio 2016, pet. denied) ..............................................24, 25

*In re Allcat Claims Serv. L.P.*, 356 S.W.3d 455 (Tex. 2011) ................................18

*Am. Star Energy & Minerals Corp. v. Stowers*, 457 S.W.3d 427
(Tex. 2015).............................................................................................................18

*Amoco Prod. Co. v. Smith,* 946 S.W.2d 162
(Tex. App.—El Paso 1997, no writ)......................................................................16

*Arcadia Ref. Co. v. Cook,* 146 S.W.2d 767
(Tex. App.—Texarkana 1940, writ dism'd judgm't cor.) .....................29, 30, 31

*ASR 2620-2630 Fountainview, LP v. ASR 2620-2630 Fountainview
GP, LLC*, 582 S.W.3d 556
(Tex. App.—Houston [14th Dist.] 2019, no pet.)................................................19

*Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471
(Tex. 2019)......................................................................................................12, 13

*Campbell v. Jones*, 230 S.W. 710
(Tex. App.—Amarillo 1921, no writ)...................................................................27

*City of Carlsbad v. Grace*, 966 P.2d 1178
(N.M. Ct. App. 1998).............................................................................................14

*City of Dallas v. Pfirman*, No. Civ. A. 399CV0312G,
2000 WL 159314 (N.D. Tex. Feb. 11, 2000) .........................................27, 28, 29

*Freston v. Gulf Oil Co.*, 565 P.2d 787 (Utah 1977)...............................................14

*Gavenda v. Strata Energy, Inc.,* 705 S.W.2d 690 (Tex. 1986)..........................33, 34

*Henry v. Smith*, 637 S.W.3d 226
(Tex. App.—Fort Worth 2021, pet. denied) .........................................................24

*Homeland Realty Co. v. Wheelock,* 119 S.W.2d 167
(Tex. App.—El Paso 1938, no writ) ...............................................28, 29

*Hughes v. U.S.*, 196 F.Supp. 37 (E.D. Tex. 1961)...................................................23

*Johnson v. Enerlex, Inc.*, No. 03-96-00401, 1997 WL 562017
(Tex. App.—Austin Sept. 11, 1997, pet denied) (mem. op.) ...........................26

*Kokernot v. Caldwell*, 231 S.W.2d 528
(Tex. App.—Dallas 1950, writ ref'd).................................................27

*Lyle v. Jane Guninn Revocable Tr.*, 365 S.W.3d 341
(Tex. App.—Houston [1st Dist.] 2010, pet. denied) ...........................................32

*In re Mullin*, 433 B.R. 1 (Bankr. S.D. Tex. 2010)...................................................29

*Nelson v. Linn Midcontinent Expl., L.L.C.*, 228 P.3d 533
(Okla. Civ. App. 2009) .........................................................14, 15

*Phillips Petroleum Co. v. Adams*, 513 F.2d 355
(5th Cir. 2011).........................................................22, 23

*Ramirez v. Escajeda,* 44 F.4th 287, 290 n.4 (5th Cir. 2022) .............................9, 10

*Rollins v. Home Depot USA*, 8 F.4th 393, 398 (5th Cir. 2021) .......................11, 12

*Schewe v. Bentsen*, 424 F.2d 60 (5th Cir. 1970).................................................29

*Sheffield v. Hogg*, 77 S.W.2d 1021 (Tex. 1934).................................................26

*Tex. Oil & Gas Corp. v. Moore*, 630 S.W.2d 450
(Tex. App.—Corpus Christi 1982, writ dism'd w.o.j.) .....................................26

*Texas Lone Star Petroleum Corp. v. Chesapeake Operating Inc.*,
No. 2:14-CV-331, 2016 WL 6677939 (S.D. Tex. Nov. 14, 2016)....................16

*Twelve Oaks Tower I, Ltd. v. Premier Allergy Inc.*, 938 S.W.2d 102
(Tex. App.—Houston [14th Dist.] 1996, no writ)..............................................31

*Verde Minerals, LLC v. Burlington Res. Oil & Gas Co., LP*,
360 F. Supp. 3d 600 (S.D. Tex. 2019)..............................................32

*W&T Offshore, Inc. v. Bernhardt*, 946 F.3d 227
(5th Cir. 2019)....................................................................................16, 17, 18

*Waechter v. Amoco Prod. Co.*, 537 P.2d 228 (Kan. 1975)......................................15

*Wenske v. Ealy*, 521 SW.3d 791 (Tex. 2017) .......................................................26

**Other Authorities**

Douglas R. Hafer & Daniel B. Mathis, *Mineral Royalty Mispayments:
The Payor's Rights, Obligations, and Risks in Royalty Mispayment
Scenarios, Including the Pitfalls and Prerogative of Self-Help
Recoupment*, 18 TEX. WESLEYAN L. REV. 85 (2011) .............................19, 20, 21

## SUMMARY OF THE ARGUMENT

The chief legal issue presented is whether a lessor-payee who purchases a mineral interest with associated right to receive royalty payments is legally required to reimburse the lessee-payor the amount of royalties allegedly overpaid to a predecessor-in-title at some earlier time. DDR has always argued the answer is "No." Nothing within the parties' Deeds or Division Orders obligates DDR (the subsequent purchaser and lessor-payee) to pay Ovintiv (the lessee-payor) the amount Ovintiv allegedly overpaid the non-party Richters (the predecessor lessor-payee) at some earlier point in time. Because the District Court ruled otherwise, DDR has brought this appeal.

Ovintiv deflects from this issue, trying to reframe the question into anything but the District Court's ruling. Ovintiv argues fairness; presents a flawed "parade of horribles"; and reverts to real property law principles that the District Court rejected when construing the Deed and the Division Orders as contracts and applying contract law principles. Ovintiv Brief 9-10, 21, 43-44, 51. But putting aside the smoke and mirrors, Ovintiv still does not—and cannot—cite a single legal authority supporting its position that a lessee-payor can recoup royalties overpaid to a predecessor lessor-payee, from a later in time successor lessor-payee who never received a penny of the overpayment.

7

**I.     DDR's Brief Addresses Exactly The Legal Principles The District Court Considered And That Serve As The Basis Of The District Court's Ruling.**

The fundamental issue presented here is the same as the issue presented below: Can Ovintiv take DDR's royalties to repay itself funds it mistakenly paid to DDR's predecessor-in-title, the non-party Richters? The focus of the legal analysis is the same on appeal as it was in the District Court: Do the Deeds transferring the Richter's mineral interests to DDR or the new Division Orders make DDR legally obligated to pay Ovintiv the amount of royalties Ovintiv allegedly overpaid the non-party Richters at an earlier time?

Below, Ovintiv erroneously argued the Deeds and Division Orders did transfer the alleged debt, claiming the debt was attached to and ran with the mineral interests (the "Properties"). ROA.210-16. DDR responded, explaining the settled Texas law that accrued royalties are not real property. ROA.1203-04. Royalty payments are severed from and not part of the mineral estate. *Id*. So, any alleged royalty overpayment is not part of—and therefore is not attached to—the Properties as a matter of law.[1]

---

[1] DDR also explained that the alleged overpayment is owed—if at all—by the non-party Richters and was not transferred to DDR by the Deeds or the Division Orders. ROA.370-72, 1203-04, 1208-10. These principles—argued both in DDR's Brief of Appellant and summary judgment papers, confirmed that the alleged debt was not attached to or part of the mineral interests.

The District Court recognized that the non-party Richters—not the mineral estate—owed the alleged debt. *See generally* ROA.2245-46. But the District Court still (in error) held DDR legally responsible for the Richters' alleged debt. ROA.2245-48. The District Court did not reach this holding on any basis that the alleged debt was attached to the mineral estate itself. *Id.* Instead, the District Court (in error) construed the Deeds and Division Orders as contracts in which DDR contractually agreed to be responsible for the Richters' alleged debt:

> [B]ecause the Court finds that Plaintiffs contractually assumed the Richters' debts . . . the Court need not differentiate between recoupment and setoff . . .
>
> ROA.2245.
>
> This reading is further supported by language in the division orders … Therefore, Plaintiffs contractually assumed the Richters' debt in the amount of Defendant's prior overpayment.
>
> ROA.2247.

This construction is legally incorrect, which DDR addressed in this appeal. *See* DDR Brief 28-29, 33-45, 55-58. DDR's appellate argument therefore squarely addresses the legal principles of the District Court's ruling. DDR's Brief does not present "brand new" legal arguments—it addresses the underlying bases of the District Court's erroneous ruling. As such, the District Court considered and ruled upon them in issuing its Judgment. *See Ramirez v. Escajeda*, 44 F.4th 287, 290 n.4

(5th Cir. 2022) (when "district court reached and decided qualified immunity . . .

"[t]he issue has therefore been preserved").

Moreover, DDR's arguments all present legal issues:

| Allegedly New Legal Issue (Ovintiv Brief pp. 13-14) | Raised Below by DDR and/or the District Court |
|---|---|
| Overpayments are the Richters' personal debt (not part of the land/ real property). | These are all grounded in DDR's summary judgment argument that the alleged overpayments to the Richters are not part of—and therefore do not run with—the land/real property. ROA.1203-04. |
| DDR's royalties are their personal property (not land/real property). | |
| The Richters' debt preceded the conveyance of their Properties. | These arguments specifically address the District Court's ruling that DDR contractually assumed the Richters' alleged debt in the Deeds and Division Orders. ROA.2245-48. |
| The Richters' debt is not a covenant running with the land. | |
| The Richters' debt is not an "encumbrance." | |
| Ovintiv used no attachment mechanism to attach the Richters' debt to the Properties. | |
| Ovintiv must be a third-party beneficiary to recoup. | These arguments simply address the proper construction of the "subject to" and "as is" clauses—a central issue below. ROA.1208-09, 2245-48. |
| The "subject-to" and "as-is" clauses are not DDR promises. | |
| Simply acknowledging the existence of a debt does not contractually assume that debt. | The District Court construed the "subject to" and "as is" clauses in its ruling. ROA.2245-48. |

| Allegedly New Legal Issue (Ovintiv Brief pp. 13-14) | Raised Below by DDR and/or the District Court |
|---|---|
| The Richters' debt postdates their conveyance of the Properties. | DDR argued below the timing of the alleged debt and that Ovintiv failed to notify anyone of same until after DDR acquired the Properties. ROA.1203. |
| The DDR Division Orders' safe-harbor language from Section 91.402 does not apply. | DDR discussed below Ovintiv's allegation that it had asserted an "adverse claim" against DDR under Section 91.402. ROA.1206. |
| There is no basis to pierce the corporate veil. | DDR argued below Ovintiv pleaded no basis to hold separate entity DDR liable for the Richters' alleged debt. ROA.1211-12.<br><br>DDR again argues on appeal that Ovintiv failed to allege any veil-piercing mechanism to hold DDR liable for the Richters' debt. |
| The District Court erroneously permitted Ovintiv to exercise recoupment. | DDR presented numerous arguments below refuting Ovintiv's claim it appropriately exercised recoupment. ROA.1206-08, 1212.<br><br>The District Court provided a detailed analysis of the equitable doctrine of "recoupment" in its Order. ROA.2243-45. |

And because they address legal principles that underlie and squarely address the District Court's ruling, these arguments must be considered to avoid a miscarriage of justice. *See Rollins v. Home Depot USA*, 8 F.4th 393, 398 (5th Cir.

2021) (purely legal matters should be considered on appeal to avoid a miscarriage of justice). The District Court based its ruling on an application of contract construction to conclude DDR *contractually assumed* the Richter's debt—an argument Ovintiv never made in the court below. Precluding review of a ruling based on a nuance of a legal argument the summary judgment movant did not even assert would insulate this kind of ruling from appropriate review and potentially allow a legally erroneous ruling to fundamentally change Texas law. Under the District Court's incorrect construction:

- When a lessee-payor mistakenly overpays royalties solely and only due to its own mistake;

- And consequently, pays an unknowing lessor-payee predecessor-in-title royalties allegedly owed to another party;

- The lessor-payee successor-in-title—who never received any of the overpayment—must use royalties it owns to reimburse the lessee-payor for its own mistake the successor-in-title never benefited from.

Allowing this erroneous construction of Texas deeds and division orders will create a ripple effect that destabilizes Texas law and oil and gas development and operations, which is antithetical to Texas public policy. *Barrow-Shaver Res. Co. v.*

*Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 495 (Tex. 2019) ("We recognize the important public policy favoring the exploration and development of oil and gas.").

## II. The District Court Erred By Applying Recoupment Here—Against A Successor-In-Interest Who Never Received An Overpayment.

Ovintiv stridently touts the efficacy of recoupment. Ovintiv Brief 15-21. DDR has never disputed that under certain circumstances, recoupment is a valid, commonly accepted remedy in the oil and gas industry.[2] But recoupment does not apply under the circumstances here, when a lessee-payor is attempting to recoup alleged overpayments from a successor-in-title who never received a penny of the overpayments.[3]

***Ovintiv cannot point to a single case supporting its position that recoupment applies in the present circumstances***. Just the opposite: The cases Ovintiv cites confirm recoupment is inapplicable here.

---

[2] Amicus Curiae, Texas Oil and Gas Association ("TXOGA"), repeats Ovintiv's endorsement of recoupment as a customary practice. Amicus Curiae Brief 9-15. DDR agrees. But this self-help remedy does not apply to obtain funds owned by a successor lessor who never received any of the alleged overpayments. Neither Ovintiv nor TXOGA provide this Court *a single case* supporting their application of recoupment.

[3] Contrary to Ovintiv's assertion, DDR was not overpaid in January 2018. Ovintiv Brief 7. DDR did not begin receiving royalties until April 2018, after DDR and Ovintiv signed the new Division Orders. ROA.601-04, 611-15, 679-82.

**A.    None of Ovintiv's authorities support recouping royalty payments from anyone other than the overpaid party.**

Ovintiv cites a litany of out-of-state cases for its argument that recoupment is a valid self-help remedy. Ovintiv Brief 18-19. But none of these cases involve a lessee-payor recouping overpayments from a successor-in-title who did not receive overpayments.

Each of Ovintiv's cited cases involves the common situation where a lessee-payor recoups overpayments from the lessor-payee that was actually overpaid:

- *Freston v. Gulf Oil Company*, 565 P.2d 787 (Utah 1977): Gulf Oil recouped royalties from lessors it erroneously overpaid until it recovered the amount of overpayment; the overpaid lessors filed suit, and the court upheld Gulf Oil's recoupment defense. *Id.* at 788-89.

- *City of Carlsbad v. Grace*, 966 P.2d 1178 (N.M. Ct. App. 1998): Grace informed the City of its accounting error overpaying royalties and demanded repayment. *Id.* at 1180. Grace began to withhold all the City's royalty payments to pay the overpayment balance. *Id*. The City sued, and the court found Grace could properly invoke equitable recoupment as a defense. *Id.* at 1185-86.

- *Nelson v. Linn Midcontinent Exploration, L.L.C.*, 228 P.3d 533 (Okla. Civ. App. 2009): The court of appeals held, "it is uncontroverted that

14

Plaintiff was paid more than that to which she is entitled from [the wells] and Defendant was entitled to recover the overpayments." *Id*. at 535.

Another out-of-state case Ovintiv cited, *Waechter v. Amoco Production Company*, 537 P.2d 228, 255 (Kan. 1975), supports DDR's position that recoupment is appropriate ***only against the parties who received the overpayment, and not successors***. In *Waechter*, a class of landowner-lessors sought a declaratory judgment to determine, among other issues, whether the defendant-lessee could recoup royalty overpayments made to the plaintiff-landowners during a specific time period. *Id.* at 230. The court found in the defendant-lessee's favor, ruling it was entitled to recoup the monies owed from the individual royalty owners it had overpaid. *Id.* at 255.

Significantly, the *Waechter* defendant-lessee did not attempt to recoup against any royalty owners who acquired their interests in the oil and gas leases after the time period. *Id.* at 235-36, 244. The defendant-lessee recognized these royalty owners had not received any of the overpayment. *Id.* at 235, 244. The defendant-lessee treated these royalty owners differently because they "[a]cquired their interest after [the last overpayment]." *Id.* at 244. The *Waechter* facts—and the conduct of the party in the same position as Ovintiv—are instructive. That lessee recognized

15

that subsequent owners who never received any overpayment are not subject to recoupment.

Ovintiv also cites Texas cases, claiming they support its argument that recoupment is appropriate. Ovintiv Brief 19-20. These Texas cases are also inapposite:

- *Texas Lone Star Petroleum Corporation v. Chesapeake Operating Inc.*, No. 2:14-CV-331, 2016 WL 6677939 (S.D. Tex. Nov. 14, 2016). Recoupment involved the overpaid payee, not a subsequent purchaser who never received overpayments. *Id.* at *5-6

- *Amoco Production Company v. Smith*, 946 S.W.2d 162 (Tex. App.—El Paso 1997, no writ). In *Amoco*, the overpaid parties did not dispute they received payments to which they were not entitled, and that recoupment was appropriate. *Id*. at 163. The appellate issues addressed the application of statutes of limitations to Amoco's "money-had-and-received" claim and whether Amoco was entitled to attorneys' fees. *Id.*

Ovintiv also touts *W&T Offshore, Inc. v. Bernhardt*, 946 F.3d 227 (5th Cir. 2019) as supporting its contention that its alleged overpayments to the non-party Richters and its underpayments to successor-in-title DDR arose from the same transaction, the Leases. Ovintiv Brief 49-50. Ovintiv misapplies the case.

In *Bernhardt*, the Department of Interior argued that limitations barred W&T from recouping for over-deliveries made before the limitations period. *Bernhardt*, 946 F.3d at 239. W&T countered that recoupment overcomes limitations, and this Court agreed. *Id.* at 240. As one of its opposing arguments, the Department of Interior claimed that equitable recoupment applies only to obligations arising under the "same contract or transaction" and that ***each monthly obligation*** under the lease was a separate transaction. *Id.* at 241.

This Court rejected that argument, holding that each payment was part of the same transaction for limitations purposes as it arose between the same contractual parties: the Department of Interior and W&T. *Id.* Moreover, this Court framed its analysis viewing recoupment as a defense: A defendant could assert equitable recoupment so long as the plaintiffs' claims survive, even if a defendant's affirmative action is time-barred. *Id.* at 240 (citations omitted).

First, *Bernhardt* is factually distinguishable. It involves the overpaid payee, not a successor-in-title; so, the dispute involved the same parties to the same agreement. *Bernhardt* also involved a payee who received an overpayment. The present case involves a successor-in-title, DDR, who received royalties under its own, new division orders. Moreover, the successor-in-title, DDR, never received an overpayment. These differing facts make *Bernhardt* inapposite.

17

Second, *Bernhardt* focuses on a different legal issue—the application of limitations to a defense of equitable recoupment. DDR has never claimed Ovintiv's recoupment defense is time-barred. *Bernhardt* does not apply here.

**B.      None of Ovintiv's veil-piercing arguments—disguised as pleas for "fairness"—have merit.**

Ovintiv fails to cite to this Court ***even one single case*** where a lessee-payor recouped against a subsequent lessor-payee who never received any overpayment. Instead, Ovintiv repeatedly complains that DDR's position is "unfair." ROA.212, 215-16, 2035, 2047, 2053, 2183, 2188; Ovintiv Brief 9, 44. And Ovintiv uses this complaint as a disguised veil-piercing argument, inviting this Court to somehow treat the legally distinct DDR and non-party Richters as the same entity, claiming the Richters own and control DDR. Ovintiv Brief 1, 3-4, 9, 21, 44, 48, 51 (repeating eleven times that DDR is allegedly "wholly owned and controlled" by the non-party Richters). Ovintiv's argument is not only unpleaded, it is not the law.

As a matter of settled Texas law, DDR and the non-party Richters are separate entities. *In re Allcat Claims Serv. L.P.*, 356 S.W.3d 455, 463 (Tex. 2011); *see Am. Star Energy & Minerals Corp. v. Stowers*, 457 S.W.3d 427, 432 (Tex. 2015) ("As a right of the partner's statutorily confirmed status as a separate entity, a partnership's acts are only its own, not a partner's."). To hold DDR liable for the non-party Richters' actions on summary judgment, Ovintiv needed to plead and conclusively

18

prove a veil-piercing claim. *See ASR 2620-2630 Fountainview, LP v. ASR 2620-2630 Fountainview GP, LLC*, 582 S.W.3d 556, 563 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (to hold separate legal entity liable for another's actions, one must "prove[ ] or obtain[ ] a jury finding as to any alter-ego theory or basis for piercing any entity's corporate veil."). Simply claiming the circumstances are "unfair" is not a pleading or proof; or the truth. It also betrays the desperation of Ovintiv's legally groundless position in this case.

The only "authority" Ovintiv musters is a law review article DDR cited, but that Ovintiv misconstrues. Ovintiv Brief 20-21 (citing Douglas R. Hafer & Daniel B. Mathis, *Mineral Royalty Mispayments: The Payor's Rights, Obligations, and Risks in Royalty Mispayment Scenarios, Including the Pitfalls and Prerogative of Self-Help Recoupment*, 18 TEX. WESLEYAN L. REV. 85 (2011)) ("Hafer's Article"). Ovintiv notes Hafer stated a lessee-payor's overpayments may go undetected far longer than an underpayment. Ovintiv Brief at 20. Ovintiv then makes the self-serving and unsupported statement: "Before an operator uncovers this issue, unprincipled royalty owners may create shell entities to prevent recoupment of the monies to which they were not entitled." *Id*.

First, there is not a scent of proof that the Richters were unscrupulous. Just the opposite: The Richters had no idea Ovintiv had allegedly botched its internal

accounting. The Richters transferred the interests, unaware of any alleged overpayment.[4]

Second, if any conduct is "unfair," it is that of Ovintiv. It made the mistake. And when Ovintiv finally realized it, there is no evidence Ovintiv made any effort whatsoever to recover the alleged overpayment from the non-party Richters—the parties who actually received and presumably benefited from the "income." The non-party Richters thus had no opportunity, or reason, to litigate whether the alleged Ovintiv overpayments were in fact overpayments or whether the Richters were correctly paid.

Hafer's article explains that recovering overpaid monies can be difficult—and sometimes impossible—for both practical and legal reasons: "[T]he payee may have spent or otherwise disposed of the money, and may have no means of repayment"; and certain legal defenses and other limitations "may defeat or reduce a legal claim." Hafer's Article, 18 TEX. WESLEYAN L. REV. at 86. Ovintiv twists this explanation to excuse its own failure to pursue appropriate legal remedies against the parties they allege benefited from the overpayment—the non-party Richters. Indeed, as Hafer's article discusses: "In mineral royalty overpayment cases, the fundamental cause of

---

[4] Ovintiv admits it did not discover its accounting blunder until after the Richters transferred their mineral interests to DDR. ROA.231-33.

action that might allow the payor to recoup the overpaid monies is generally referred to as 'money had and received' (although some courts have also called it 'restitution')." *Id.* at 88.

Ovintiv claims that following the law and requiring a lessee-payor to recover from the party it overpaid "would likely foster gamesmanship through which a lessor, on learning it was overpaid, quickly transfers the mineral interests and leases to eliminate efficient, self-help recoupment methods." Ovintiv Brief at 21. Ovintiv's argument has no basis in reality. Zero evidence exists the Richters knew anything, and since Ovintiv's alleged error occurred in-house, the Richters had no way of knowing about the overpayments.

Moreover, Ovintiv's theory of the case—that the overpayment debt is part of the real property interest—is much more likely to result in nefarious conduct. An indebted lessee-payor could simply create a shell company, transfer its mineral interests, and, under Ovintiv's theory, absolve itself of all liability for the debt. The debt would then be held by the successor-in-interest shell, who may or may not have any assets to satisfy an underpaid party.

Ovintiv's "parade of horribles,"[5] like its plea for "fairness," has zero merit.

---

[5] TXOGA joined Ovintiv in dredging up a list of calamities if Ovintiv's misapplication of Texas law is affirmed. Amicus Curiae Brief 9, 17, 19. What is most revealing however, is that like

**III. Ovintiv Has Always Maintained And In Fact Bases Its Arguments On The Alleged Overpayments As Accrued—Not Unaccrued Royalties.**

Minerals severed from the ground represent an "accrued royalty interest." *Phillips Petroleum Co. v. Adams*, 513 F.2d 355, 363 (5th Cir. 2011). Conversely, minerals still in place represent an "unaccrued royalty interest." *Id.* Ovintiv has consistently maintained that because of its internal accounting error the Richters received other lessors' royalties for minerals severed from other lessors' land. Ovintiv Brief 7 (Ovintiv expressly admitting, "The change was not properly reflected in Ovintiv's accounting system, ***resulting in a misallocation of volumes among certain wells"***) (emphasis added). Ovintiv further admitted:

> As a result . . . certain mineral interest owners . . . were incorrectly credited with higher gas volumes than produced while other mineral interest owners (not parties here) were incorrectly credited with lower gas volumes than produced.

*Id*. Ovintiv has even argued that its recoupment is an "adverse claim" it is making ***on behalf of the underpaid mineral owners*** seeking to recover their accrued royalties. *Id.* at 44.

But Ovintiv switches horses midstream. After stating the overpayments were other lessors' ***accrued royalties***, Ovintiv offers the novel argument that the

---

Ovintiv, TXOGA did not cite a single case supporting their misapplication of equitable recoupment.

overpayments were somehow ***unaccrued royalties***—that is, minerals still attached to the land. *Id.* at 25. But Ovintiv has repeatedly judicially admitted the basis of its mistake was misallocating royalties on produced gas, not paying the Richters for unproduced gas. *Id.* at 7; ROA.6-7, 231.

Besides, unaccrued royalties are unproduced oil and gas. *Adams*, 513 F.2d at 363. That oil and gas remains attached to the land. *Hughes v. U.S.*, 196 F.Supp. 37, 40 (E.D. Tex. 1961). It is not a severed interest. *Id.* As such, Ovintiv simply cannot "pay" unaccrued royalties. *Adams*, 513 F.2d at 363.

Once again, Ovintiv's novel theory is wrong on the facts and the law.

## IV. Applying Settled Texas Law, The Deeds Do Not Convey The Richters' Alleged Accrued Royalty Overpayment Debt To DDR.

The District Court ruled that DDR "contractually assumed" the Richters' debt. ROA.2245-47. Ovintiv recasts this ruling as applying real property law, not contract law. Ovintiv Brief 22. Ignoring the District Court's plain language, Ovintiv continues to pursue its legally incorrect argument that the Richters' alleged debt is part of and ran with the land. *Id.* at 22-42.

### A. Ovintiv misstates Texas law: The Richters' alleged "burden" is not an appurtenance.

Ovintiv makes the conclusory assertion that the Richters' Deeds transferred to DDR all "burdens," including the Richters' alleged overpayment obligation.

Ovintiv Brief 23-24. Essentially, Ovintiv argues that real estate deeds transfer any generic "burden" that has any relationship to the land. *Id.* Once again, Ovintiv did not cite a single case that supports this incorrect application of Texas real property law.

Ovintiv did cite *Henry v. Smith*, 637 S.W.3d 226, 233 (Tex. App.—Fort Worth 2021, pet. denied) and *Aery v. Hoskins, Inc.*, 493 S.W.3d 684, 700 (Tex. App.—San Antonio 2016, pet. denied) (Ovintiv Brief 23-24), but neither support Ovintiv's position. Both cases analyze the legal effect of appurtenances. *Id.* Both cases restate the unremarkable principle that an appurtenance can be either a benefit or a burden. *Id.* And both cases hold that appurtenances are part of and therefore run with the real property interest. *Id.*

But there is no legal basis to characterize the Richters' overpayment obligation as an appurtenance. An appurtenance is (i) a burden, right, interest, or improvement (ii) that is necessary for the full use and enjoyment of a property. *Aery*, 493 S.W.3d at 699 ("Because it is necessary to its use, an appurtenance attaches to the land that requires it and cannot be separated from it."). "Appurtenance" usually refers to improvements, easements, road access, and structures used in conjunction with the property. *Henry*, 637 S.W.3d at 233; *see Aery*, 493 S.W.3d at 699 ("Under this understanding, ***an appurtenance to land typically includes such things as***

***improvements, buildings, littoral rights, and use of water or sewer lines***.”
(emphasis added)).

Here, the Richters' overpayment obligation is a burden. But it is nothing like an improvement, easement, road access, or a structure connected to or for the use of a property. The Richters' debt itself is not necessary for DDR to be able to use and enjoy the Properties. *See Avery*, 49. S.W.3d at 699. (“Because it is necessary to its use, an appurtenance attaches to the land that requires it and cannot be separated from it.”). Defining the Richters' debt as an appurtenance to the mineral interests is akin to forcing a square peg into a round hole.

### B. Ovintiv misconstrues the Deeds: The Deeds do not transfer the overpayment obligation.

#### 1. Ovintiv and the District Court misunderstood the proper legal construction of a “subject to” clause.

In a blatant misrepresentation of the Deeds' language, Ovintiv claims: “[T]he Deeds specifically conveyed ***the Richters' 'indebtedness' and 'encumbrances'*** to DDR.” Ovintiv Brief 28 (emphasis added). The Deeds do not say this. Rather, they convey all the Richters' rights in the Properties “subject to” “indebtedness” and “encumbrances” that are part of the Properties. ROA.601, 605, 611, 616, 624, 629, 635.

This distinction is critical. Once a royalty payment is made, settled Texas law expressly holds that the funds are severed from the land. *Sheffield v. Hogg*, 77 S.W.2d 1021, 1027 (Tex. 1934) ("The rents and royalties were profit issuing out of the land. When they accrued, they became personal property . . . ."). As such, the payments (and therefore any corresponding debt arising from the payments) are no longer part of the real property: They do not touch or concern the land. *Tex. Oil & Gas Corp. v. Moore*, 630 S.W.2d 450, 452-53 (Tex. App.—Corpus Christi 1982, writ dism'd w.o.j.).

Because the royalty payment—once made—is no longer part of the property, the indebtedness or encumbrance it creates is not part of the property either. *See Johnson v. Enerlex, Inc.*, No. 03-96-00401, 1997 WL 562017, at *2 (Tex. App.—Austin Sept. 11, 1997, pet. denied) (mem. op.) (sheriff could not levy on royalties as they were personal property and judgment ordered levy on real property). Applying this law, because the Richters' debt represents royalties—and royalties are not part of the property—the Deeds cannot transfer them. *Id*. Moreover, because the Deeds do not even identify or otherwise mention the overpayments, there is no basis under contract law to construe the Deeds as transferring to DDR a personal responsibility to repay them to Ovintiv. *Wenske v. Ealy*, 521 SW.3d 791, 795 (Tex. 2017).

26

As the Supreme Court of Texas has explained, when construing a deed, the focus must be on the parties' intent as expressed by the language within the four corners of the deed and harmonizing all parts of an instrument. *Id*. Here, the Deeds contain no language identifying any specific indebtedness or encumbrance. ROA.282-322. The plain language confirms that the parties were intending to transfer the Properties and the "subject to" clause simply identified to DDR the property rights the Deeds were not transferring. ROA.282-322. There is no language in the Deeds indicating that the parties intended the "subject to" clause to serve as an assumption of liability for any money debt, much less the Richters' overpayment obligation. ROA.282-322. Rather, the Deeds contain customary language case law confirms does not transfer liability for an existing debt on the land—much less a money debt that is separate from the land. *Kokernot v. Caldwell*, 231 S.W.2d 528, 532 (Tex. App.—Dallas 1950, writ ref'd) ("'Subject to' as used in conveyances, is a term of qualification and not of contract."); *see also Campbell v. Jones*, 230 S.W. 710, 718 (Tex. App.—Amarillo 1921, no writ) ("Taking a deed subject to a mortgage does not import a promise on the part of the purchaser to pay the mortgage.").

27

### 2. Ovintiv failed to distinguish DDR's cited cases.

Ovintiv tried several swipes at DDR's cited authorities confirming the "subject to" clause does not serve to transfer the debt to the subsequent purchaser, as the District Court ruled. All swipes miss their mark.

Ovintiv attempted to avoid the instructive impact of *City of Dallas v. Pfirman*, No. Civ. A. 399CV0312G, 2000 WL 159314, at \*2-4 (N.D. Tex. Feb. 11, 2000), claiming that court rejected an argument similar to DDR's. Ovintiv Brief 32. Wrong: The district court did not reject the argument; it just found the argument factually inapplicable.

In *Phirman*, the defendant argued that "[a] person who accepts title to property without assuming the debt against the property takes title 'subject to' such matters." *Pfirman*, No. Civ. A. 399CV0312G, 2000 WL 159314, at \*2. The defendant further argued that under Texas law, while a property may remain encumbered by the debt against the property, "the purchaser is not personally liable for the payment of the lien unless he expressly assumes the same." *Id.* (citing *Homeland Realty Co. v. Wheelock*, 119 S.W.2d 167, 167 (Tex. App.—El Paso 1938, no writ) (holding that because buyer bought land "subject to all and any indebtedness now due and owing on said property," and did not expressly assume debt itself, defendant is "not personally liable for any part of said debt")).

28

The *Phirman* court did not disagree with Phirman's arguments or application of law. *Id.* at *2-4. The court also did not object to Phirman's reliance on case law discussing mortgage liens as analogous to the debt for unpaid lease payments. The court simply found Phirman's argument did not apply to the facts because that deed did not include a "subject to" clause. *Id.* at *4.

Moreover, another court has cited *Phirman* for exactly the legal principle the *Phirman* defendant argued and that DDR asserts here. *In re Mullin*, 433 B.R. 1, 17 (Bankr. S.D. Tex. 2010) (citing *Phirman*, 2000 WL 159314, at *2 and *Wheelock*, 119 S.W.2d at 167). This Court has also expressly ruled similarly. *See Schewe v. Bentsen*, 424 F.2d 60, 62 (5th Cir. 1970) (holding conveyance "subject to" mortgage in Texas does not impose personal liability on grantee).

Ovintiv next disagrees with DDR's reliance on *Arcadia Refining Company v. Cook* (Ovintiv Brief 32), which holds that a "subject to" clause does not transfer to a successor-in-title any personal obligation to pay a debt that had attached to the real property. 146 S.W.2d 767, 771-72 (Tex. App.—Texarkana 1940, writ dism'd judgm't cor.). Ovintiv claims DDR "misunderstands the facts and holdings of *Arcadia*," arguing "the [*Arcadia*] opinion contains no explanation for how [the successors in title] acquired the property—it is unclear whether 'subject to' was language from their deed or not." Ovintiv Brief 32.

Not correct: the Texarkana Court of Appeals described the assignment under which the successor-lessee held title, which stated, "[I]n the event a well should be drilled . . . then this assignment and conveyance is ***subject to*** the terms and conditions contained in the assignment executed by Ernest S. Goens, Receiver, to Barney Carter." *Id.* at 769 (emphasis added). The Court of Appeals construed this language as a "subject to" clause. *Id.*

Ovintiv also incorrectly states that in *Arcadia,* the predecessor had already paid off the debt. Ovintiv Brief 33. Not correct: The predecessor-lessee had made a single payment of $7,500 toward the amount due. *Arcadia*, 146 S.W.2d at 769-72. Accordingly, the question remained whether the successors were liable for any share of the amount due based on the assignment's "subject to clause." *Id*. And the Texarkana Court of Appeals ruled the obligation to pay the debt did not transfer to the successor. *Id.* at 771-72.

Further, Ovintiv argues the Texarkana Court of Appeals provided "limited reasoning" in *Arcadia*. Ovintiv Brief 33. Incorrect: The *Arcadia* Court thoroughly articulated its reasoning, ultimately deciding: "The most that can be said is that appellees bought the 2-acre lease subject to an outstanding oil payment. In this situation appellees are not personally liable for any amount owing." *Arcadia*, 146 S.W.2d at 771-72.

*Arcadia* is highly instructive. And it demonstrates that even if the Richters' overpayment money debt was somehow attached to the mineral interests, the "subject to" clause did not transfer the obligation to pay that debt to DDR. And because, as a matter of longstanding, settled law, the accrued royalties are severed from and not part of the Properties, DDR's accrued royalties are not burdened by the Richters' overpayment money debt. Ovintiv had no right to take DDR's accrued royalties. *Arcadia* crystallizes the District Court's ruling is legal error.

### C. The Richters' alleged liability for royalty overpayments is also not a covenant running with the land.

Ovintiv cites *Twelve Oaks Tower I, Ltd. v. Premier Allergy Inc.*, 938 S.W.2d 102, 114 (Tex. App.—Houston [14th Dist.] 1996, no writ) as supporting its argument, "[U]nder Texas law when a grantor transfers all its interest in property, encumbrances on that property transfer with the land as covenants that run with the land." Ovintiv Brief 41. *Twelve Oaks* is distinguishable and inapposite.

*Twelve Oaks* involved parties to a commercial lease. *Twelve Oaks*, 938 S.W.2d at 106. The primary question on appeal was whether the assignee—or solely the assignor—had the right to terminate the lease, thereby ending its obligation to pay rent. *Id.* at 113-14. The Court of Appeals found the assignee could terminate the lease because an assignee is obligated to pay rent and perform the covenants running with the land (which the court did not define); as such, it should likewise receive the

31

benefit of all the covenants and agreements of the lessor, which are annexed to and run with the land. *Id.* at 114.

*Twelve Oaks* has no application to the case at bar. It does not address the question here: Is a predecessor's debt a covenant running with the land and, as such, makes a successor-in-title personally liable for that debt?

Ovintiv cites *Lyle v. Jane Guninn Revocable Tr.*, 365 S.W.3d 341, 353 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) for its argument, "Texas courts have further held that royalty obligations are covenants running with the land." Ovintiv Brief 42. If this was indeed the holding of *Guninn,* it has no application here. Even if the Richters' money debt ran with the land—which it does not—it is not recoverable from DDR's personal property.[6]

None of Ovintiv's cases and corresponding arguments support the District Court's ruling in this case. The Richters' money debt is not attached or otherwise part of the mineral interests because the debt is personal to the Richters, not the mineral interests. But even if the money debt did run with the land, accrued royalties are severed from the land. Accordingly, accrued royalties for production when DDR

---

[6] Ovintiv also cites *Verde Minerals, LLC v. Burlington Res. Oil & Gas Co., LP*, 360 F. Supp. 3d 600, 617 (S.D. Tex. 2019). *Verde* is distinguishable. *Verde* involved a covenant to receive a floating royalty interest. *Id.* Unlike in *Verde*, there is no dispute DDR owns the mineral estate and Ovintiv is obligated to pay DDR royalties. *Id.*

owned the Properties are DDR's personal property. Nothing in the Deeds alters this reality. As such, the District Court's ruling is legal error and must be reversed.

**V. The Division Orders Confirm DDR Is Not Liable For The Richters' Alleged Debt.**

**A. *Gavenda* is inapplicable.**

Ovintiv cites *Gavenda v. Strata Energy, Inc.*, 705 S.W.2d 690 (Tex. 1986) to support its claim that not allowing Ovintiv to recoup from DDR would be "unfair." Ovintiv Brief 43-44. *Gavenda* is distinguishable and not applicable.

In *Gavenda*, Strata Energy underpaid the Gavendas a 1/16 royalty interest instead of the correct 1/2 interest. *Gavenda*, 705 S.W.2d at 691. The division orders—prepared by Strata Energy based on an erroneous title examination they commissioned—reflected the incorrect 1/16 royalty interest. *Id.* After discovering the error, the Gavendas revoked the division orders and filed suit to recoup the over two million dollars in accumulated underpaid royalties. *Id.*

The *Gavenda* Court articulated the general rule, "[D]ivision and transfer orders bind underpaid royalty owners until revoked." *Id.* Accordingly, royalty owners who claim the division orders are erroneous, causing the lessee to underpay royalties, are generally estopped from suing the operator. *Id.* at 692.

But this case is dissimilar from *Gavenda*: Unlike the *Gavenda* plaintiffs, DDR does not claim it was underpaid because Ovintiv miscalculated DDR's interest in the

Division Orders. DDR is not contesting its Division Orders. Just the opposite: DDR seeks to enforce the Division Orders and require Ovintiv to remit DDR's accrued royalties pursuant to those agreements. *Gavenda* does not address the issue presented here: Do division orders allow recoupment from a successor-in-title who never received a single cent of the alleged overpayment?  DDR did everything it promised to do under the Division Orders. Ovintiv did not; and has not.

**B.    The Division Orders do not permit Ovintiv to use recoupment against DDR for accrued royalties it never owned or received.**

Under the Division Orders, Ovintiv may only withhold payment "pending resolution of a[n] adverse claim asserted regarding the interest in production claimed by [DDR]." ROA.679, 681. Here, no one has made an adverse claim regarding the "interest in production"—the Properties or the right to receive royalties on production. No one has claimed they—not DDR—own the Properties or the right to receive royalties on production. Ovintiv effectively concedes this. Ovintiv Brief 44 (stating "[o]nly the <u>owner</u> of the interest in production changed—from the Richters to [DDR]." (emphasis in original)).

**VI.    Applying The Deeds And Division Orders As Written And In Conformity With Settled Texas Law Does Not Contravene The Leases.**

Ovintiv also argues that by transferring the Properties to DDR, the Richters doubled Ovintiv's obligation to pay the contested royalties and violated the Leases.

Ovintiv Brief 47. Flat wrong: Regardless of who owns the Properties, the Leases charged Ovintiv with exactly the same obligation: Pay accrued royalties to the entity that owned the mineral interests when the gas was produced. When the Richters owned the Properties, Ovintiv was obligated to pay the accrued royalties to the Richters. When DDR owned the Properties, Ovintiv was required to pay DDR. Ovintiv never had any obligation to pay both for the same production.

Accordingly, any right to seek repayment is defined by ownership. Ovintiv has the right to seek repayment of allegedly overpaid accrued royalties paid from the Richters because the Richters received the royalties as the purported owners of those funds. No legal principle gives Ovintiv the right to seek payment from a successor-in-interest for royalties the successor never owned and never received the allegedly overpaid accrued royalties.

Ovintiv's argument and the District Court's ruling are legally incorrect.

## VII. The District Court Erred In Dismissing DDR's Statutory and Conversion Claims.

DDR stands by and incorporates its arguments from its Brief addressing Ovintiv's violation of the Texas Natural Resources Code and the District Court's error in dismissing DDR's conversion claim. DDR Brief 68.

## VIII. DDR's Motion For Partial Summary Judgment Can Be Granted.

DDR filed a motion seeking partial summary judgment in DDR's favor on each affirmative claim and dismissing Ovintiv's affirmative defenses. ROA.361. DDR acknowledges the damages amount remains disputed. Accordingly, DDR respectfully requests this Court reverse the District Court's Judgment and enter judgment as a matter of law on all issues other than the damages amount.

CONCLUSION

DDR respectfully requests that this Court reverse the District Court's Judgment, render judgment in favor of DDR on its affirmative claims, dismiss Ovintiv's affirmative defenses, and remand the damages issue and DDR's attorneys' fees claim for trial. In the alternative, DDR requests that the Court reverse and remand for a new trial. DDR requests other relief to which it may be entitled, at law or in equity.

Respectfully Submitted,

**SANTOYO WEHMEYER P.C.**

By: */s/ Corey F. Wehmeyer*

Corey F. Wehmeyer (SBN 24051903)
*cwehmeyer@swenergylaw.com*
Renée A. Yanta (SBN 00787483)
*ryanta@swenergylaw.com*
Emily A. Gearhart (SBN 24065871)
*egearhart@swenergylaw.com*
12400 San Pedro Avenue, Suite 300
San Antonio, Texas 78216
Telephone: (210) 998-4200
Facsimile: (210) 998-4201

**ATTORNEYS FOR PLAINTIFFS-
APPELLANTS DDR WEINERT, LTD
AND DDR WILLIAMS, LTD.**

**CERTIFICATE OF COMPLIANCE**

Under Federal Rule of Appellate Procedure 32(a), counsel for Plaintiffs-Appellants, DDR Weinert, LTD and DDR Williams, LTD, hereby certifies as follows:

1.      This brief complies with the word limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,487, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.2.

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally-spaced typeface, including serifs, using Microsoft Word, in Times New Roman 14-point font, except for the footnotes, which are in proportionally-spaced typeface, including serifs, using Microsoft Word in Times New Roman 12-point font.

SO CERTIFIED, this 29th day of January, 2024.

*/s/ Corey F. Wehmeyer*
Corey F. Wehmeyer
Attorney of Record for Plaintiff-Appellants DDR Weinert, LTD and DDR Williams, LTD

38

**CERTIFICATE OF SERVICE**

I, Renée A. Yanta, hereby certify that on January 29, 2024, I electronically filed the foregoing Reply Brief of Plaintiffs-Appellants, DDR Weinert, LTD and DDR Williams, LTD with the Clerk of Court using the CM/ECF filing system, which will automatically send notification of the filing to all counsel of record in this appeal.

Christopher M. Hogan
Texas Bar No. 24065434
chogan@hoganthompson@com
Samantha L. Thompson
Texas Bar No. 24102568
sthompson@hoganthompson.com
Hogan Thompson LLP
1001 Fannin Street, Suite 4775
Houston, Texas 77002

Attorneys for Appellees
OVINTIV USA, INC. AND
ENCANA OIL & GAS (USA), INC.

*/s/ Corey F. Wehmeyer*
Corey F. Wehmeyer